1 Laurence M. Rosen, Esq. (SBN 219683)
2 **THE ROSEN LAW FIRM, P.A.**
3 355 South Grand Avenue, Suite 2450
4 Los Angeles, CA 90071
  Telephone: (213) 785-2610
5 Facsimile: (213) 226-4684
  Email: lrosen@rosenlegal.com
6
7 *Counsel for Plaintiff*

8                UNITED STATES DISTRICT COURT
9                CENTRAL DISTRICT OF CALIFORNIA

10 | VICTOR D. MENASHE, Individually | Case No. |
11 | and on behalf of all others similarly | |
12 | situated, | CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
13 | Plaintiff, | |
14 | v. | JURY TRIAL DEMANDED |
15 | | |
16 | BIOGEN INC., MICHEL | |
17 | VOUNATSOS, JEFFREY D. CAPELLO, and MICHAEL R. | |
18 | MCDONNELL, | |
19 | Defendants. | |
20 | | |

21

22        Plaintiff Victor D. Menashe ("Plaintiff"), individually and on behalf of all

23 other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's

24 complaint against Defendants (defined below), alleges the following based upon

25 personal knowledge as to Plaintiff and Plaintiff's own acts, and information and

26 belief as to all other matters, based upon, *inter alia*, the investigation conducted by

27 and through his attorneys, which included, among other things, a review of the

28                                   – 1 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
                    SECURITIES LAWS

Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Biogen Inc. ("Biogen" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Biogen securities between October 22, 2019 and November 6, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

– 2 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PARTIES

6.     Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant Biogen Inc. purports to discover, develop, manufacture, and deliver therapies for treating neurological and neurodegenerative diseases including aducanumab (BIIB037) which is an investigational human monoclonal antibody studied for the treatment of early Alzheimer's disease. Biogen licensed aducanumab from Neurimmune under a collaborative development and license agreement. Since October 2017 Biogen and Eisai have collaborated on the development and commercialization of aducanumab globally.

8.     Biogen is incorporated in Delaware and its head office is located at 225 Binney Street, Cambridge, MA 02142. Biogen's securities trade on the NASDAQ Exchange ("NASDAQ") under the ticker symbol "BIIB".

9.     Defendant Michel Vounatsos ("Vounatsos") has served as the Company's Executive Officer ("CEO") and as a Director since January 2017.

10.     Defendant Jeffrey D. Capello ("Capello") served as the Company's Chief Financial Officer ("CFO") and Executive Vice President from December 2017 to August 2020.

11.     Defendant Michael R. McDonnell ("McDonnell") has served as the Company's CFO and Executive Vice President since August 2020.

12.     Defendants Vounatsos, Capello, and McDonnell are sometimes referred to herein as the "Individual Defendants."

13.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

– 3 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

14.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

– 4 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

17.     On October 22, 2019, Biogen issued a press release entitled "Biogen Plans Regulatory Filing for Aducanumab in Alzheimer's Disease Based on New Analysis of Larger Dataset from Phase 3 Studies" which announced the following, in relevant part, regarding aducanumab:

CAMBRIDGE, Mass. and TOKYO, Oct. 22, 2019 (GLOBE NEWSWIRE) -- Biogen (Nasdaq: BIIB) and Eisai, Co., Ltd. (Tokyo, Japan) today announced that, after consulting with the U.S. Food and Drug Administration (FDA), ***Biogen plans to pursue regulatory approval for aducanumab, an investigational treatment for early Alzheimer's disease (AD)***. ***The Phase 3 EMERGE Study met its primary endpoint showing a significant reduction in clinical decline***, and ***Biogen believes that results from a subset of patients in the Phase 3 ENGAGE Study who received sufficient exposure to high dose aducanumab support the findings from EMERGE***. Patients who received aducanumab experienced significant benefits on measures of cognition and function such as memory, orientation, and language. Patients also experienced benefits on activities of daily living including conducting personal finances, performing household chores such as cleaning, shopping, and doing laundry, and independently traveling out of the home. If approved, aducanumab would become the first therapy to reduce the clinical decline of Alzheimer's disease and would also be the first therapy to demonstrate that removing amyloid beta resulted in better clinical outcomes.

***The decision to file is based on a new analysis, conducted by Biogen in consultation with the FDA, of a larger dataset from the Phase 3 clinical studies that were discontinued in March 2019 following a futility analysis. This new analysis of a larger dataset that includes additional data that became available after the pre-specified futility analysis shows that aducanumab is pharmacologically and clinically active as determined by dose-dependent effects in reducing brain amyloid and in reducing clinical decline as assessed by the pre-***

– 5 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

*specified primary endpoint Clinical Dementia Rating-Sum of Boxes (CDR-SB).* In both studies, the safety and tolerability profile of aducanumab was consistent with prior studies of aducanumab.

"With such a devastating disease that affects tens of millions worldwide, today's announcement is truly heartening in the fight against Alzheimer's. This is the result of groundbreaking research and is a testament to Biogen's steadfast determination to follow the science and do the right thing for patients," said Michel Vounatsos, Chief Executive Officer at Biogen. "We are hopeful about the prospect of offering patients the first therapy to reduce the clinical decline of Alzheimer's disease and the potential implication of these results for similar approaches targeting amyloid beta."

Based on discussions with the FDA, the Company plans to file a Biologics License Application (BLA) in early 2020 and will continue dialogue with regulatory authorities in international markets including Europe and Japan. *The BLA submission will include data from the Phase 1/1b studies as well as the complete set of data from the Phase 3 studies.*

\* \* \*

**Study Results**
EMERGE (1,638 patients) and ENGAGE (1,647 patients) were Phase 3 multicenter, randomized, double-blind, placebo-controlled, parallel-group studies designed to evaluate the efficacy and safety of two dosing regimens of aducanumab. These studies were discontinued on March 21, 2019, following the results of a pre-specified futility analysis which relied on an earlier and smaller dataset. The futility analysis was based on data available as of December 26, 2018, from 1,748 patients who had the opportunity to complete the 18-month study period and predicted that both studies were unlikely to meet their primary endpoint upon completion. . . .

– 6 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Following the discontinuation of EMERGE and ENGAGE, additional data from these studies became available resulting in a larger dataset, which included a total of 3,285 patients, 2,066 of whom had the opportunity to complete the full 18 months of treatment. *A new extensive analysis of this larger dataset showed a different outcome than the outcome predicted by the futility analysis.* Specifically, the new analysis of this larger dataset showed EMERGE to be statistically significant on the pre-specified primary endpoint (P=0.01). *Biogen believes that data from a subset of ENGAGE support the findings from EMERGE, though ENGAGE did not meet its primary endpoint.* Biogen consulted with external advisors and the FDA on these different results and their implications.

*"This large dataset represents the first time a Phase 3 study has demonstrated that clearance of aggregated amyloid beta can reduce the clinical decline of Alzheimer's disease, providing new hope for the medical community, the patients, and their families,"* said Dr. Anton Porsteinsson, William B. and Sheila Konar Professor of Psychiatry, Neurology and Neuroscience, director of the University of Rochester Alzheimer's Disease Care, Research and Education Program (AD-CARE), and principal investigator. "There is tremendous unmet medical need, and the Alzheimer's disease community has been waiting for this moment. I commend Biogen, the FDA, the medical community, and the patients and their study partners for their persistence in working to make today's announcement a reality."

*In EMERGE, which met its pre-specified primary endpoint in the new analysis,* patients treated with high dose aducanumab showed a significant reduction of clinical decline from baseline in CDR-SB scores at 78 weeks (23% versus placebo, P=0.01). In EMERGE, patients treated with high dose aducanumab also showed a consistent reduction of clinical decline as measured by the pre-specified secondary endpoints: the Mini-Mental State Examination (MMSE; 15% versus placebo, P=0.06), the AD Assessment Scale-Cognitive Subscale 13 Items (ADAS-Cog 13; 27% versus placebo, P=0.01), and the AD Cooperative Study-Activities of Daily Living Inventory Mild Cognitive Impairment Version (ADCS-ADL-MCI; 40% versus placebo, P=0.001). Imaging of amyloid plaque deposition in EMERGE

– 7 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

demonstrated that amyloid plaque burden was reduced with low and high dose aducanumab compared to placebo at 26 and 78 weeks (P<0.001). Additional biomarker data of tau levels in the cerebrospinal fluid supported these clinical findings. ***Biogen believes that data from patients in ENGAGE who achieved sufficient exposure to high dose aducanumab supported the findings of EMERGE.*** . . .

***After reviewing the data in consultation with the FDA, Biogen believes that the difference between the results of the new analysis of the larger dataset and the outcome predicted by the futility analysis was largely due to patients' greater exposure to high dose aducanumab. Multiple factors contributed to the greater exposure to aducanumab in the new analysis of the larger dataset, including data on a greater number of patients, a longer average duration of exposure to high dose, the timing of protocol amendments that allowed a greater proportion of patients to receive high dose, and the timing and pre-specified criteria of the futility analysis.***

\*    \*    \*

EMERGE and ENGAGE were Phase 3 multicenter, randomized, double-blind, placebo-controlled, parallel-group studies designed to evaluate the efficacy and safety of aducanumab. The primary objective of the studies was to evaluate the efficacy of monthly doses of aducanumab as compared with placebo in reducing cognitive and functional impairment as measured by changes in the CDR-SB score. Secondary objectives were to assess the effect of monthly doses of aducanumab as compared to placebo on clinical decline as measured by MMSE, ADAS-Cog 13, and ADCS-ADL-MCI.

(Emphasis added.)

18.    Also on October 22, 2019, Biogen released a slideshow entitled "Aducanumab Update" which provided the following slides regarding aducanumab:

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## Aducanumab summary

1. Following discussions with the FDA, Biogen plans to submit a regulatory filing in early 2020

2. The futility analysis in March 2019 was based on a smaller, earlier dataset with less exposure to high dose aducanumab. The result of the futility analysis was incorrect.

3. New analysis of larger dataset showed that aducanumab reduced clinical decline in patients with early Alzheimer's disease as measured by the pre-specified primary and secondary endpoints

4. The positive results of this new analysis were driven primarily by greater exposure to high dose aducanumab in the larger dataset

5. If approved, aducanumab would become the first therapy to reduce clinical decline in Alzheimer's disease

 Biogen

## Phase 3 aducanumab data



**Sufficient exposure to high dose aducanumab reduced clinical decline across multiple clinical endpoints**

• This reduction in clinical decline was **statistically significant in EMERGE**

• Biogen believes data from patients who achieved **sufficient exposure to high dose aducanumab in ENGAGE support the findings of EMERGE**

• After consultation with the FDA, we believe that the **totality of these data support a regulatory filing**

• Patients included in the **futility analysis** had enrolled early in the studies and **had lower average exposure to aducanumab**

• **Two protocol amendments** were put in place to enable **more patients to reach high dose** and for a longer duration

• Differences between EMERGE and ENGAGE can mostly be accounted for by **greater exposure to high dose in EMERGE**

– 9 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## Safety

- The safety and tolerability profile of aducanumab in EMERGE and ENGAGE was consistent with previous studies of aducanumab

- The most common adverse events were Amyloid-Related Imaging Abnormalities-Edema (ARIA-E, 35%) followed by headache (20%)

- The majority of patients who experienced ARIA-E (74%) did not experience symptoms during the ARIA-E episode

- ARIA-E episodes generally resolved within 4-16 weeks, typically without long-term clinical sequelae

**Biogen**

19.     Also on October 22, 2019, Biogen filed with the SEC its quarterly report on Form 10-Q for the period ended September 30, 2019 (the "3Q19 Report") which was signed by Defendant Capello. Attached to the 3Q19 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Vounatsos and Capello attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20.     The 3Q19 Report stated that following, in pertinent part, regarding aducanumab:

*Aducanumab (AB mAb)*

**On October 22, 2019, we and Eisai Co., Ltd. (Eisai) announced that we plan to pursue regulatory approval for aducanumab in the U.S. and that the Phase 3 EMERGE study met its primary endpoint**

– 10 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***showing a significant reduction in clinical decline.*** We believe that results from a subset of patients in the Phase 3 ENGAGE study who received sufficient exposure to high dose aducanumab support the findings from EMERGE. ***The decision to file is based on a new analysis, conducted by Biogen in close consultation with the FDA, of a larger dataset from the Phase 3 EMERGE and ENGAGE trials that were discontinued in March 2019 following a futility analysis.***

(Emphasis added.)

21.    On January 30, 2020, Biogen issued a press release entitled "BIOGEN REPORTS FULL YEAR 2019 REVENUES OF $14.4 BILLION" which quoted Defendant Vounatsos touting aducanumab and its prospects with the FDA: "In addition, as part of our expanded pipeline, ***we are excited about the prospects for aducanumab in Alzheimer's disease and look forward to completing a regulatory filing in the U.S. as soon as possible***." (Emphasis added.)

22.    On February 2, 2020, Biogen filed with the SEC its annual report on Form 10-K for the period ended December 31, 2019 (the "2019 Annual Report") which was signed by Defendant Vounatsos. Attached to the 2019 Annual Report were certifications pursuant to SOX signed by Defendants Vounatsos and Capello attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.    The Annual Report 2019 stated the following, in pertinent part, regarding aducanumab – including as one of the Company's "Core Growth Areas":

– 11 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS





\*        \*        \*

*Aducanumab*

***In October 2019 we and our collaboration partner Eisai announced that we plan to pursue regulatory approval for aducanumab in the U.S. and that the Phase 3 EMERGE study met its primary endpoint showing a significant reduction in clinical decline.*** We believe that results from a subset of patients in the Phase 3 ENGAGE study who received sufficient exposure to high dose aducanumab support findings from EMERGE. The decision to file is based on a new analysis, conducted in consultation with the FDA, of a larger dataset from the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

Phase 3 EMERGE and ENGAGE trials that were discontinued in March 2019 following a futility analysis.

\*      \*      \*

***In 2020 we expect selling, general and administrative costs, including increases in headcount and other commercial infrastructure, to significantly increase as we support pre-launch activities associated with the potential regulatory approval of aducanumab.***

\*      \*      \*

In March 2019, based on a pre-specified futility analysis, we discontinued the global Phase 3 trials, EMERGE and ENGAGE, designed to evaluate the efficacy and safety of aducanumab in patients with early AD. ***A new analysis of a larger dataset from these trials, conducted in consultation with the FDA, showed that the Phase 3 EMERGE study met its pre-specified primary and secondary endpoints.*** In October 2019 we and Eisai announced that we plan to pursue regulatory approval for aducanumab in the U.S.

(Emphasis added.)

24.    On April 22, 2020, Biogen issued a press release entitled "BIOGEN REPORTS Q1 2020 REVENUES OF $3.5 BILLION" which stated the following, in relevant part, regarding aducanumab:

*Biogen has open BLA and has started to submit modules, expects to complete the U.S. filing for aducanumab in third quarter*

*Biogen initiated re-dosing study for aducanumab and higher dose study for SPINRAZA*

\*      \*      \*

Mr. Vounatsos added, "We delivered strong financial results in the first quarter, and we continued to develop and expand our pipeline,

– 13 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

*including making good progress toward the U.S. regulatory filing for aducanumab*, as well as bolstering our efforts in gene therapy through a collaboration with Sangamo. The magnitude and uncertainty surrounding this pandemic clearly introduce unanticipated and potentially unquantifiable risks to our business and results over the near-term. That said, *we believe that compelling opportunities exist in the therapeutic areas we are pursuing.*"

\*        \*        \*

**Aducanumab Update**

Biogen provided the following update regarding aducanumab, an anti-amyloid beta antibody candidate for the potential treatment of Alzheimer's disease that Biogen is developing in collaboration with Eisai Co., Ltd.:

•      Biogen has an open Biological License Application (BLA) with the U.S. Food and Drug Administration (FDA) and has started to submit modules of the filing.

•      Biogen has participated in additional formal interactions with the FDA using mechanisms such as Type C meetings and is preparing for a pre-BLA meeting, currently scheduled for the summer of 2020.

•      Following the pre-BLA meeting, Biogen expects to complete the U.S. filing in the third quarter of 2020.

\*        \*        \*

Regulatory interactions: *Biogen is continuing its frequent interactions with regulatory authorities including for aducanumab.*

\*        \*        \*

In April 2020 Biogen delivered an encore presentation of the Phase 3 topline results for aducanumab at the virtual AAT-AD/PD™ focus meeting. The data in this presentation were previously presented at the

– 14 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Clinical Trials on Alzheimer's Disease (CTAD) annual congress in December 2019.

*      *      *

In March 2020 the first patient was dosed in the aducanumab re-dosing study, EMBARK, in line with Biogen's commitment to offer aducanumab to eligible patients who were previously in aducanumab clinical studies. EMBARK is a global re-dosing clinical study designed to evaluate aducanumab in eligible Alzheimer's disease patients who were actively enrolled in aducanumab studies (PRIME, EVOLVE, EMERGE, and ENGAGE) in March 2019.

(Emphasis added.)

25.     On October 21, 2020, Biogen filed with the SEC its quarterly report on Form 10-Q for the period ended September 30, 2020 (the "3Q20 Report") which was signed by Defendant McDonnell. Attached to the 3Q20 Report were certifications pursuant to SOX signed by Defendants Vounatsos and McDonnell attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

26.     The 3Q20 Report stated the following, in pertinent part, regarding aducanumab:

*Aducanumab (AB mAb)*

In July 2020 we completed the submission of a Biologics License Application (BLA) to the U.S. Food and Drug Administration (FDA) for the approval of aducanumab, an anti-amyloid beta antibody candidate for the potential treatment of Alzheimer's disease that we are developing in collaboration with Eisai Co., Ltd. (Eisai). ***The completed submission followed ongoing collaboration with the FDA and includes clinical data from the Phase 3 EMERGE and ENGAGE studies as well as the Phase 1b PRIME study.*** In August

– 15 –

2020 the FDA accepted the BLA and granted Priority Review with a Prescription Drug User Fee Act action date on March 7, 2021. During the first quarter of 2020, we initiated the EMBARK global re-dosing clinical study, which is ***designed to evaluate aducanumab in eligible Alzheimer's disease patients who were actively enrolled in aducanumab studies (PRIME, EVOLVE, EMERGE and ENGAGE) in March 2019***.

\*    \*    \*

In October 2019 we and Eisai announced that, based on a new analysis, conducted by Biogen in consultation with the FDA, of a larger dataset from the Phase 3 EMERGE and ENGAGE trials that were discontinued in March 2019, ***we plan to pursue regulatory approval for aducanumab in the U.S. In July 2020 we completed the submission of a BLA to the FDA for the approval of aducanumab.***

\*    \*    \*

Provided various development, regulatory or commercial milestones are achieved, we anticipate that we may pay approximately $4.0 million of milestone payments for the remainder of 2020. We may also pay $100.0 million if aducanumab is launched in the U.S. In July 2020 we completed the submission of a BLA to the FDA for the approval of aducanumab. During the third quarter of 2020, we paid Neurimmune SubOne AG (Neurimmune) $75.0 million upon the completed submission of the BLA for aducanumab with the FDA, which was recognized as a charge to noncontrolling interests for the nine months ended September 30, 2020. In addition, for the nine months ended September 30, 2020, we recognized net profit-sharing income of $33.8 million to reflect Eisai's 45% share of the $75.0 million milestone expense.

(Emphasis added.)

27.    The statements contained in ¶¶17-26 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse

– 16 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the larger dataset did not provide necessary data regarding aducanumab's effectiveness; (2) the EMERGE study did not and would not provide necessary data regarding aducanumab's effectiveness; (3) the PRIME study did not and would not provide necessary data regarding aducanumab's effectiveness; (4) the data provided by the Company to the FDA's Peripheral and Central Nervous System Drugs Advisory Committee did not support finding efficacy of aducanumab; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Emerges

28.     On November 6, 2020, *Reuters* published an article entitled "FDA advisory panel convenes to discuss whether Biogen Alzheimer's drug should be approved" which stated that "Biogen shares were halted ahead of the advisory panel meeting."

29.     Later on November 6, 2020, *Reuters* published an article entitled "U.S. FDA panel votes cannot ignore unsuccessful trial data on Biogen Alzheimer's drug" which stated the following, in pertinent part, regarding the FDA panel's votes:

> Most outside advisers to the U.S. Food and Drug Administration voted "no" to whether a successful trial of Biogen Inc's BIIB.O experimental Alzheimer's drug can be viewed as evidence that it is effective without regard for a second, failed study.
>
> They also voted that an earlier-stage study does not offer supportive evidence of Biogen's application for the drug, aducanumab. That vote was 7-0 with 4 "uncertain" votes.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

30.     Also on November 6, 2020, Biogen issued a press release entitled "UPDATE ON FDA ADVISORY COMMITTEE'S MEETING ON ADUCANUMAB IN ALZHEIMER'S DISEASE" which stated the following, in pertinent part, regarding the FDA vote:

> Today, the U.S. Food and Drug Administration (FDA) Peripheral and Central Nervous System Drugs Advisory Committee voted 1 yes, 8 no and 2 uncertain on the question, "Does Study 302 (EMERGE), viewed independently and without regard for Study 301 (ENGAGE), provide strong evidence that supports the effectiveness of aducanumab for the treatment of Alzheimer's disease?". The Advisory Committee also voted 0 yes, 7 no and 4 uncertain on the question, "Does Study 103 (PRIME) provide supportive evidence of the effectiveness of aducanumab for the treatment of Alzheimer's disease?", and 5 yes, 0 no and 6 uncertain on the question, "Has the Applicant presented strong evidence of a pharmacodynamic effect of aducanumab on Alzheimer's disease pathophysiology?". Finally, the Advisory Committee voted 0 yes, 10 no and 1 uncertain on the question, "In light of the understanding provided by the exploratory analyses of Study 301 and Study 302, along with the results of Study 103 and evidence of a pharmacodynamic effect on Alzheimer's disease pathophysiology, it is reasonable to consider Study 302 as primary evidence of effectiveness of aducanumab for the treatment of Alzheimer's disease?"

31.     On this news, Biogen's stock price fell $92.64 per share, or 28%, to close at $236.26 per share on November 9, 2020, the next trading day, damaging investors.

32.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who

– 18 –

purchased or otherwise acquired the publicly traded securities of Biogen during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

– 19 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(a)     whether Defendants' acts as alleged violated the federal securities laws;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)     whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)     whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

– 20 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

39.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)   the omissions and misrepresentations were material;

(c)   the Company's securities are traded in efficient markets;

(d)   the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)   the Company traded on NASDAQ, and was covered by multiple analysts;

(f)   the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)   Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

40.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as

– 21 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

42.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.    This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.    The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

46.    The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

47.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

48.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

result of the Company's and the Individual Defendants' false and misleading statements.

49.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

50.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

51.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

52.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

54.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

55.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

56.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.


Dated: November 13, 2020             Respectfully submitted,

                                     **THE ROSEN LAW FIRM, P.A.**

                                     */s/Laurence M. Rosen*
                                     Laurence M. Rosen, Esq. (SBN 219683)
                                     355 S. Grand Avenue, Suite 2450
                                     Los Angeles, CA 90071
                                     Telephone: (213) 785-2610
                                     Facsimile: (213) 226-4684
                                     Email: lrosen@rosenlegal.com

                                     *Counsel for Plaintiff*

– 26 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS