Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR D. MENASHE, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BIOGEN INC., MICHEL VOUNATSOS, JEFFREY D. CAPELLO, and MICHAEL R. MCDONNELL, <br><br> Defendants. | Case No. 2:20-cv-10399-JVS-KS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL** <br><br> <u>CLASS ACTION</u> <br><br> JUDGE: James V. Selna <br> HEARING: February 22, 2021 <br> TIME: 1:30 PM <br> CTRM: 10C (Santa Ana) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF CHOICE OF COUNSEL – 2:20-cv-10399-JVS-KS

Movant Nadia Shash ("Movant") respectfully submits this memorandum in support of his motion for an Order, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(1) appointing Movant as Lead Plaintiff for all persons other than Defendants who purchased or otherwise acquired the securities of Biogen Inc. ("Biogen" or the "Company") between October 22, 2019 and November 6, 2020, inclusive (the "Class Period"), to recover damages caused by Defendants' violations of the federal securities laws (the "Class"); and

(2) appointing The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

## I.     PERTINENT BACKGROUND

On November 13, 2020, this action was filed by Rosen Law. That same day, Rosen Law issued an early notice pursuant to the PSLRA advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Declaration of Laurence M. Rosen ("Rosen Decl."), Ex. 1, filed herewith. On January 5, 2021, a substantially similar action was filed in the United States District Court for the District of Massachusetts, styled as *Shapiro v. Biogen Inc., et al.,* case no. 1:21-cv-10017-IT. The second-filed complaint includes two additional defendants, Alfred W. Sandrock, Jr. and Samantha Budd Haeberlein.

Defendant Biogen is a Delaware Company which develops, discovers, and manufactures therapies for the treatment of neurological and neurodegenerative diseases, as well as autoimmune and hematologic disorders. One of the Company's principal products in development is aducanumab, which is an investigational drug studied for the treatment of Alzheimer's disease—an

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL – 2:20-cv-10399-JVS-KS

irreversible and progressive degenerative disorder and the leading cause of dementia.

The complaints allege that during the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose that: (1) Study 302 (EMERGE), viewed independently, did not provide strong evidence that supported the effectiveness of aducanumab; (2) Study 103 (PRIME) did not provide supportive evidence of the effectiveness of aducanumab; (3) Study 302 could not be considered as primary evidence of effectiveness of aducanumab for the treatment of Alzheimer's disease in light of the results of the exploratory analyses of Study 301 (ENGAGE) and 302 and the results of Study 103; (4) the totality of the data did not provide sufficient evidence to support efficacy of aducanumab for the treatment of Alzheimer's disease; and (5) a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

In 2015, with the aim of establishing aducanumab as an effective treatment for Alzheimer's disease, Biogen launched two identical phase 3 trials, which compared the effects of two dosing regimens of aducanumab versus placebo. At the time when approximately 50% of the participants completed 78 weeks of treatment, Biogen conducted a futility analysis to assess the ability of the ongoing clinical trials to achieve their objective. Based on the results of Biogen's futility analysis, Biogen determined the trials were unlikely to meet their primary efficacy. Accordingly, in March 2019, Biogen announced the termination of its clinical trials.

Despite the disappointing results of the futility analysis, Biogen was not ready to part with its vision of reaping enormous financial benefits stemming from the introduction of a breakthrough therapy for the treatment of Alzheimer's

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF CHOICE OF COUNSEL – 2:20-cv-10399-JVS-KS

disease. Accordingly, in October 2019—approximately seven months after Biogen discontinued its phase 3 trials—Biogen shocked the medical community by announcing that its previously terminated trials were going to be revived based on newly analyzed data sets. Following the resurrection of aducanumab's development program, Biogen embarked on months-long campaign to convince the investing public, as well as the scientific community, including the FDA, that the post hoc data supported the conclusion that aducanumab was an effective solution in treating Alzheimer's disease.

Since the October 2019 announcement, Biogen executives disseminated dozens of false and misleading statements in which they touted the post hoc data analyses purportedly arising from its phase 3 and phase 1 clinical trials and the implications thereof on aducanumab's regulatory approval. For example, Defendants promoted the phase 3 clinical trials as providing consistent data for the support of aducanumab's efficacy while the phase 1 trials presented further support for aducanumab's regulatory approval. To give credence to their claims about aducanumab's prospects of obtaining regulatory approval, Biogen painted a picture of having the support of the FDA, which purportedly was exercising an intense oversight over Biogen's post hoc data analyses and research. Based on Defendants' misleading claims regarding the strength and validity of its data analyses, the investing public reasonably expected that Biogen would secure regulatory approval of aducanumab during an upcoming review by the FDA Advisory Panel.

However, unbeknownst to the investing public, Biogen's post hoc analyses were an effort to explain away the discordant phase 3 trial results. To achieve that objective, Biogen relied on dubious statistical claims and scientifically and statistically unsound practices, which could not—and did not—withstand scrutiny by the scientific and medical community. Contrary to Biogen's assertions, the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF CHOICE OF COUNSEL – 2:20-cv-10399-JVS-KS

totality of the data did not provide sufficient evidence to support the efficacy of aducanumab for the treatment of Alzheimer's disease.

The investing public learned the truth on November 6, 2020, when the FDA's independent Advisory Panel reviewed Biogen's submission. The FDA Advisory Panel voted nearly unanimously that it was not "reasonable" to consider Biogen's research as primary evidence of effectiveness of aducanumab. In an overwhelmingly negative committee meeting, the Advisory Panel delivered harsh words of reality for Biogen, observing that its data was "strikingly incongruent" and lacked "compelling statistical review." After the Advisory Panel's vote, chances aducanumab's regulatory approval significantly diminished, leaving investors shocked and disappointed.

On this news, the price of Biogen shares dropped $92.64 per share, or 28%, to close at $236.26 per share, wiping more than $14 billion in investor wealth. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

## II.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

4

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).

As set forth below, Movant satisfies the above criteria, has the largest financial interest of any movant in this litigation, and is therefore the most adequate plaintiff and should be appointed as Lead Plaintiff.

**A. Movant is Willing to Serve as Class Representative**

Movant has made a timely motion in response to a PSLRA early notice. *See* Rosen Decl., Ex. 1. Additionally, as set forth in her PSLRA certification, Movant attests that she has reviewed the complaint, adopts the allegations therein, and is willing to serve as representative of the class. *See* Rosen Decl., Ex. 2. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the class.

**B. Movant has the Largest Financial Interest in the Action**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group … that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Cavanaugh*, 306 F.3d at 730. While the PSLRA does not specify precisely how to calculate the "largest financial interest", a movant's approximate

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL – 2:20-cv-10399-JVS-KS

losses in the subject securities is the best measure. *Richardson v. TVIA*, 2007 WL 1129344 at * 4 (N.D. Cal. Apr. 16, 2007) (citing cases).

Movant lost approximately $1,659,460 in connection with purchases of Biogen securities in connection with the alleged fraud at issue. *See* Rosen Decl., Ex. 3. Movant is not aware of any other movant that has suffered greater losses in Biogen securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

**C.     Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Federal Rule of Civil Procedure Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that Movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that Movant satisfies the

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL – 2:20-cv-10399-JVS-KS

requirements of Rule 23 is sufficient. *Cavanaugh*, 306 F.3d at 730-31. At the lead plaintiff stage, "[t]he typicality and adequacy requirements of Rule 23 are the main focus…" and "[e]xamination of the remaining requirements [of Rule 23] are deferred until the lead plaintiff moves for class certification." *Richardson*, 2007 WL 1129344, at * 4 (citing *Cavanaugh*, 306 F.3d at 730).

Movant fulfills all of the pertinent requirements of Rule 23. Movant shares substantially similar questions of law and fact with the members of the class, and her claims are typical of the members of the class. Movant and all members of the class allege that Defendants violated the Exchange Act by publicly disseminating false and misleading statements about the Company and its business. Movant, as did all of the members of the class, purchased Biogen securities at prices artificially inflated due to Defendants' misrepresentations and omissions, and was damaged thereby. These shared claims also satisfy the requirement that the claims of the representative party be typical of the claims of the class.

Thus, the close alignment of interests between Movant and other class members, as well as Movant's desire to prosecute this action on behalf of the class, provides ample reason to appoint Movant as Lead Plaintiff.

**D.    Movant Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses**

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interests of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL – 2:20-cv-10399-JVS-KS

Movant's ability and desire to fairly and adequately represent the class has been discussed above. Ms. Shash has been investing for 10 years. She is currently the CEO and founder of a company certified with U.S. Small Business Administration 8(a) Program and an Economically Disadvantaged Woman Owned Small Business (EDWOSB) that provides cutting-edge acquisition, program, financial and logistical support to the federal government.  Ms. Shash is a licensed attorney and member of the State Bar of Georgia and the District of Columbia Bar.  Ms. Shash obtained her J.D. from the University of Michigan Law School and her B.S. from University of Southern California - Marshall School of Business.

Movant is not aware of any unique defenses that Defendants could raise against her that would render Movant inadequate to represent the Class.  Accordingly, the Court should appoint Movant as Lead Plaintiff for the Class.

**IV.    MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with the Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively involved since the inception of the case, including filing the initial complaint, researching Movant's and Class Plaintiffs' claims as well as reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Rosen Decl., Ex. 4.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge that will enable the firm to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## V.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the class; (2) approving Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated:   January 12, 2021                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed] Lead Counsel for the Class*

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL – 2:20-cv-10399-JVS-KS

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows: I am the Managing Partner of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

On January 12, 2021, I electronically filed the following **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 12, 2021.


/s/ Laurence M. Rosen
Laurence M. Rosen

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION OF NADIA SHASH FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF CHOICE OF COUNSEL – 2:20-cv-10399-JVS-KS