POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Attorney for Movant Biogen*
*Investor Group*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR D. MENASHE, individually, and on behalf of all others similarly situated, | Case No. 2:20-cv-10399-JVS-KS |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE BIOGEN INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL |
| v. | |
| BIOGEN INC., MICHEL VOUNATSOS, JEFFREY D. CAPELLO, and MICHAEL R. MCDONNELL, | |
| | DATE: February 22, 2021 |
| Defendants. | TIME: 1:30 p.m. |
| | JUDGE: James V. Selna |
| | CTRM: 10C |

MEMORANDUM OF POINTS AND AUTHORITIES - 2:20-CV-10399-JVS-KS

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   STATEMENT OF FACTS ........................................................................................2

III.  ARGUMENT ...........................................................................................................4

    A.    THE BIOGEN INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ................................................................................................4

        1.    The Biogen Investor Group Is Willing to Serve as Class Representative .......................................................................................5

        2.    The Biogen Investor Group Has the "Largest Financial Interest" ......6

        3.    The Biogen Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ............................7

        4.    The Biogen Investor Group Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses........................................................................................ 11

    B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ...........................................................................................................12

IV.   CONCLUSION.......................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barnet v. Elan Corp., PLC*,
    236 F.R.D. 158 (S.D.N.Y. 2005) ............................................................................... 10

*Bruce v. Suntech Power Holdings Co., Ltd.*,
    2012 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 13, 2012) ........................................ 11

*Deinnocentis v. Dropbox, Inc.*, 19-CV-06348-BLF,
    2020 WL 264408 (N.D. Cal. Jan. 16, 2020) ................................................................ 8

*Harari v. PriceSmart, Inc.*, 19-CV-958 JLS (LL),
    2019 WL 4934277 (S.D. Cal. Oct. 7, 2019) ................................................................. 9

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ......................................................... 10, 11

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ....................................................................................... 8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d. Cir. 2001) ...................................................................................... 10

*In re Comverse Tech., Inc., Sec. Litig.*,
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) .............................................. 6

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp.2d 286 (E.D.N.Y. 1998) ............................................................................... 6

*Karinski v. Stamps.com, Inc.*, CV 19-1828-R,
    2019 WL 8013753 (C.D. Cal. June 5, 2019) ............................................................... 9

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ....................................................................... 6

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012) ............................................... 11

*Lax v. First Merch. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ................................................. 6

*Osher v. Guess ?, Inc.*,
    2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) .............................................. 12

*Perrin v. Southwest Water Co.*,
    2009 U.S. Dist. LEXIS 134154 (C.D. Cal. Feb. 12, 2009) ..................................... 9, 11

*Richardson v. TVIA, Inc.*, C 06 06304 RMW,
    2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .............................................................. 7

*Robb v. Fitbit Inc.*,
    2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016) ....................................... 9, 10

*Vataj v. Johnson*, 19-CV-06996-HSG,
    2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ................................................................. 8

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................... 10

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
    2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014) .............................................. 11

### Statutes

15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii) ................................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B)(iii) ......................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................................. 1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .............................................................................. 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .................................................................................. 12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................... 12

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................... 9, 12

### Rules

Federal Rules of Civil Procedure Rule 23 ............................................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES - 2:20-CV-10399-JVS-KS

Movants Alexander Bondarenko, Igor Rabinovich, and Roman Suleymanov (collectively, the "Biogen Investor Group") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing the Biogen Investor Group as Lead Plaintiff on behalf of all investors who purchased or otherwise acquired Biogen Inc. ("Biogen" or the "Company") securities between October 22, 2019 and November 6, 2020, inclusive (the "Class Period") (the "Class"); and (2) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.     PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the above-captioned action (the "Action") and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Biogen Investor Group, having incurred losses of approximately $1,304,106 in connection with its purchases of Biogen securities, has the largest financial interest in the relief sought in the Action to its knowledge.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A.  The Biogen Investor Group further satisfies the requirements of Rule 23 because it is an adequate representative with claims typical of the other Class

members. Accordingly, the Biogen Investor Group respectfully submits that it should be appointed Lead Plaintiff.

## II.    STATEMENT OF FACTS

Biogen purports to discover, develop, manufacture, and deliver therapies for treating neurological and neurodegenerative diseases including aducanumab (BIIB037), which is an investigational human monoclonal antibody studied for the treatment of early Alzheimer's disease. Biogen licensed aducanumab from Neurimmune SubOne AG under a collaborative development and license agreement. Since October 2017, Biogen and Eisai Col., Ltd. have collaborated on the development and commercialization of aducanumab globally.

In July 2020, Biogen completed submission of a Biologics License Application ("BLA") to the U.S. Food and Drug Administration ("FDA") for the approval of aducanumab. The FDA accepted the aducanumab BLA in August 2020, granting the application priority review.

Throughout the Class Period, Biogen made false and/or misleading statements pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants had significantly overstated the significance of the data upon which the aducanumab BLA would rely and, accordingly, had likewise misled investors as to the likelihood of the product's ultimate approval by the FDA.

On November 6, 2020, *Reuters* published an article entitled "FDA advisory panel convenes to discuss whether Biogen Alzheimer's drug should be approved" which stated that "Biogen shares were halted ahead of the advisory panel meeting."

Later on November 6, 2020, *Reuters* published an article entitled "U.S. FDA panel votes cannot ignore unsuccessful trial data on Biogen Alzheimer's drug" which stated the following, in pertinent part, regarding the FDA panel's votes:

> Most outside advisers to the U.S. Food and Drug Administration voted "no" to whether a successful trial of Biogen Inc's BIIB.O experimental Alzheimer's drug can be viewed as evidence that it is effective without regard for a second, failed study.
>
> They also voted that an earlier-stage study does not offer supportive evidence of Biogen's application for the drug, aducanumab. That vote was 7-0 with 4 "uncertain" votes.

Also on November 6, 2020, Biogen issued a press release entitled "UPDATE ON FDA ADVISORY COMMITTEE'S MEETING ON ADUCANUMAB IN ALZHEIMER'S DISEASE" which stated the following, in pertinent part, regarding the FDA vote:

> Today, the U.S. Food and Drug Administration (FDA) Peripheral and Central Nervous System Drugs Advisory Committee voted 1 yes, 8 no and 2 uncertain on the question, "Does Study 302 (EMERGE), viewed independently and without regard for Study 301 (ENGAGE), provide strong evidence that supports the effectiveness of aducanumab for the treatment of Alzheimer's disease?". The Advisory Committee also voted 0 yes, 7 no and 4 uncertain on the question, "Does Study 103 (PRIME) provide supportive evidence of the effectiveness of aducanumab for the treatment of Alzheimer's disease?", and 5 yes, 0 no and 6 uncertain on the question, "Has the Applicant presented strong evidence of a pharmacodynamic effect of aducanumab on Alzheimer's disease pathophysiology?". Finally, the

Advisory Committee voted 0 yes, 10 no and 1 uncertain on the question, "In light of the understanding provided by the exploratory analyses of Study 301 and Study 302, along with the results of Study 103 and evidence of a pharmacodynamic effect on Alzheimer's disease pathophysiology, it is reasonable to consider Study 302 as primary evidence of effectiveness of aducanumab for the treatment of Alzheimer's disease?"

On this news, Biogen's stock price fell $92.64 per share, or 28%, to close at $236.26 per share on November 9, 2020, the next trading day, damaging investors.

As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.   THE BIOGEN INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Biogen Investor Group should be appointed Lead Plaintiff because, to its knowledge, it has the largest financial interest in the Action and otherwise meets the requirements of Rule 23.  Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of a lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Biogen Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. The Biogen Investor Group Is Willing to Serve as Class Representative

On November 13, 2020, counsel for plaintiff in the above-captioned action, caused a notice to be published over *PRNewswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and advised investors of Biogen securities that they had until January 12, 2021—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff. *See* Pafiti Decl., Ex. B.

The Biogen Investor Group has filed the instant motion pursuant to the Notice and has attached Certifications signed by its members attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See* Pafiti Decl., Ex. C. Accordingly, the Biogen Investor Group satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.     The Biogen Investor Group Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, the Biogen Investor Group believes that it has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1] The most critical among the Lax-Olsten Factors is the approximate loss suffered. *See, e.g.*, *Knox v. Yingli*

---

[1] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

*Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015); *Richardson v. TVIA, Inc.*, C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007).

During the Class Period, the Biogen Investor Group: (1) purchased 24,200 shares of Biogen securities; (2) expended $7,207,040 on its purchases of Biogen securities; (3) retained 24,200 of its shares of Biogen securities; and (4) as a result of the disclosures of the fraud, suffered a loss of $1,304,106 in connection with its purchases of Biogen securities. *See* Pafiti Decl., Ex. A. Because the Biogen Investor Group possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Biogen Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002). Moreover, at this stage "courts need only consider typicality and adequacy." *Deinnocentis v. Dropbox, Inc.*, 19-CV-06348-BLF, 2020 WL 264408, at *4 (N.D. Cal. Jan. 16, 2020).

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's claims have the same essential characteristics as the claims of the class at large. *Vataj v. Johnson*, 19-CV-06996-HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020).

The claims of the Biogen Investor Group are typical of those of the Class. The Biogen Investor Group alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Biogen, or omitted to state material facts necessary to make the statements they did make not misleading. The Biogen Investor Group, as did all members of the Class, purchased Biogen securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise

from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that the representative party "will fairly and adequately protect the interests of the class." *Karinski v. Stamps.com, Inc.*, CV 19-1828-R, 2019 WL 8013753, at *1 (C.D. Cal. June 5, 2019). The class representative must also have a sufficient interest in the outcome of the case to ensure vigorous advocacy. *Harari v. PriceSmart, Inc.*, 19-CV-958 JLS (LL), 2019 WL 4934277, at *3 (S.D. Cal. Oct. 7, 2019).

The Biogen Investor Group is an adequate representative for the Class. There is no antagonism between the interests of the Biogen Investor Group and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation. Additionally, the Biogen Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Moreover, the Biogen Investor Group constitutes an appropriate group of the type routinely appointed to serve as Lead Plaintiffs. *See, e.g.*, *Robb v. Fitbit Inc.*, 2016 U.S. Dist. LEXIS 62457, at *13-*14 (N.D. Cal. May 10, 2016) (appointing five-person investor group as lead plaintiff); *Perrin v. Southwest Water Co.*, 2009 U.S. Dist. LEXIS 134154, at *13 (C.D. Cal. Feb. 12, 2009) ("[c]ourts have generally held that small and

manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation."); *In re Blue Apron Holdings, Inc. Sec. Litig.,*, 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

The Biogen Investor Group likewise has demonstrated its adequacy because it is a small and cohesive group of three investors, who have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Pafiti Decl., Ex. D. Courts routinely appoint investor groups as lead plaintiff under such circumstances. *See, e.g.*, *Fitbit*, 2016 U.S. Dist. LEXIS 62457, at *13-*14 (appointing as lead plaintiff a group of five unrelated investors that submitted a joint declaration

"stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus, using a majority vote as a back-stop"); *Bruce v. Suntech Power Holdings Co., Ltd.*, 2012 U.S. Dist. LEXIS 167702, at *9 (N.D. Cal. Nov. 13, 2012) (appointing as lead plaintiff a group of three unrelated investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class"); *Southwest Water*, 2009 U.S. Dist. LEXIS 134154, at *13 (appointing as lead plaintiff a group of four investors that "submitted a Joint Declaration agreeing to 'work together to ensure the maximum recovery on behalf of the proposed class.'").[2]

### 4.    The Biogen Investor Group Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing the Biogen Investor Group as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

---

[2] *See also Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, 2014 U.S. Dist. LEXIS 49595, at *7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

(aa)   will not fairly and adequately protect the interest of the class; or

(bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of the Biogen Investor Group to fairly and adequately represent the Class has been discussed above.  The Biogen Investor Group is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class.

## B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Biogen Investor Group has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the

largest settlement ever in a class action involving a foreign issuer.  *See* Pafiti Decl., Ex. E.   Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010.  *See id.*   Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company.  *See id.*

As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in this Action, the Biogen Investor Group's counsel have the skill and knowledge which will enable them to prosecute the Action effectively and expeditiously.  Thus, the Court may be assured that by approving the selection of Lead Counsel by the Biogen Investor Group, the members of the Class will receive the best legal representation available.

## IV.   CONCLUSION

For the foregoing reasons, the Biogen Investor Group respectfully requests that the Court issue an Order: (1) appointing the Biogen Investor Group as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  January 12, 2021                               POMERANTZ LLP

                                                                     */s/ Jennifer Pafiti*
                                                                     Jennifer Pafiti (SBN 282790)
                                                                     1100 Glendon Avenue, 15th Floor
                                                                     Los Angeles, California 90024
                                                                     Telephone: (310) 405-7190

Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Counsel for Movant Biogen Investor Group and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movant Biogen Investor Group*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti