Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR D. MENASHE, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BIOGEN INC., MICHEL VOUNATSOS, JEFFREY D. CAPELLO, and MICHAEL R. MCDONNELL,<br><br>Defendants. | Case No. 2:20-cv-10399-JVS-KS<br><br>**MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br><u>CLASS ACTION</u><br><br>JUDGE: James V. Selna<br>HEARING: February 22, 2021<br>TIME: 1:30 PM<br>CTRM: 10C (Santa Ana) |

1

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................5

ARGUMENT.......................................................................................................6

I.   MS. SHASH SHOULD BE APPOINTED LEAD PLAINTIFF ...................6

II.  MS. SHASH'S SELECTION OF COUNSEL SHOULD BE APPROVED ..8

III. COMPETING MOTIONS SHOULD BE DENIED........................................9

   A.   Movant in Second Position, Alexander Bondarenko, Igor Rabinovich, and Roman Suleymanov—the "Group"—is Inadequate and Atypical......................9

     1.   The Group is an Inappropriate Group.....................................................9

     2.   Group Members Engaged in Significant Options Transactions .............12

     3.   Group Members All Engaged in Short Selling......................................13

     4.   The Group Appears to have Submitted Inaccurate Trading Information 14

   B. Movant in the Last Position, Mr. Shapiro, is Inadequate and Atypical .......16

CONCLUSION.................................................................................................17

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

# TABLE OF AUTHORITIES

**Cases**

*Alwazzan v. STAAR Surgical Co.*, 2020 WL 7872963 (C.D. Cal. Oct. 29, 2020) ...5

*Borteanu v. Nikola Corp.*, --F.Supp.3d--, 2020 WL 7392795 (D. Ariz. Dec. 15, 2020)..................................................................................................................9, 10

*Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787 (D. Idaho July 12, 2012)...................................................................................11

*Camp v. Qualcomm Inc.,* 2019 WL 3554798, (S.D. Cal. Aug. 5, 2019) ..............14

*Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1 (Del. Ch. 2003) ........................12

*Cook v. Allergan PLC*, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)..................11

*Di Scala v. Proshares Ultra Bloomberg Crude Oil, et al.*, 2020 WL 7698321 (S.D.N.Y. Jul. 28, 2020) ...............................................................................11, 13

*Eichenholtz v. Verifone Holdings, Inc., et al.*, 2008 WL 3925289 (N.D. Cal. Jan. 5, 2012)............................................................................................................9

*Ferrari v. Gisch*, 225 F.R.D. 599 (C.D. Cal. 2004) ...............................................7

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002)............................................ passim

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ...................................4, 6

*In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) ......9

*In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102 (N.D. Cal. 2001) ........12

*In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081 (S.D.N.Y. Oct. 14, 2014)....................................................................................................10

*In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833 (N.D. Cal. 2019) ................10

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC,* 2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015)................................................................................................14

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

*Isaacs v. Musk*, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018) ...............................................................................................12

*Jakobsen v. Aphria, Inc.*, 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ..............10

*Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) .......14

*Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259 (S.D.N.Y. 2019) ................9, 10

*Marcus v. J.C. Penney Co.*, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014).........13

*Micholle v. Ophthotech Corp.*, 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .....12

*Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817 (D.N.J. Feb. 14, 2018) .10

*Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 (D.N.J. Nov. 6, 2018), *reconsideration denied*, 2019 WL 2710273 (D.N.J. June 26, 2019)...................10

*Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129 (C.D. Cal. 1999) ..............6

*Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409 (E.D. Pa. 2019) ...................14

*Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273 (D. Ariz. Apr. 7, 2008)......9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388 (S.D.N.Y. 2008) .............................................................................................9

*Weisz v. Calpine Corp.*, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002)..............12

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)................................................................................4, 5, 6, 7

**Rules**

Fed. R. Civ. P. 23.................................................................................................5, 8

4

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

Lead Plaintiff Movant Nadia Shash ("Movant" or "Ms. Shash") respectfully submits this opposition to the competing lead plaintiff motions. Dkt. Nos. 12 and 14.

## BACKGROUND

Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") courts are to appoint as lead plaintiff the person with "the greatest financial stake in the outcome of the case, so long as [s]he meets the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001); 15 U.S.C. §78u-4(a)(3)(B).

Ms. Shash has triggered the PSLRA's "most adequate plaintiff" presumption. First, Ms. Shash has the largest financial interest in this litigation as she has the largest losses of all the movants:

| Movant(s) | Loss |
|---|---|
| 1. Nadia Shash | $1,659,460 |
| 2. Alexander Bondarenko, Igor Rabinovich, and Roman Suleymanov – the "Group" | $1,304,106 |
| 2a. Alexander Bondarenko | $559,100 |
| 2b. Igor Rabinovich | $533,139 |
| 2c. Roman Suleymanov | $211,867 |
| 3. Leonard Shapiro | $177,155 |

Second, as set forth in Ms. Shash's opening papers, she has made a *prima facie* showing of adequacy and typicality under Rule 23. Dkt. No. 9. Ms. Shash is a sophisticated investor and a member of the State Bar of Georgia and the District of Columbia Bar. *Id*. at 9. She is also the founder and chief executive officer of a certified U.S. Small Business Administration 8(a) Program and an Economically Disadvantaged Woman Owned Small Business (EDWOSB) company. *Id*. Her company provides cutting-edge acquisition, program, financial and logistical support to the federal government. *Id*. She earned her Bachelor of Science from

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

the University of Southern California - Marshall School of Business and her juris doctor from the University of Michigan Law School. *Id.*

Finally, the presumption that Ms. Shash is the "most adequate plaintiff" — *i.e.* the presumptive lead plaintiff — "may be rebutted only upon proof." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Because competing movants can offer no proof to rebut the presumption in favor of Ms. Shash, the Court should grant Movant's motion in its entirety and deny the competing lead plaintiff motions.

## ARGUMENT

### I.    MS. SHASH SHOULD BE APPOINTED LEAD PLAINTIFF

The Ninth Circuit has explained that the PSLRA provides a "clear path that the district court must follow in selecting the lead plaintiff." *Cavanaugh*, 306 F.3d at 729; *Alwazzan v. STAAR Surgical Co.*, 2020 WL 7872963, at * 3- * 4 (C.D. Cal. Oct. 29, 2020) (Selna, J.). After determining that notice of the action is appropriate and timely, the district court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information [s]he has provided in [her] pleadings and declarations, whether [s]he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730. Importantly, "a straightforward application of the statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Cavanaugh*, F.3d at 732. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [s]he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.*

6

Utilizing this simple process confirms that Ms. Shash is the presumptive Lead Plaintiff and the Court should grant Movant's motion.

Ms. Shash has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Ms. Shash has the largest losses of any movants before the Court. Therefore, Ms. Shash has the largest financial interest.

Once the Court "determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that [s]he does not satisfy the typicality or adequacy requirements." *Cavanaugh*, 306 F.3d at 730, 732 ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, [s]he becomes the presumptively most adequate plaintiff."); *Cendant*, 264 F.3d at 263 ("The initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy.").

Like all purported class members, Ms. Shash alleges that Defendants violated the Securities Exchange Act of 1934 ("Exchange Act") by publicly disseminating false and misleading statements about Biogen Inc.'s ("Biogen") business. Ms. Shash purchased Biogen shares at artificially inflated prices and was damaged thereby. These claims are also premised on the same legal and remedial theories and are based on the same types of misstatements and omissions as the class' claims. Thus, Movant satisfies the typicality requirement. *See generally Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999). Ms. Shash has demonstrated her adequacy as class representative by submitting a sworn certification affirming her willingness to serve as, and carry out the responsibilities of, class representative. Dkt. No. 10-2. Based on her financial interest in the litigation and satisfaction of the Rule 23 requirements at this stage,

7

Ms. Shash has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

Importantly, "once the statutory presumption has attached, it cannot be rebutted through relative comparison." *Ferrari v. Gisch*, 225 F.R.D. 599, 610 (C.D. Cal. 2004); *Cavanaugh*, 306 F.3d at 732 (explaining that courts are not to "engage[] in a freewheeling comparison of the parties competing for lead plaintiff"). Indeed, that "the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption 'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff' does not satisfy the adequacy or typicality requirements of Rule 23.'" *Cavanaugh*, 306 F.3d at 729 n.2 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

## II.    MS. SHASH'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734 ("While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of lead plaintiff.").

Here, Ms. Shash has selected The Rosen Law Firm, P.A. as Lead Counsel. The Firm has the resources and expertise to litigate this action efficiently and aggressively. As the Firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 10-4. Indeed, Rosen is one of the preeminent securities class action law firms in the country. Rosen has served as sole and co-lead counsel in numerous cases

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

around the country has recovered hundreds of millions of dollars for investors. *Id*. In 2019 alone, the ISS Institutional Securities Class Action Services ranked Rosen as the Number 3 securities class action firm both in terms of amount recovered for investors – $438,340,000 – and the number of settlements – 12.[1] Founding partner, Laurence Rosen was also recognized by Law360 as a Titan of Plaintiffs Bar for 2020.[2]

Thus, the Court may be assured that by approving Movant's selection of counsel, the members of the class will receive excellent legal representation.

### III.    COMPETING MOTIONS SHOULD BE DENIED

The competing motions should be denied as Movant has the greatest financial interest in the litigation, satisfies the requirements of Rule 23, and should therefore be appointed Lead Plaintiff without further analyses. *Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

That said some facts bear noting about the competing movants.

### A.    Movant in Second Position, Alexander Bondarenko, Igor Rabinovich, and Roman Suleymanov—the "Group"—is Inadequate and Atypical

#### 1.    The Group is an Inappropriate Group

"Although the PSLRA allows groups to serve as lead plaintiffs, 'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals,

---

[1] https://www.issgovernance.com/file/publications/ISS-SCAS-Top-50-of-2019.pdf. at p. 6-9.

[2] https://www.law360.com/articles/1254748/titan-of-the-plaintiffs-bar-rosen-law-firm-s-laurence-rosen.

9

brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Tsirekidze v. Syntax-Brillian Corp.,* 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) (quoting *In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.,* 209 F.R.D. 447, 451 (C.D. Cal. 2002)); *see also In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019); *Eichenholtz v. Verifone Holdings, Inc., et al.*, 2008 WL 3925289, at *7 (N.D. Cal. Jan. 5, 2012); *Borteanu v. Nikola Corp.*, --F.Supp.3d--, 2020 WL 7392795, at * 5 (D. Ariz. Dec. 15, 2020).

While Mr. Bondarenko and Mr. Rabinovich are brothers-in-law, Mr. Suleymanov is unrelated and appears to have been added to increase the alleged aggregated losses of the Group. Their members are dispersed throughout the country—Minnesota, Pennsylvania, and Florida—and no specific client driven reasons are provided for the entire grouping. Dkt. No. 16-4 at 2. The joint declaration (Dkt. No. 16-4) submitted by the Group is the type of general conclusory declarations that Courts have rejected.

Courts require members of a group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 262 (S.D.N.Y. 2019). Courts evaluate evidence of:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*Id*.; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008).

10

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

While the Group submitted a joint declaration in an effort to meet their burden, their boilerplate declarations are insufficient. The Group asserts that their members knew about each other prior to the lead plaintiff motion being filed, "what is conspicuously absent [. . .] is any information regarding how these [. . .] apparent strangers [. . .] found each other." *Stires v. Eco Science Solutions, Inc*., 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp*." whose members "span[] the country's geography"); *Borteanu*, 2020 WL 7392795, at * 5 (rejecting group with a similar joint declaration); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835–36 (N.D. Cal. 2019) ("Nothing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the lawyers, who are driving their lead plaintiff application. "); *Jakobsen v. Aphria, Inc*., 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently); *Kniffin*, 379 F. Supp. 3d at 263  (court not persuaded by declaration that the group would function cohesively); *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation" (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation"); *Takata v. Riot Blockchain, Inc*., 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018), *reconsideration denied*, 2019 WL 2710273 (D.N.J. June 26, 2019) (denying lead

11

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

plaintiff status to a group of investors because the "joint declaration [did] not allay the [] court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff.").

Importantly, even while aggregating *all* of the Group members' losses, Ms. Shash still has the largest financial interest.

### 2.    Group Members Engaged in Significant Options Transactions

All members of the Group engaged in significant options trading. Dkt. No. 16-3 at 4, 7, and 10. Courts have found options traders to be incapable of properly representing a class of stockholders given the fundamental differences between stocks and options. *Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (declining to appoint movant with largest financial interest as lead plaintiff whose interest was heavily in options because he was not "an investor whose claims will turn out to be typical of the average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3)" and his appointment "as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict.'"); *Di Scala v. Proshares Ultra Bloomberg Crude Oil, et al.*, 2020 WL 7698321, at *4 (S.D.N.Y. Jul. 28, 2020) (declining to appoint movant as lead plaintiff whose trades heavily involved options because such trades raised unique, substantial questions that threatened to become the focal point of the litigation); *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787, at *4 (D. Idaho July 12, 2012) ("[T]he price and value of a single share of common stock is very different from the price and value of a single call option. The options' valuable lives are limited, their value is conditional, and there is a large disparity between their price and their potential value."); *Comrie v. Enterasys Networks, Inc.*, 837

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

A.2d 1, 18 n.87 (Del. Ch. 2003) (recognizing valuation of options is fundamentally different from valuing shares); *see also Michelle v. Ophthotech Corp.,* 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (declining to appoint movant that traded in options as lead plaintiff).

### 3.    Group Members All Engaged in Short Selling

Mr. Bondarenko and Mr. Rabinovich bought put options—betting that the price of Biogen stock would fall.[3] Similarly, Mr. Suleymanov sold call options that he did not previously own—betting that the price of Biogen stock would fall.[4]

The typical class member in this case, was not investing in Biogen securities with hopes the price would fall like the Group members. Thus, the Group, as a whole and each individual member, is atypical and inadequate. *See e.g., In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109-1110 (N.D. Cal. 2001) ("It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall. Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny."); *Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018) ("[T]he Court has concerns regarding the adequacy or typicality of [movant] because it is a short seller[.]"); *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002) (finding movant to be "disqualified from serving as a lead plaintiff by virtue of the fact that he admittedly sold

---

[3] "A put option becomes more valuable as the price of the underlying stock decreases." https://www.investopedia.com/terms/p/putoption.asp.

[4] "A short call is a bearish trading strategy, reflecting a bet that the security underlying the option will fall in price." https://www.investopedia.com/terms/s/short-call.asp.

13

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

Calpine stock 'short' during the Class Period."); *Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at \*3, \*7 (E.D. Tex. Feb. 28, 2014) (finding short selling to be an "atypical trading practice" and holding short seller to be "subject to unique defenses and flaws that render him inadequate to serve as lead plaintiff").[5]

### 4.    The Group Appears to have Submitted Inaccurate Trading Information

All of the Group members submitted stock trading information that does not comport to the daily trading range or volume of Biogen stock. The only day that Group members' transacted in Biogen stock was November 6, 2020, the last day of the Class Period, and a day on which Biogen stock trading was halted.[6] Only 600 shares were traded at $328.90 per share.[7] However, on November 6, 2020, Mr. Bondarenko claims to have purchased 10,000 shares at $292.50 per share. Dkt. Nos. 16-1 and 16-3. On November 6, 2020, Mr. Rabinovich also claims to have purchased 10,000 shares at $292.50 per share. *Id*. On November 6, 2020, Mr. Suleymanov claims to have purchased 4,200 shares at prices between $310.00 and $287.50 per share. *Id*.

Therefore, all of the Group members have attested under penalty of perjury to purchasing Biogen stock at prices outside of the day's trading range and above the daily trading volume. The most obvious possible explanation for this

---

[5] Mr. Suleymanov appears to have also sold put options.  While selling put options is betting the price of Biogen securities will rise (https://www.investopedia.com/ask/answers/06/sellingoptions.asp.), selling puts further raises questions about his atypically and adequacy. *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at \*4 (S.D.N.Y. Dec. 28, 2020).
[6] https://www.marketwatch.com/story/biogens-stock-is-halted-as-fda-committee-convenes-on-experimental-alzheimers-disease-treatment-2020-11-06?siteid=yhoof2.
[7] https://finance.yahoo.com/quote/BIIB/history?p=BIIB.

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

discrepancy is that all members of the Group submitted inaccurate trading information. Courts have readily denied lead plaintiff motions in the past where errors in a movant's filings caused the court to question the movant's reliability to serve as a class representative. *See*, *e.g.*, *Irving Firemen's Relief & Ret. Fund v. Tesco PLC,* 2015 WL 1345931, at \*2-3 (S.D.N.Y. Mar. 19, 2015) (finding that discrepancies in movant's financial data precluded the court from verifying movant's claimed losses, which undermined movant's adequacy as lead plaintiff); *Karp v. Diebold Nixdorf, Inc.,* 2019 WL 5587148, at \*6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration,* 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (same); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (same).

In another case, the court found a plaintiff's typo in one transaction price in his submissions to the Court "militate against appointment and render him inadequate to serve as lead plaintiff funder Rule 23's adequacy requirement." *Camp v. Qualcomm Inc.,* 2019 WL 3554798, at \*2 (S.D. Cal. Aug. 5, 2019).  The *Camp* Court also noted that "other district courts have held similarly. In one case, a court found that while '[t]he inaccuracy [in calculations] may be explainable, ... it casts sufficient doubt on [plaintiff]'s adequacy as a representative plaintiff....'" *Id.* (citing *Nager v. Websecure, Inc.*, 1997 WL 773717, at \*2 n.1 (D. Mass. Nov. 26, 1997)).

However, *all* of the Group members stock purchases may be directly connected to their atypical options transactions. While this could explain the price discrepancy, it is also atypical as typical class members buy stock within the daily range of trading, during market trading hours, and not connected to complex options trading schemes. Moreover, as discussed above, typical class members do not purchase stock in connection with bearish options trading.

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

**B. Movant in the Last Position, Mr. Shapiro, is Inadequate and Atypical**

Mr. Shapiro *only* engaged in options trading. As discussed above, trading primarily in options is atypical and raises many unique questions given the fundamental differences between stocks and options.

Further, Mr. Shapiro's submission contains numerous errors— demonstrating that he is not properly overseeing the litigation.

In his opening brief, Mr. Shapiro incorrectly lists the defendants in the action, adding "other unknown defendants designated as Doe Defendants 1 through 10" which are not included in this action. *Compare* Dkt. No. 12-1 at 5 *with* Dkt. No. 1. Mr. Shapiro also misstates the claims in the action, adding claims under Sec. 14(a) of the Exchange Act. *Compare* Dkt. No. 12-1 at 5 *with* Dkt. No. 1. Interestingly, the related action in the United States District Court for the District of Massachusetts filed by Mr. Shapiro does not include unknown defendants designated as Doe Defendants. *Shapiro v. Biogen Inc., et al.,* case no. 1:21-cv-10017-IT (D. Mass.). The related case also  does not include claims under Sec. 14(a) of the Exchange Act. *Id.*

Mr. Shapiro includes a section in his opening brief discussing courts' general preference for utilizing a longer more inclusive class period at the lead plaintiff appointment stage. This action and Mr. Shapiro's related action in the District of Massachusetts includes the same class period, rendering this half-page section puzzling and irrelevant. *See* Dkt. No. 12-1 at 12-13.

Smaller typos are also included in that same filing such as stating "above-captioned action*s*" when there is only one above-captioned action, this action. Dkt. No. 12-1 at 5.

16

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

Mr. Shapiro's options trading along with the numerous errors in his papers demonstrates that he is atypical and inadequate—and his motion should be denied.

## CONCLUSION

For the foregoing reasons, Ms. Shash's motion should be granted in its entirety and the competing motions should be denied.

Dated: January 22, 2021                      Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed] Lead
Counsel for the Class*

17
MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the Managing Partner of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

On January 22, 2021, I electronically filed the following **MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 22, 2021.


/s/ Laurence M. Rosen
Laurence M. Rosen

MEMORANDUM OF LAW OF NADIA SHASH IN OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS
Case No. 2:20-cv-10399-JVS-KS