**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| NADIA SHASH and AMJAD KHAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIOGEN INC., MICHEL VOUNATSOS, ALFRED W. SANDROCK, JR., and SAMANTHA BUDD HAEBERLEIN,<br><br>Defendants. | Civil Action No.: 1:21-cv-10479-IT |

**MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFFS' MOTION TO STRIKE**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...............................................................................................................................2

I.     THE DISPUTED JUDICIAL NOTICE EXHIBITS ARE PROPER SUBJECTS OF JUDICIAL NOTICE AND NOT OFFERED FOR THE TRUTH OF THEIR CONTENTS...................................................................................................................2

II.    THE NOVEMBER 4, 2020 JOINT BRIEFING BOOK IS INCORPORATED BY REFERENCE INTO THE COMPLAINT AND IS NOT OFFERED BY DEFENDANTS FOR THE TRUTH OF ITS CONTENTS ................................................5

CONCLUSION..........................................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
  2015 WL 3751422 (D. Mass. June 15, 2013)............................................................................5

*Kader* v. *Sarepta Therapeutics, Inc.*,
  2016 WL 1337256 (D. Mass. Apr. 5, 2016) .................................................................2, 5, 7

*Khoja* v. *Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .......................................................................................7

*In re Philip Morris Int'l Inc., Sec. Litig.*,
  2021 WL 4135059 (S.D.N.Y. Sept. 10, 2021)...................................................................2, 5

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................................................2

*Tongue* v. *Sanofi*,
  816 F.3d 199 (2d Cir. 2016)...........................................................................................4

*Young* v. *Lepone*,
  305 F.3d 1 (1st Cir. 2002)..............................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................................................2

L.R. 7.1(a)(2) ...................................................................................................................1

Defendants Biogen Inc. ("Biogen" or the "Company") and its officers Michel Vounatsos (Chief Executive Officer), Alfred W. Sandrock, Jr., M.D., Ph.D. (Head of Research and Development), and Samantha Budd Haeberlein, Ph.D. (Head of Neurodegeneration Development) (the "Individual Defendants" and, collectively with Biogen, "Defendants"), respectfully submit this memorandum of law in opposition to Plaintiffs' motion to strike ("Motion to Strike"), ECF No. 65, certain documents referenced in, and attached as exhibits to, Defendants' motion to dismiss ("Motion to Dismiss"), ECF No. 61, the Second Amended Class Action Complaint ("Complaint").

In addition to the defects identified below, Plaintiffs' Motion to Strike does not comply with Local Rule 7.1, which states that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  L.R. 7.1(a)(2). Plaintiffs have provided no such certification (and did not inform Defendants in advance that they intended to file the Motion to Strike).

**PRELIMINARY STATEMENT**

The documents cited by Defendants are properly considered by the Court because (i) they are subject to judicial notice and (ii) in some instances, they also were cited by Plaintiffs in the Complaint, and thus are incorporated by reference into the pleading.

Furthermore, contrary to Plaintiffs' argument, Defendants do not rely upon those documents for their "truth."  Plaintiffs' fraud claims in this action are premised upon the contentions that Defendants made misleading statements about Biogen's analysis of certain clinical trial data, and that the falsity of those statements was revealed by the alternative analysis of an FDA statistician (Tristan Massie).  Defendants do ***not*** ask the Court to rule that Biogen's interpretation of the scientific data is the correct interpretation, or that Massie's interpretation is the wrong one.  Rather, in addressing why the alleged misstatements are non-actionable statements of opinion for which Plaintiffs have failed to plead objective falsity, Biogen has cited the FDA

1

materials to demonstrate that there existed different interpretations of the clinical data. The very existence of these differing interpretations, as Biogen explains, is the hallmark of opinion statements. Biogen thus does not ask the Court to review the challenged FDA materials for their "truth," but rather in support of its argument that the challenged statements are statements of opinion for which different scientists could (and did) reach different interpretations.

## ARGUMENT

When considering a motion to dismiss, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**I.   THE DISPUTED JUDICIAL NOTICE EXHIBITS ARE PROPER SUBJECTS OF JUDICIAL NOTICE AND NOT OFFERED FOR THE TRUTH OF THEIR CONTENTS**

As Defendants explained in the Motion to Dismiss, the Court may take judicial notice of documents published on the FDA's website.[1]  (*See* Motion to Dismiss at 4 n.1.)  Plaintiffs do not dispute that all of the documents that the Plaintiffs identify as Disputed Judicial Notice Exhibits[2]

---

[1]   *See Kader* v. *Sarepta Therapeutics, Inc.*, 2016 WL 1337256, at *11 (D. Mass. Apr. 5, 2016) ("[A]n official statement of the FDA, and published on a government website, constitutes a 'public record' of which the Court may take judicial notice."); *In re Philip Morris Int'l Inc., Sec. Litig.*, 2021 WL 4135059, at *7 (S.D.N.Y. Sept. 10, 2021) (on motion to dismiss, a court may "take judicial notice of documents that are 'publicly available' and whose 'accuracy cannot reasonably be questioned'" including "FDA approvals" and "the scientific reviews and press releases that accompanied those approvals.") (internal citations omitted).

[2]   The so-called "Disputed Judicial Notice Exhibits" include the following exhibits to the Trach Declaration: (i) **Exhibit B**, an article published on the FDA's website on June 7, 2021 and titled "FDA's Decision to Approve New Treatment for Alzheimer's Disease"; (ii) **Exhibit K**, excerpts from Aduhelm's "Drug Approval Package" published on the FDA's website on June 22, 2021 and titled "Clinical Review(s)"; (iii) **Exhibit L**, a document from Aduhelm's "Drug Approval Package" published on the FDA's website on June 22, 2021 and titled "Concurrence

are documents published on the FDA's website.  (*See* Trach Decl. ¶¶ 3, 12–15, 17.)  And Plaintiffs *concede* that the Disputed Judicial Notice Exhibits "are . . . subject to judicial notice."  (Motion to Strike Memo at 2.)

Plaintiffs nonetheless argue that the Court should "strike" certain "facts" contained in the Disputed Judicial Notice Exhibits because Plaintiffs claim that Defendants offer them for the truth of their contents.  (*Id.* at 1–2.)  This argument mischaracterizes Defendants' use of these documents.  The Disputed Judicial Notice Exhibits reflect analyses by FDA reviewers who came to different scientific conclusions than Massie—the FDA statistician on whom Plaintiffs rely— about the clinical trial results for aducanumab.  (*See* Motion to Dismiss at 19 n.5 (citing Exs. K & L), 22 n.7 (citing Exs. L, M, N), 24 n.8 (citing Exs. K & P).)  Although Plaintiffs insist that "Defendants ask the Court to find the FDA's conclusions about neurology are indisputably true," (Motion to Strike Memo at 3), that is incorrect.  Defendants do not argue that the FDA's opinions are correct.   Rather, Defendants cite the FDA's opinions (as well as Biogen's opinions and Massie's opinions) to demonstrate "the existence of a genuine scientific debate about how to interpret" the aducanumab trial results.  (Motion to Dismiss at 2.)

The existence of a robust scientific debate on the same scientific questions presented by

---

Memorandum from Peter Stein, MD, Office of New Drugs"; (iv) **Exhibit M**, a document from Aduhelm's "Drug Approval Package" published on the FDA's website on June 22, 2021 and titled "Clinical Pharmacology and Biopharmaceutics Review(s)"; (v) **Exhibit N**, a document from Aduhelm's "Drug Approval Package" published on the FDA's website on June 22, 2021 and titled "Summary Memorandum"; and (vi) **Exhibit P**, a document from Aduhelm's "Drug Approval Package" published on the FDA's website on June 22, 2021 and titled "DNI Review of Clinical Data."   (*See* Mem. of Law in Supp. of Pls.' Mot. to Strike ("Motion to Strike Memo," ECF No. 67) at 2.)  Notably, although Plaintiffs include Exhibit B in their list of "Disputed Judicial Notice Exhibits," they do not actually ask the Court to strike any facts for which Exhibit B is cited as a source. (*See id.* at 5 & Table 1 (referencing only pages on which Exhibit B is not cited); *id.* at 6 (requesting in the Conclusion of the Motion to Strike Memo that the Court "strike the 'facts' set out in Table 1 from the record").)

Plaintiffs' fraud claims is central to Defendants' argument that the challenged public statements about the aducanumab trial results are opinions that are not alleged to be objectively false. The objective falsity inquiry does not turn on whose interpretation of clinical trial data is accurate, and Defendants never ask the Court to choose a side in the debate. Rather, it is the existence of the scientific debate itself—a "dispute about the proper interpretation of data"—that fatally undermines Plaintiffs' theory that Defendants' scientific conclusions were objectively false, or somehow should be treated as statements of fact (not opinion). *See Tongue* v. *Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016).

Defendants' brief could not be clearer on this point. Indeed, all of the references to the Disputed Judicial Notice Exhibits—and all of the "facts" that Plaintiffs request be struck from the Motion to Dismiss (Motion to Strike Memo at 5)—are contained in the section of the Motion to Dismiss addressing objective falsity. (Motion to Dismiss at 16–24.) Defendants are citing the Disputed Judicial Notice Exhibits for the purpose of showing that there existed a robust debate about how to interpret the clinical trial data. (*See, e.g.*, Motion to Dismiss at 16 (Plaintiffs' "allegations merely reflect Dr. Massie's disagreements with Biogen concerning what scientific conclusions to draw from complex clinical trial data, and cannot plead objective falsity"); *id.* at 19 ("Courts in this district routinely dismiss cases premised on a scientific disagreement among statistical experts even where the FDA disagrees with the defendants' interpretation. That conclusion applies with greater force here, where the FDA published a Joint Briefing Book cited by the [Complaint] in which the FDA agreed with Defendants.") (internal citations omitted).)[3]

---

[3] *See also id.* at 18 ("The fact that Plaintiffs (relying on Dr. Massie's interpretation) chose to analyze the data differently and reached a different scientific conclusion about aducanumab's efficacy does not render Defendants' interpretation objectively false."); *id.* at 21 ("This is just another example of Plaintiffs forming a different scientific conclusion than Defendants by

Accordingly, Defendants do not offer the Disputed Judicial Notice Exhibits for the truth of their contents or the correctness of the FDA's opinions.  Defendants offer the disputed exhibits simply to show that the cited statements *were made* and contributed to the robust scientific debate about how to interpret the aducanumab trial results.  This is a proper purpose for judicial notice. *See In re Philip Morris*, 2021 WL 4135059, at *12 n.3 (relying on an FDA "scientific review"— subject to judicial notice and not referenced in the complaint—to reject plaintiffs' arguments that defendants' statements about clinical trials were "objectively false"); *see also Kader*, 2016 WL 1337256, at *11 (denying plaintiffs' motion to strike extra-record FDA statements because "the Court is not considering the FDA's statements for the truth of the matter asserted" and "the mere existence of such statements may be relevant to the allegedly misleading nature of Defendants' representations and omissions; whether Defendants acted with the requisite scienter; and the total mix of information available to the market during the Class Period"); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 2015 WL 3751422, at *3 (D. Mass. June 15, 2013) ("[A] court may take judicial notice of the fact that the articles were published, without taking judicial notice of the truth of their contents.").

## II.    THE NOVEMBER 4, 2020 JOINT BRIEFING BOOK IS INCORPORATED BY REFERENCE INTO THE COMPLAINT AND IS NOT OFFERED BY DEFENDANTS FOR THE TRUTH OF ITS CONTENTS

In addition to the Disputed Judicial Notice Exhibits, Plaintiffs also protest Defendants' citations to the full joint briefing book published by the FDA, which contained the interpretations of the clinical trial data by Massie.  Specifically, on November 4, 2020, the FDA published on its website a joint briefing book prepared by the FDA and Biogen concerning the aducanumab trial

---

focusing on a subset of trial data and ascribing it more weight—which does not demonstrate objective falsity.").

data in advance of the FDA advisory committee's meeting to discuss aducanumab.  (Compl. ¶¶ 262–71; Trach Decl. Ex. A.)  The joint briefing book was 343 pages in length, including two appendixes.  Appendix 2 to the joint briefing book was Massie's 97-page statistical review and evaluation of the aducanumab trial data (the "Massie Report"), which dissented from the FDA and Biogen's views.  Plaintiffs ask the Court to consider the 97-page Massie Report—which they attached as Exhibit 3 to the Complaint because they believe it supports their theory of the case— but disregard the first 246 pages of the same document from which the Massie Report dissents. (Motion to Strike Memo at 3.)  The Court should reject Plaintiffs' gamesmanship on several grounds.

*First*, the entire joint briefing book is incorporated by reference into the Complaint.  The Complaint's references to the body of the joint briefing book and its Appendix 1 span several paragraphs, include several direct quotations, and are central to Plaintiffs' theory of the case. (Complaint, ¶¶ 263(a); 266–71.)  For example, Plaintiffs rely on the joint briefing book to argue that the relationship between Biogen and the FDA improperly influenced the FDA's position on aducanumab: "For the first time in history, the FDA and a sponsor filed joint briefing materials. Their joint report set out Biogen's position; the FDA inserted short, paragraph-long comments, the majority of which simply said the FDA agreed with Biogen's position."  (Compl. ¶ 265; *see also* Compl. ¶¶ 266–271.)  In another example, Plaintiffs directly quote from the body of the joint briefing book to argue that the FDA "set about trying to find reasons why [Study 301] was wrong rather than evidence that aducanumab was ineffective." (Compl. ¶ 267; *see also* Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Second Am. Compl. ("Motion to Dismiss Opp.," ECF No. 63) at 1 ("Unless Biogen could explain Study 301's failure, the FDA would never approve aducanumab without additional clinical trials.").)  Plaintiffs also rely on the joint briefing book's

"effusive" statements about the aducanumab trial data to support their loss causation and reliance arguments.  Plaintiffs argue that "[t]he body of the 343-page report [and] its first appendix" increased Biogen's stock price on November 4, 2020 by signaling the FDA's positive position toward aducanumab, but that the stock price incorporated the implications of the Massie Report more slowly because investors had to "weigh [the Massie Report's] analyses, credibility included, against the over-the-top recommendations in the rest of the [Joint Report]."  (Motion to Dismiss Opp. at 32–33.)

Plaintiffs should not be permitted to quote from and rely on the joint briefing book in support of their own arguments and cry foul when Defendants refer to the very same document. *See Khoja* v. *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The doctrine prevents plaintiffs from selecting only portions of documents that support their claims while omitting portions of those very documents that weaken—or doom—their claims.").

*Second*, Defendants' Motion to Dismiss refers to the same sections of the joint briefing book that Plaintiffs rely on in their Complaint.  Plaintiffs seek to strike Defendants' references to statements in the joint briefing book indicating that the FDA agreed with, or reached the same scientific conclusion as, Biogen with respect to certain clinical trial data.  (*See, e.g.*, Motion to Strike Memo at 5, Table 1, row 4 (seeking to strike Defendants' argument that a statement was not objectively false because "in the Joint Briefing Book the FDA expressed the same conclusion [as Biogen] after reviewing the same data").)  But Plaintiffs cite and quote the joint briefing book for *precisely* the same point in the Complaint.  (*See, e.g.*, Compl. ¶¶ 264–69 (alleging that the joint briefing book was "effusive" because the FDA found the trial data "highly persuasive" and the FDA inserted comments throughout the book "which simply said the FDA agreed with Biogen's position.").)  Plaintiffs cannot reference the FDA's comments agreeing with Biogen's position in

the joint briefing book to support their position, but then argue that Defendants are barred from referencing the same comments in the same document in their Motion to Dismiss briefing.

*Third*, the Court is permitted to consider the entirety of the FDA's statements on the subjects at issue for their full context.  The decision in *Kader* is directly on point.  There, plaintiffs moved to strike defendants' citations to a July 29, 2014 FDA statement that was "not referenced in the Complaint."  *Kader*, 2016 WL 1337256, at *11.  The court denied plaintiffs' motion because plaintiffs specifically relied on an October 30, 2014 FDA statement that allegedly "refuted" the defendant pharmaceutical company's public statements.  *Id.*  The court explained: "Because the FDA's October 30, 2014 statement is central to Plaintiffs' allegations, the Court believes that other public comments from the FDA during the Class Period should also be considered on a motion to dismiss."  *Id.*  So too, here.  The Massie Report is indisputably incorporated by reference in the Amended Complaint and "central to Plaintiffs' allegations."  As in *Kader,* which addressed FDA statements made three months apart, the Court can consider the joint briefing book (to which the Massie Report was appended) as well as other public comments from the FDA during the proposed Class Period.  *See Young* v. *Lepone*, 305 F.3d 1, 11 (1st Cir. 2002) ("When the factual allegations of a complaint revolve around a document whose authenticity is unchallenged, 'that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss[.]'") (quoting *Beddall* v. *State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)).[4]

---

[4]    Plaintiffs argue that the Court should consider the Massie Report but disregard the joint briefing book to which it was appended because the FDA made an "arbitrary administrative decision to combine the documents into one downloadable file."  (Motion to Strike Memo at 4.)  Plaintiffs offer no support for this baseless argument.  And common sense dictates that they are wrong.  The joint briefing book and Massie's dissenting view were released as part of the same report because they offered conflicting analyses of the same clinical trial data, and were provided together to the FDA Advisory Committee ahead of its meeting and vote concerning aducanumab.

*Fourth*, the Court may take judicial notice of the joint briefing book because it is a document published by the FDA.  (*See supra* at 2 & n.1.)

*Finally*, as with the Disputed Judicial Notice Exhibits, the joint briefing book is not offered for the truth of the analyses contained therein; rather, the existence of the report and the interpretations contained therein support Defendants' argument that there existed a disagreement of scientific opinion over the significance of the results of the aducanumab clinical trials.  Plaintiffs cite to an opinion from the Bankruptcy Court of the District of New Hampshire to suggest that Defendants' use of the joint briefing book is improper.  (*See* Motion to Strike Memo at 4 (citing *In re Foistner*, 2018 WL 3532900, at *2 (Bankr. D.N.H. July 20, 2018).)  But *In re Foistner* actually supports Defendants' position.  Defendants do not ask the Court to accept the analyses in the joint briefing book as true, but instead to consider it as "merely evidence" of the FDA's position regarding the aducanumab clinical trials.  *See id.* (complaint incorporated by reference a complaint in separate proceeding which was "merely evidence of what [plaintiff] alleged in that civil action[.]").

## CONCLUSION

For all of the reasons set forth above, Plaintiffs' Motion to Strike should be denied.

Dated: November 18, 2021

Respectfully submitted,

/s/ Audra J. Soloway
Audra J. Soloway (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3289
Facsimile: (212) 492-0289
asoloway@paulweiss.com

William J. Trach (BBO #661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
william.trach@lw.com

*Counsel for Defendants Biogen Inc., Michel
Vounatsos, Alfred W. Sandrock, Jr., and
Samantha Budd Haeberlein*

## CERTIFICATE OF SERVICE

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent on November 18, 2021 to those identified as non-registered participants.

/s/ Audra J. Soloway
Audra J. Soloway

10