**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NADIA SHASH and AMJAD KHAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BIOGEN INC., MICHEL VOUNATSOS, ALFRED W. SANDROCK, JR., and SAMANTHA BUDD HAEBERLEIN, <br><br> Defendants. | Civil Action No.: 1:21-cv-10479-IT <br><br> **Leave to File Reply Granted on February 29, 2024** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..........................................................................................................1

ARGUMENT ...............................................................................................................................2

    A.    Plaintiffs' Invocation of the Fraud-on-the-Market-Presumption Does Not Solve Plaintiffs' Failure to Plead Reasonable Reliance. ..........................................3

    B.    Even Under Plaintiffs' Defective Theory, Khan's Claim, at a Minimum, Must Be Dismissed. ...........................................................................................9

    C.    The Massie Report Was the Sole Corrective Disclosure. .....................................10

CONCLUSION ............................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re American Realty Cap. Props., Inc. Litig.*,
2019 WL 2082508 (S.D.N.Y. May 10, 2019) ............................................................................7

*Ashland Inc.* v. *Morgan Stanley & Co.*,
652 F.3d 333 (2d Cir. 2011)......................................................................................................9

*In re AVEO Pharms., Inc. Sec. Litig.*,
2017 WL 5484672 (D. Mass. Nov. 14, 2017) ...............................................................12, 13

*Biggins* v. *Hazen Paper Co.*,
111 F.3d 205 (1st Cir. 1997)....................................................................................................3

*In re Biogen Sec. Litig.*,
179 F.R.D. 25 (D. Mass. 1997)................................................................................................4

*Callinan* v. *Lexicon Pharms., Inc.*,
479 F. Supp. 3d 379 (S.D. Tex. 2020) ..................................................................................11

*City of Bristol Pension Fund* v. *Vertex Pharms. Inc.*,
12 F. Supp. 3d 225 (D. Mass. 2014) ..............................................................................5, 9, 10

*In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*,
2019 WL 1299673 (D.N.J. Mar. 21, 2019)..............................................................................9

*Erica P. John Fund, Inc.* v. *Halliburton Co.*,
563 U.S. 804 (2011)..................................................................................................................5

*In re Fed. Nat. Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*,
247 F.R.D. 32 (D.D.C. 2008)...................................................................................................4

*Francisco* v. *Abengoa, S.A.*,
481 F. Supp. 3d 179 (S.D.N.Y. 2020)................................................................................9, 12

*Hayes* v. *MagnaChip Semiconductor Corp.*,
2016 WL 7406418 (N.D. Cal. Dec. 22, 2016).........................................................................4

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020).......................................................................14

*Karth* v. *Keryx Biopharms., Inc.*,
334 F.R.D. 7 (D. Mass. 2019)........................................................................................4, 8, 14

*Katyle* v. *Penn Nat'l Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) .........................................................................................11

*Lawless* v. *Town of Freetown*,
  2023 WL 7619019 (D. Mass. Nov. 14, 2023) ...........................................................3

*Okla. Firefighters Pension & Ret. Sys.* v. *Six Flags Entm't Corp.*,
  2023 WL 3781645 (N.D. Tex. June 2, 2023) ...........................................................5, 8

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010)...........................................................................................11

*In re PolyMedica Corp. Sec. Litig.*,
  432 F.3d 1 (1st Cir. 2005)..............................................................................................6

*Pub. Emps.' Ret. Sys. of Miss., P.R. Tchrs.' Ret. Sys.* v. *Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) .........................................................................................7

*Semerenko* v. *Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000)...........................................................................................3

*W. Virginia Pipe Trades Health & Welfare Fund* v. *Medtronic, Inc.*,
  325 F.R.D. 280 (D. Minn. 2018)...................................................................................4

*Wardrop* v. *Amway Asia Pac. Ltd.*,
  2001 WL 274067 (S.D.N.Y. Mar. 20, 2001) .............................................................9

*Yan* v. *ReWalk Robotics Ltd.*,
  391 F. Supp. 3d 150 (D. Mass. 2019) ......................................................................10

## Other Authorities

*Treatise on the Law of Securities Regulation* § 12:90 (2023) ...........................................4

Defendants respectfully submit this reply in further support of their Rule 12(c) motion for judgment on the pleadings.  (Doc. No. 116.)

## PRELIMINARY STATEMENT

Defendants' opening brief showed they are entitled to judgment on the pleadings because Plaintiffs have not pled, and cannot plead, either (i) reliance as a matter of law by Lead Plaintiff Nadia Shash and named plaintiff Amjad Khan or (ii) control person status as to Individual Defendant Dr. Samantha Budd Haeberlein.  (Defs.' Br., Doc. No. 117 at 16–18.)  In their opposition, Plaintiffs concede the latter point.  (Pls.' Opp'n, Doc. No. 122 at 18.)  Accordingly, Defendants' motion should be granted as to Dr. Budd Haeberlein, who should be dismissed from this case.

As for the remaining argument, Plaintiffs concede that both Shash and Khan purchased stock only *after* the allegedly concealed information was—by Plaintiffs' own admission and under the First Circuit's reasoning—"revealed" in the Massie Report.  (Second Am. Compl. ("SAC"), Doc. No. 58 ¶¶ 151, 282; USCA Op., Doc. No. 83 at 39, 41.)  Because shareholders who purchase *after* the alleged corrective disclosure—here, the Massie Report—cannot plead reliance or standing as a matter of law, Plaintiffs' claims must be dismissed.  (Doc. No. 117 at 13–16.)  Plaintiffs' arguments to the contrary are unavailing.

*First*, Plaintiffs argue that reasonable reliance cannot be decided at the pleading stage without adjudicating fact-based issues such as loss causation and price impact.  That argument, however, improperly conflates separate legal inquiries.  Plaintiffs cannot rely on the fraud-on-the-market presumption to side-step Defendants' Rule 12(c) motion.  Irrespective of how long it took the market price to fully incorporate the Massie Report—which is a loss causation and damages issues—it was unreasonable as a matter of law for Shash and Khan to purchase stock *after* the allegedly concealed information was public, when they either knew or could have known the

allegedly concealed information. Plaintiffs' cases on this point are inapposite. And, Plaintiffs' incorrect theory is inapplicable, in all events, to Plaintiff Khan, who purchased on November 5 near the lowest price at which Biogen shares traded that day—*i.e.*, after the Massie Report's effect on the stock price had already occurred under Plaintiffs' own theory.

***Second***, Plaintiffs now try to characterize the Massie Report as merely a "partial" corrective disclosure, arguing that both Shash and Khan purchased before what they describe as "new corrective information": the Advisory Committee vote on November 6, which allegedly caused a further stock price decline on November 9. But as Plaintiffs themselves allege, the "cause" of the Advisory Committee's "dissatisfaction was the ***facts revealed in the Draft Massie Report***." (Doc. No. 58 ¶ 282 (emphasis added).) Thus, under well-settled law, the Advisory Committee vote is not a corrective disclosure because it did not reveal any new information that Defendants had allegedly concealed. Moreover, Plaintiffs' argument cannot be squared with the First Circuit's decision, which described—based on Plaintiffs' own allegations— the Massie Report as ***the*** corrective disclosure that revealed the allegedly concealed subgroup data that supposedly made Dr. Sandrock's July 22, 2020 statement false.

## ARGUMENT

As Defendants have shown, numerous cases have held that shareholders who purchase after the alleged corrective disclosure cannot as a matter of law have reasonably relied on the alleged false statement predating that disclosure. (Doc. No. 117 at 13–16.) And, significantly, Plaintiffs do not dispute that they purchased ***after*** the Massie Report was released: Shash purchased "a few hours" later, and that Khan purchased "a day" later. (Doc. No. 122 at 13.)

Plaintiffs make three arguments in an effort to evade dismissal, but none are persuasive.

2

### A.    Plaintiffs' Invocation of the Fraud-on-the-Market-Presumption Does Not Solve Plaintiffs' Failure to Plead Reasonable Reliance.

The first argument Plaintiffs make is that reliance cannot be addressed now because they are relying on the fraud-on-the-market presumption and, at the time of their purchases, "the market price was still artificially inflated by Biogen's public misleading statements." (Doc. No. 122 at 11.) Plaintiffs further claim, citing the First Circuit's ruling that Plaintiffs adequately pleaded loss causation, that the fact that "the market itself took several days to incorporate the Massie Report . . . shows as a practical matter that investors' presumed reliance between the publication of the Massie Report and the suspension of trading on November 6 was reasonable." (*Id.* at 13.)

This argument, however, confuses the standards for loss causation and price impact with the requirement to plead reasonable reliance. The question raised by Defendants' Rule 12(c) motion is whether a plaintiff can reasonably rely on an alleged misstatement if, at the time of purchase, the allegedly concealed information is known or knowable.[1] The Rule 12(c) motion thus relies on the settled principle that a shareholder is not defrauded if he knew, or could have known, the very information allegedly concealed. *See Semerenko* v. *Cendant Corp.*, 223 F.3d 165, 179 n.8 (3d Cir. 2000) ("To establish that an investor's reliance was unreasonable, a defendant

---

[1] Plaintiffs also contend that the mandate rule forecloses the Court from considering Defendants' reliance argument. (Doc. No. 122 at 8.) This argument is without merit. The mandate rule does not concern what the First Circuit "implicitly decided," as Plaintiffs suggest. (*Id.*) Rather, as this Court explained, the mandate rule applies only to what the Court of Appeals "***actually*** addressed[.]" (1/12/2024 Conf. Tr., Doc. No. 107, at 16:25–17:2 (emphasis added).) Because even Plaintiffs acknowledge that the First Circuit did not actually address Defendants' reliance argument on appeal (Doc. No. 122 at 8), the mandate rule does not bar the Court from considering this argument now. *See Lawless* v. *Town of Freetown*, 2023 WL 7619019, at *4 (D. Mass. Nov. 14, 2023) (Talwani, J.) ("[I]ssues that were not decided by the appellate court and that are thus outside the scope of the mandate are not affected by the mandate." (quoting *De Jesus-Mangual* v. *Rodriguez*, 383 F.3d 1, 6 (1st Cir. 2004))); *see also Biggins* v. *Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir. 1997) ("[M]andates require respect for what the higher court decided, not for what it did not decide.").

may show that the investor knew, or had reason to know, that the misrepresentations were in fact false."); 4 Thomas L. Hazen, *Treatise on the Law of Securities Regulation* § 12:90 (2023) ("[O]nce accurate information has been disclosed publicly, it is not reasonable for an investor to rely on representations to the contrary.").

Applying this principle, courts routinely exclude from the class purchases that took place following the corrective disclosure. *See, e.g.*, *Karth* v. *Keryx Biopharms., Inc.*, 334 F.R.D. 7, 18 (D. Mass. 2019) (explaining that "[a] plausible class period can [] extend no further than" the date of the corrective disclosure), *aff'd*, 6 F.4th 123 (1st Cir. 2021); *W. Virginia Pipe Trades Health & Welfare Fund* v. *Medtronic, Inc.*, 325 F.R.D. 280, 291 (D. Minn. 2018) (limiting class period to the first of three alleged corrective disclosures because "[o]nce the deception is publicly revealed for the first time by a corrective disclosure, a reasonable investor cannot be said to have relied on the company's misrepresentation or omission in deciding to invest"); *Hayes* v. *MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at *8 (N.D. Cal. Dec. 22, 2016) ("A number of district courts have declined to extend the class period in a securities case beyond the date of disclosures like those made by [defendant] here."); *In re Fed. Nat. Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*, 247 F.R.D. 32, 40 (D.D.C. 2008) (excluding from class post-corrective disclosure purchasers because such purchasers "stand in a different posture than those who purchased beforehand, and should not be able to claim a reasonable reliance on [defendant]'s financial statements"); *In re Biogen Sec. Litig.*, 179 F.R.D. 25, 41 (D. Mass. 1997) (limiting class to plaintiffs who purchased prior to initial corrective disclosure because "any possibly misleading information that entered the market due to [the alleged misstatement] was cured by" that disclosure).

Plaintiffs' contention that they "are entitled to a presumption of reliance based on the fraud on the market theory," (Doc. No. 122 at 8), is entirely beside the point. Here, Defendants are not raising the factual question of whether the alleged misstatement had a price impact, much less how long it would take the stock price to fully incorporate the Massie Report following its publication. While these inquiries may be relevant to price impact and loss causation, those issues need not be addressed at this time, nor should they be.[2] The fraud-on-the-market presumption does not rescue a claim by a plaintiff who purchased following a corrective disclosure, as Plaintiffs did here. Significantly, Plaintiffs acknowledge prevailing case law holding that whether or not the fraud-on-the-market presumption applies in no way prevents a court from ruling on individual issues of reliance at the pleading stage, as Defendants' motion here asks this Court to do. (*See* Doc. No. 122 at 14–15.) Therefore, the fraud-on-the-market presumption does not defeat Defendants' Rule 12(c) motion. *See, e.g.*, *City of Bristol Pension Fund* v. *Vertex Pharms. Inc.*, 12 F. Supp. 3d 225, 235 (D. Mass. 2014) (finding that plaintiffs lacked standing for failure to plead reasonable reliance notwithstanding plaintiffs' reliance on the fraud-on-the-market presumption); *Okla. Firefighters Pension & Ret. Sys.* v. *Six Flags Entm't Corp.*, 2023 WL 3781645, at *8 (N.D. Tex. June 2, 2023) (same).

---

[2] Indeed, the portion of the First Circuit ruling on which Plaintiffs rely—where the First Circuit held that it was a fact issue whether a second-day decline can suffice to prove losses (*see* Doc. No. 122 at 11)—is a loss causation ruling. Loss causation, as the Supreme Court has clearly held, is a different element of a fraud claim from reliance. *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 563 U.S. 804, 812 (2011) ("Loss causation addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock."). For this same reason, the portion of the First Circuit's "expla[nation]" that Plaintiffs quote to explain "why Plaintiffs' allegation of a delayed response was plausible" (Doc. No. 122 at 7), does not govern the Court's analysis here, as this portion of the First Circuit opinion relates to loss causation—not reliance.

Plaintiffs' second argument is that that their reliance was reasonable "in a practical sense" because the Massie Report may have required "expert" analysis for the market to fully understand it.[3]  (Doc. No. 122 at 5, 12.)  As an initial matter, such "expert" analysis was not required where, as here, the Massie Report stated in its opening pages, that "the totality of the data does not seem to support the efficacy of the high dose."  (Ex. 3 to SAC, Doc. No. 58-3 at 11.)[4]  In any event, again, this further conflates the distinct inquiries at issue.  The question is not whether "expert" analysis was required to interpret publicly available information—the question is whether an investor can reasonably rely on an alleged misstatement after the "truth" has become public.  Further, Plaintiffs' two cases citing to "experts" are off-point:

---

[3] Plaintiffs relatedly argue, in reliance on *In re PolyMedica Corporation Securities Litigation*, 432 F.3d 1 (1st Cir. 2005), that their reliance was reasonable because "arbitrageurs had not absorbed the Massie Report by the time of Plaintiffs' purchases," and it would have been "impossible" for investors to act faster than the market.  (Doc. No. 122 at 13–14.)  But this case discussed the "capacity of arbitrageurs to 'seek out new information and evaluate its effects on the price of securities'" in the context of a discussion about market efficiency, not reliance on information available to the public at the time that an investor purchased stock.  *PolyMedica*, 432 F.3d at 9 (internal citations omitted).

[4] The sole remaining alleged misstatement in this case, which was made by Dr. Sandrock on a July 22, 2020 Biogen earnings call, is:

> I think -- look, the filing is based on these 3 studies, EMERGE, ENGAGE and PRIME.  EMERGE is the first study to show an effect, not only on the primary endpoint, but all 3 prespecified secondary endpoints.  We believe that data from ENGAGE -- that portions of the data from ENGAGE, a negative study, that portions of it do support the analysis that we did with EMERGE.  And then I'll say – and also PRIME, which was published, shows even though the clinical endpoints were exploratory endpoints, on the highest dose, there was an effect on MMSE as well as [Clinical Dementia Rating Scale] sum of boxes.  And again, very similar that the lower doses did not show much of an effect.  ***So consistent with the findings from ENGAGE and EMERGE, you really need to get to the higher dose. And I think our data are all consistent with that.***

(Doc. No. 58 ¶ 191.)  The portion of Dr. Sandrock's statement that the First Circuit held was adequately pleaded as false or misleading appears in bold and italics.  (Doc. No. 83 at 18.)  Only this portion of Dr. Sandrock's statement was deemed actionable by the First Circuit.  (*Id.*)

Plaintiffs first cite the loss causation ruling in *Public Employees' Retirement System of Mississippi, Puerto Rico Teachers' Retirement System* v. *Amedisys, Inc.*, 769 F.3d 313 (5th Cir. 2014). That case considered whether a *Wall Street Journal* article reflecting a detailed analysis of Medicare data was a corrective disclosure. *Id.* at 323. The court held that it was plausible, at the pleading stage, that "the efficient market was not aware of the hidden meaning of the Medicare data that required expert analysis, especially where the data itself is ***only available to a narrow segment of the public*** and not the public at large." *Id.* (emphasis added). The court further noted that "***the raw data*** itself had little to no probative value in its native state." *Id.* (emphasis added). This case is inapposite because it concerned loss causation, not reasonable reliance. Moreover, here, the Massie Report was available to ***all*** shareholders, it did not contain merely "raw" data, and it contained unmistakable language in the executive summary that "the totality of the data does not seem to support the efficacy of the high dose." (Doc. No. 58-3 at 11.) *Amedisys* thus does not support Plaintiffs' argument.

Plaintiffs' other case, *In re American Realty Capital Properties, Inc. Litigation,* 2019 WL 2082508 (S.D.N.Y. May 10, 2019), is also inapplicable. In that case, the court evaluated whether defendants' statements in its Form 10-K were ***materially misleading*** in light of other tables and statements included within the same document. *Id.* at \*1–2. The court concluded, in the context of assessing materiality, that it could not rule as a matter of law that the alleged misstatements were not materially false in light of the mix of additional tables and various statements. *Id.* The court did not base its holding on whether the additional tables and statements in the 10-K required "careful and sophisticated analysis," as Plaintiffs claim—and, in any event, this holding did not concern reliance at all.

Finally, having failed to identify any on-point cases concerning reliance, Plaintiffs attempt to distinguish Defendants' authorities based on factors such as the relative timing of the plaintiffs' alleged stock purchases. (Doc. No. 122 at 14–15.) But Plaintiffs' critiques miss the mark: in each of Defendants' cases, the courts found reliance unreasonable as a matter of law where the plaintiffs' purchases ***followed*** the corrective disclosure. In other words, the relative timing of the plaintiffs' purchases (whether by days or months) was not relevant, as Plaintiffs argue. Instead, the fact of the corrective disclosure itself, rather than the timing of plaintiffs' purchases in relation to it, governed the courts' analyses.

For example, in *Oklahoma Firefighters Pension & Retirement System* v. *Six Flags Entertainment Corporation*, 2023 WL 3781645 (N.D. Tex. June 2, 2023), plaintiffs purchased stock following an earnings call that the Fifth Circuit had previously determined was the corrective disclosure. *Id.* at *4–6. On remand, in ruling that plaintiffs lacked standing, the district court found that defendants' partial disclosures, which culminated in the earnings call after which plaintiffs had purchased, "sever[ed] the link between the alleged misrepresentation[s] and [plaintiff's] decision to trade at a fair market price." *Id.* (citation omitted). In its analysis, the court did not focus on the length of time between plaintiffs' purchases and the various disclosures but on the fact that the purchases occurred ***after*** the corrective disclosure at issue. *Id.* at *8 ("Since the Fifth Circuit held as a matter of law that the October 2019 earnings call depleted Defendants' statements of any further actionability, Plaintiffs cannot assert any 'reasonable reliance' on prior misrepresentations in its 'decision to purchase.'").

Defendants' other cases—which Plaintiffs attempt unsuccessfully to distinguish—applied the same reasoning. *See Karth*, 334 F.R.D. at 21 (plaintiff was "unable to plausibly allege reliance because his July 2016 purchase of [defendants'] shares ***came after*** the curative disclosures in

8

February and April 2016" (emphasis added)); *Vertex*, 12 F. Supp. 3d at 235 (plaintiffs who purchased after a corrective disclosure had no standing to pursue the claims where the alleged misstatement was that the defendants' data "showed absolute improvement in patients," and the corrective disclosure "announced that the improvement was relative, not absolute."); *In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*, 2019 WL 1299673, at *13 (D.N.J. Mar. 21, 2019) (finding plaintiffs lacked standing to pursue claims where they purchased following a corrective disclosure that "sufficiently corrected the prior statements such that reliance on same would no longer be reasonable"); *Francisco* v. *Abengoa, S.A.*, 481 F. Supp. 3d 179, 206–07 (S.D.N.Y. 2020) (securities fraud plaintiffs lacked standing because they purchased following the corrective disclosures at issue).[5]

For these reasons, Shash and Khan could not have reasonably relied on the alleged July 22, 2020 statement, and their claims must be dismissed.

**B.    Even Under Plaintiffs' Defective Theory, Khan's Claim, at a Minimum, Must Be Dismissed.**

The Court should dismiss the claims by both Shash and Khan for the reasons above, but even if Shash's claim could somehow survive under Plaintiffs' flawed theory, Khan's claim must be dismissed. Plaintiffs concede that Khan purchased on November 5, one day ***after*** the Massie Report was published, and, according to Khan's PSLRA certification, he purchased his shares at

---

[5]  Plaintiffs attempt to distinguish two other cases cited by Defendants by contending that the nature of the corrective disclosures themselves was dispositive in the courts' rulings. For instance, they highlight that the disclosures "specifically addressed the risks the plaintiffs alleged were concealed" (*Ashland Inc.* v. *Morgan Stanley & Co.*, 652 F.3d 333, 335 (2d Cir. 2011)) or were "one of the biggest news items that year" (*Wardrop* v. *Amway Asia Pac. Ltd.*, 2001 WL 274067, at *4 (S.D.N.Y. Mar. 20, 2001), *aff'd*, 26 F. App'x 89 (2d Cir. 2002)). (*See* Doc. No. 122 at 15.) But these factors are not prerequisites for determining the viability of a corrective disclosure, as reflected in Defendants' other cited cases, discussed *supra*, and, in any event, there is no question that the Massie Report specifically revealed the concealed information and was the subject of immediate press attention. (Doc. No. 117 at 9–12, 12 n.4.)

the price of $324.56 per share.  (Doc. No. 42-2.)  Based on publicly available trading data, Khan

purchased *after* Biogen's shares had traded down from the opening price of $348.00; in fact, Khan

purchased close to the intra-day lowest trading price of $321.50.[6]  In other words, even under

Plaintiffs' (incorrect) theory, Khan purchased after the market had "absorbed the Massie Report."

Thus, Plaintiffs' flawed arguments still do not save Khan's claim—as his reliance remains

unreasonable as a matter of law—and his claim must be dismissed.  *See, e.g.*, *Vertex*, 12

F. Supp. 3d at 235 (lead plaintiff who purchased stock one day after corrective disclosure "lacks

standing to contest" earlier alleged misstatements).

C.      **The Massie Report Was the Sole Corrective Disclosure.**

Plaintiffs also argue that Shash and Khan can allege reliance because both purchased before

a second corrective disclosure, namely, the Advisory Committee's November 6 vote on certain

questions presented to it.  Plaintiffs argue that the Advisory Committee vote provided "new

corrective information," and the Massie Report is thus only a partial corrective disclosure.  (Doc.

No. 122 at 17–18.)  That argument, however, is inconsistent with the allegations in their complaint

cannot be reconciled with the First Circuit's ruling or with loss causation principles.

Addressing the First Circuit's ruling first, the First Circuit explicitly observed—based on

Plaintiffs' own allegations—that the Massie Report is *the* corrective disclosure in this case.  The

Court did not describe it as a "partial" corrective disclosure.  To the contrary, when reviewing a

Complaint that purported to allege two corrective disclosures and two stock drops, the First Circuit

---

[6]     *Biogen    Inc.   (BIIB)   Historical   Trading   Data*, Yahoo!   Finance,   *at*
https://finance.yahoo.com/quote/BIIB/history (last accessed March 6, 2024).  The Court may take
judicial notice of Biogen's stock price in resolving Defendants' motion.  *Yan* v. *ReWalk Robotics
Ltd.*, 391 F. Supp. 3d 150, 154 n.2 (D. Mass. 2019) ("Because [defendant's] common stock is
publicly traded on NASDAQ, its stock price can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned."), *aff'd*, 973 F.3d 22 (1st Cir. 2020).

10

found that Plaintiffs adequately pleaded that the Massie Report revealed the concealed subgroup data that rendered false Dr. Sandrock's July 22, 2020 statement. (Doc. No. 83 at 39 ("[I]nvestors' loss causation allegations plausibly indicate that Biogen's stock price dropped after *Massie's report revealed* the company's misstatements about aducanumab[.]" (emphasis added)); *id.* at 41 ("Biogen's stock price dropped after *Massie's report revealed* the company's misstatements about aducanumab." (emphasis added)).) The First Circuit's ruling thus forecloses Plaintiffs' attempted relegation of the Massie Report to a mere partial corrective disclosure.

Plaintiffs' attempt to invoke a second corrective disclosure is inconsistent with the allegations in their complaint and wrong as a matter of law. Plaintiffs assert that the Advisory Committee's "reaction to the Massie Report was itself new corrective information." (Doc. No. 122 at 18.) But Plaintiffs allege in the SAC that it was "*the facts revealed in the Massie Report*" that "*cause[d] the [Advisory Committee]'s dissatisfaction[.]*" (Doc. No. 58 ¶ 282 (emphasis added); *see also id.* ¶ 151 ("The *Draft Massie Report revealed* the data Defendants had concealed . . . " (emphasis added)).) As a result, the only new information that entered the market is the *outcome* of the Advisory Committee vote, which reflects the opinions of the Committee's members. And, Plaintiffs do not allege that this new information *corrected the alleged misstatement*. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (explaining that a corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentation[]"); *Katyle* v. *Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 473 (4th Cir. 2011) ("Corrective disclosures must present facts to the market that are new, that is, publicly revealed for the first time, because, 'if investors already know the truth, false statements won't affect the price.'" (citation omitted)); *Callinan* v. *Lexicon Pharms., Inc.*, 479 F. Supp. 3d 379, 440 (S.D. Tex. 2020) (holding that FDA Advisory Committee's vote on drug approval could not constitute

11

corrective disclosure because "[n]either the FDA's views, nor the comments or vote of the Committee Members mean that the information issued publicly" by defendants regarding drug's development "was false or misleading"), *aff'd,* 858 F. App'x 162 (5th Cir. 2021).

Plaintiffs rely on *In re AVEO Pharmaceuticals, Inc. Securities Litigation*, 2017 WL 5484672 (D. Mass. Nov. 14, 2017) as support for their argument, but, in fact, *AVEO* undermines Plaintiffs' argument. In *AVEO*, the parties disputed whether certain information about a new drug's survival data was fully corrected in FDA briefing materials shared with the Oncologic Drugs Advisory Committee ("ODAC"), or whether the ODAC panel's subsequent discussions regarding the data and the approval of the drug was a second corrective disclosure. *Id.* at *2. The court held that the ODAC panel's subsequent discussions were a corrective disclosure based on allegations in that case as to which there are no parallels in the instant case:

*First*, the *AVEO* plaintiffs alleged that additional information was revealed at the ODAC meeting, including about survival rates for competitor drugs. 2017 WL 5484672, at *7. Here, in contrast, Plaintiffs' claim is based on subgroup analyses contained in the Massie Report, and they do not identify new data revealed by the Advisory Committee vote. (*See* Doc. No. 58 ¶ 151 ("The **Draft Massie Report revealed** the data Defendants had concealed . . . "); *id.* ¶ 282 ("The cause of the panel's dissatisfaction was the ***facts revealed in the Draft Massie Report***.") (emphases added).)[7]

*Second*, the *AVEO* defendants had made public statements "offering their own view of the outcome of the ODAC meeting as it pertained to the likelihood of approval." 2017 WL 5484672, at *7. The *AVEO* court therefore reasoned that "Defendants created a link between approval, over

---

[7] In *Francisco*, the court specifically found that, as here, plaintiffs' contention that there were additional partial disclosures following their purchases "fl[ew] in the face of [p]laintiffs' own allegations." 481 F. Supp. 3d at 205–06.

which any news was material to the market, and the actual outcome of the meeting." *Id.*  No such link is alleged here.  Furthermore, on the July 22, 2020 earnings call, Dr. Sandrock expressly *disclaimed* forecasting the impact of the data on FDA review.  (*See* July 22, 2020 Earnings Call Transcript, Doc. No. 118-2, at 19 ("I don't want to comment on FDA's internal processes"); *id.* at 22 ("[W]hat the FDA chooses to look at is, that's their purview"); *id.* ("In terms of the Advisory Committee, it would not be unusual for the first disease modifying therapy of this type to be reviewed at an Advisory Committee.  But whether or not we have one and when it will be, will be up to the FDA and we expect to hear that at around the time that we are notified of whether or not the file has been accepted.").)  Defendants made no other statement referring to an Advisory Committee on the call.  (*See generally* Doc. No. 118-2.)

*Third*, the *AVEO* court found it relevant that "[t]he FDA and ODAC panel's full view of the [new drug application] could not become clear to the market until the ODAC meeting, *generally the only forum in which the FDA publicly states its views* on interactions with applicant companies like Aveo or clinical trials."  2017 WL 5484672, at *7 (emphasis added).  By contrast, here, the briefing materials discussed at the Advisory Committee meeting on November 6, 2020 in this case were released by the FDA on November 4, 2020 and included the Massie Report.  (Doc. No. 58 ¶¶ 262–63.)

Thus, as the First Circuit recognized, the Massie Report is the sole alleged corrective disclosure.[8]  This is fatal to Shash's and Khan's claims, as they purchased after the Massie Report

---

[8]  The cases that Plaintiffs cite to suggest that the Court should defer resolution of this issue until class certification do not involve, as here, an intervening appellate ruling confirming the specific corrective disclosure.  (Doc. No. 122 at 17.)

was published.  Defendants are thus entitled to judgment on the pleadings because Plaintiffs cannot establish reliance or standing.[9]  (*See supra* Section A.)

## **CONCLUSION**

For the reasons set forth above and in Defendants' opening brief, Defendants' motion for judgment on the pleadings should be granted and the Complaint should be dismissed in its entirety. To the extent this Court does not grant Defendants' motion in full, Defendants request that this Court enter an order dismissing Defendant Budd Haeberlein from this action.

Dated:  March 7, 2024

Respectfully submitted,

 */s/ Audra J. Soloway*
Theodore V. Wells, Jr. (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Richard C. Tarlowe (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Samantha A. Bui (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
asoloway@paulweiss.com
rtarlowe@paulweiss.com
glaufer@paulweiss.com
sbui@paulweiss.com

---

[9]  Plaintiffs' argument is further flawed because courts regularly hold that plaintiffs who are even arguably subject to a reliance defense based on their post-disclosure purchases cannot serve as adequate class representatives.  *See In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *8 (S.D.N.Y. Sept. 16, 2020) (rejecting as lead plaintiff movant who made post-corrective disclosure purchases because "the cottage industry of issues surrounding [plaintiff's] purchase of [defendant's] shares would saddle, or at least potentially saddle, his claims with unique defenses"); *Karth*, 334 F.R.D. at 18 (concluding that lead plaintiff was "an inadequate class representative" due to his post-disclosure purchases and therefore declining to certify class).

William J. Trach (BBO #661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
william.trach@lw.com

*Counsel for Defendants Biogen Inc., Michel
Vounatsos, Alfred W. Sandrock, Jr., and
Samantha Budd Haeberlein*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of March, 2024, I caused a copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

 */s/ Audra J. Soloway*
Audra J. Soloway

16