**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NADIA SHASH and AMJAD KHAN, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BIOGEN INC., MICHEL VOUNATSOS, ALFRED W. SANDROCK, JR., and SAMANTHA BUDD HAEBERLEIN,<br><br>　　　　Defendants. | Civil Action No.: 1:21-cv-10479-IT |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR LEAVE TO ADD ADDITIONAL PLAINTIFFS**

**TABLE OF CONTENTS**

**Page**

I.      THE COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS'
        MOTION............................................................................................................................3

        A.      Shash and Khan Lack Article III Standing. ..............................................................3

        B.      Because Shash and Khan Lack Standing, the Court Does Not Have
                Subject Matter Jurisdiction to Consider Their Motion. ...........................................7

II.     PLAINTIFFS' RULE 15 MOTION SHOULD BE DENIED .........................................10

        A.      Amendment Is Futile as to Havrda and Pawloski Because Neither Is
                Damaged Under the PSLRA. ...................................................................................10

        B.      Amendment Is Futile Because None of the Additional Plaintiffs Are
                Adequate Class Representatives Under the PSLRA. ...............................................13

        C.      The Court Should Reject Plaintiffs' Attempt to Avoid an Adverse Ruling
                on Defendants' Pending Rule 12(c) Motion. ..........................................................16

III.    PLAINTIFFS' MOTION UNDER RULE 20 AND RULE 24 SHOULD BE
        DENIED...........................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allco Renewable Energy Ltd.* v. *Haaland*,
 2022 WL 2117828 (D. Mass. June 13, 2022)................................................................17

*Andersen* v. *Bayview Crematory, LLC*,
 2007 WL 9797778 (D. Mass. Sept. 21, 2007) ..............................................................17

*Biggins* v. *Hazen Paper Co.*,
 111 F.3d 205 (1st Cir. 1997)..........................................................................................6

*Bosch* v. *Credit Suisse Grp. AG*,
 2022 WL 4285377 (E.D.N.Y. Sept. 12, 2022) .......................................................14, 15

*Christopher* v. *Stanley-Bostitch, Inc.*,
 240 F.3d 95 (1st Cir. 2001)............................................................................................7

*Citizens to End Animal Suffering & Exploitation, Inc.* v. *New Eng. Aquarium*,
 836 F. Supp. 45 (D. Mass. 1993)..................................................................................16

*City of Bristol Pension Fund* v. *Vertex Pharms. Inc.*,
 12 F. Supp. 3d 225 (D. Mass. 2014) ...........................................................................4, 6

*Cooper* v. *Charter Commc'ns Ents. I, LLC*,
 2015 WL 1943858 (D. Mass. Apr. 28, 2015) .........................................................17, 18

*Crosby* v. *Bowater Inc.*,
 382 F.3d 587 (6th Cir. 2004) ..........................................................................................8

*Dahhan* v. *OvaScience, Inc.*,
 2018 WL 3429901 (D. Mass. July 16, 2018)..................................................................8

*Dantzler, Inc.* v. *Empresas Berrios Inventory & Operations, Inc.*,
 958 F.3d 38 (1st Cir. 2020)............................................................................................7

*Disability Advocs., Inc.* v. *N.Y. Coal. for Quality Assisted Living, Inc.*,
 675 F.3d 149 (2d Cir. 2012)........................................................................................8, 18

*In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*,
 2019 WL 1299673 (D.N.J. Mar. 21, 2019)..................................................................4, 6

*Eisenberg* v. *People's Republic of China Through Wang*,
 2022 WL 1591541 (D. Mass. May 19, 2022)..................................................................6

*Francisco* v. *Abengoa, S.A.*,
 481 F. Supp. 3d 179 (S.D.N.Y. 2020)..........................................................................4, 6

*Gruber* v. *Gilbertson*,
 647 F. Supp. 3d 100 (S.D.N.Y. 2022)......................................................................................10

*Guo* v. *Tyson Foods, Inc.*,
 2022 WL 5041798 (E.D.N.Y. Sept. 30, 2022) ...............................................................14, 15

*Karth* v. *Keryx Biopharms., Inc.*,
 334 F.R.D. 7 (D. Mass. 2019)...............................................................................................4, 6

*Kennedy* v. *Josephthal & Co.*,
 814 F.2d 798 (1st Cir. 1987).....................................................................................................16

*Kruse* v. *Wells Fargo Home Mortg., Inc.*,
 2006 WL 1212512 (E.D.N.Y. May 3, 2006) ...........................................................................18

*Lawless* v. *Town of Freetown*,
 2023 WL 7619019 (D. Mass. Nov. 14, 2023) ...........................................................................6

*Maldonado Cordero* v. *AT & T*,
 190 F.R.D. 26 (D.P.R. 1999) ....................................................................................................17

*Matthews Metal Prods., Inc.* v. *RBM Precision Metal Prods., Inc.*,
 186 F.R.D. 581 (N.D. Cal. 1999)..............................................................................................18

*McCormack* v. *Dingdong (Cayman) Ltd.*,
 2022 WL 17336586 (S.D.N.Y. Nov. 30, 2022)..................................................................14, 15

*Mosley* v. *Gen. Motors Corp.*,
 497 F.2d 1330 (8th Cir. 1974) ..................................................................................................18

*Mullane* v. *Morrissey*,
 2020 WL 1169386 (D. Mass. Mar. 11, 2020)........................................................................6, 7

*In re Nat'l Australia Bank Sec. Litig.*,
 2006 WL 3844463 (S.D.N.Y. Nov. 8, 2006)..............................................................................9

*Okla. Firefighters Pension & Ret. Sys.* v. *Six Flags Entm't Corp.*,
 675 F. Supp. 3d 731 (N.D. Tex. 2023) ...............................................................................4, 6, 9

*Patane* v. *Nestle Waters N. Am., Inc.*,
 314 F. Supp. 3d 375 (D. Conn. 2018)..........................................................................................5

*PI, Inc.* v. *Quality Prod., Inc.*,
 907 F. Supp. 752 (S.D.N.Y. 1995).............................................................................................17

*Police & Fire Ret. Sys. of City of Detroit* v. *IndyMac MBS, Inc.*,
 721 F.3d 95 (2d Cir. 2013)......................................................................................................8, 9

iii

*Quintanilla* v. *WW Int'l, Inc.*,
    541 F. Supp. 3d 331 (S.D.N.Y. 2021)....................................................................5

*Richman* v. *Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) ...........................................................................15

*Schneider* v. *BMW of N. Am., LLC*,
    2019 WL 4771567 (D. Mass. Sept. 27, 2019) .......................................................17

*Steel Co.* v. *Citizens for a Better Env't*,
    523 U.S. 83 (1998).................................................................................................5

*Streambend Props. II, LLC* v. *Ivy Tower Minneapolis, LLC*,
    781 F.3d 1003 (8th Cir. 2015) ..............................................................................16

*Summit Offic. Park, Inc.* v. *U.S. Steel Corp.*,
    639 F.2d 1278 (5th Cir. 1981) ................................................................................8

*Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)........................................................................................13, 15

*Thomas* v. *Metro. Life Ins. Co.*,
    631 F.3d 1153 (10th Cir. 2011) ..............................................................................8

*Yan* v. *ReWalk Robotics Ltd.*,
    391 F. Supp. 3d 150 (D. Mass. 2019) ...................................................................11

*Yan* v. *Rewalk Robotics, Ltd.*,
    973 F.3d 22 (1st Cir. 2020).................................................................................9, 10

**Statutes**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4................................................ *passim*

Emergency Planning and Community Right-To-Know Act of 1986, 42 U.S.C. §
    11046(a)(1) ............................................................................................................5

**Other Authorities**

1 McLaughlin on Class Actions § 4:36 (20th ed.).............................................................7

1 Newberg and Rubenstein on Class Actions § 2:8 (6th ed.) .........................................7

Defendants Biogen Inc. ("Biogen"), as well as its former officers Michel Vounatsos, Alfred W. Sandrock, Jr., M.D., Ph.D., and Samantha Budd Haeberlein, Ph.D. (together, "Defendants"), respectfully submit this memorandum of law in opposition to Plaintiffs' "motion for leave to add additional plaintiffs." (Doc. No. 138.)

## PRELIMINARY STATEMENT

The Court should deny Plaintiffs' "motion to add additional plaintiffs." Plaintiffs argue that the addition of three Biogen shareholders as "named" plaintiffs—Albert Aftoora, Jiri Havrda, and Raymond Pawloski (the "Additional Plaintiffs")—would in their view "moot arguments Defendants have raised" in their pending Rule 12(c) motion for judgment on the pleadings. (Pls.' Mem., Doc. No. 139 at 5.) But the proposal to add these Additional Plaintiffs does not, in fact, moot Defendants' pending Rule 12(c) motion. As explained in Defendants' motion, Lead Plaintiff Nadia Shash and Named Plaintiff Amjad Khan lack Article III standing. As a result, this Court lacks subject matter jurisdiction to consider Plaintiffs' motion "to add additional plaintiffs." Plaintiffs' arguments to the contrary are unavailing. More specifically:

*First*, in an attempt to circumvent Shash's and Khan's lack of standing and this Court's consequent lack of subject matter jurisdiction, Plaintiffs mischaracterize Defendants' Rule 12(c) motion as challenging merely Plaintiffs' ability to plead reliance. To the contrary, Defendants have consistently also argued—since they first moved to dismiss the Second Amended Class Action Complaint ("SAC," Doc. No. 58) in September 2021 and, more recently, in their Rule 12(c) motion—that, because both Shash and Khan purchased Biogen securities following the Massie Report's publication, neither Shash nor Khan has standing to assert claims, and thus lack Article III standing.

*Second*, Plaintiffs' motion for leave to amend under Rule 15 should otherwise be denied on futility grounds. In particular, amendment is futile as to Havrda and Pawloski because they are

1

not damaged as a matter of law under the PSLRA's bounce-back rule. Amendment is also futile as to all three Additional Plaintiffs because none of them has been, or could be, appointed as lead plaintiff under the PSLRA's requirements. Indeed, given that all three Additional Plaintiffs alleged either nonexistent or, at most, negligible losses, Plaintiffs cannot do an end-run around the PSLRA lead plaintiff appointment provisions through this proposed amendment. As a result, with Lead Plaintiff Shash dismissed, this case could not proceed as a putative class action. And, Plaintiffs' motion should be denied for the additional reason that it reflects a belated (and futile) attempt to stave off an adverse ruling on Defendants' Rule 12(c) motion. Courts have rejected such transparent and improper litigation tactics under similar circumstances, and this Court should do the same here.

*Third*, the Court should deny Plaintiffs' motion for permissive joinder and intervention under Rules 20(a) and 24(b), respectively. Plaintiffs fail to cite any relevant authority whatsoever (much less First Circuit precedent) to support the request to add named plaintiffs under those provisions. Moreover, they ignore entirely Rule 24(b)(3)'s requirement that a would-be intervenor must establish that no party would be prejudiced by their intervention. They cannot make that showing here.

For these reasons and as discussed further below, Plaintiffs' motion should be denied.

## BACKGROUND

In September 2021, Defendants moved to dismiss the SAC because, among its other deficiencies, Plaintiffs both lacked standing and failed to plead reliance. (Doc. No. 61 at 39–40.) Neither this Court nor the First Circuit addressed those arguments. (5/10/2022 Hearing Tr., Doc. No. 81 at 60:7–10; Mem. & Order, Doc. No. 76 at 40–41; USCA Op., Doc. No. 83.) Following remand from the First Circuit, Defendants made clear to Plaintiffs that they intended to renew their arguments regarding both standing and reliance. (Laufer Decl., Doc. No. 142 ¶ 2.) And, in the

2

parties' Local Rule 16.1(d) Joint Statement filed on November 22, 2023, and during the conference held on January 12, 2024, Defendants informed the Court that they intended to file a motion on both of these grounds. (*Id.* ¶¶ 3–4; Doc. No. 90 at 1–4; 1/12/2024 Conf. Tr., Doc. No. 107.) Defendants also met and conferred with Plaintiffs regarding those (and other) then-anticipated grounds for their Rule 12(c) motion on January 23, 2024, prior to filing their motion. (Laufer Decl. ¶ 5; Doc. No. 116 at 4.)

On January 25, 2024—*more than two years* after Defendants' Rule 12(b)(6) motion put Plaintiffs on notice of their lack of standing and failure to plead reliance, and *after* Defendants had repeatedly explained the grounds for their Rule 12(c) motion—Plaintiffs disclosed to Defendants that they would seek to add an additional "named" plaintiff. (Laufer Decl. ¶ 6.) At that point, Plaintiffs brought forward Havrda, who, as discussed *infra*, **has no losses**. (*Id.*) Two weeks later, Plaintiffs brought forward an additional proposed plaintiff, Steven Flaumenbaum. (*Id.* ¶ 8.) Despite Defendants' repeated requests for basic information regarding Flaumenbaum's trading history, Plaintiffs failed to provide it for nearly three weeks. (*Id.* ¶¶ 9–12.) Defendants then informed Plaintiffs that they would oppose the addition of Flaumenbaum, having already told Plaintiffs that they would oppose the addition of Havrda. (*Id.* ¶¶ 10, 13.) Plaintiffs subsequently abandoned Flaumenbaum as a proposed plaintiff, and identified yet two more proposed new plaintiffs: Pawloski, who has **no losses**, and Atfoora, who has a maximum loss of **only $479.21**. (*Id.* ¶ 14.) During a meet-and-confer on March 15, 2024, Defendants explained that they also opposed addition of Aftoora and Pawloski. (*Id.* ¶ 15.)

## ARGUMENT

I.   **THE COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS' MOTION**

    A.   **Shash and Khan Lack Article III Standing.**

3

Defendants' Rule 12(c) motion establishes that Lead Plaintiff Shash and Named Plaintiff Khan lack Article III standing because they purchased their Biogen shares ***after*** the Massie Report corrected Dr. Sandrock's July 22, 2020 alleged misstatement. (Defs.' Rule 12(c) Mem., Doc. No. 117 at 13–16.) The authorities Defendants cited in that motion make clear that plaintiffs like Shash and Khan "***who purchased after a corrective disclosure was made would have no standing***, because relying on the earlier misrepresentation would no longer be reasonable in light of the new information[.]" (*Id.* (citing case law addressing standing, including *City of Bristol Pension Fund* v. *Vertex Pharms. Inc.*, 12 F. Supp. 3d 225, 235 (D. Mass. 2014) (emphasis added) (plaintiff who purchased security after corrective disclosure "lacks standing to contest" alleged misstatements); *see also Okla. Firefighters Pension & Ret. Sys.* v. *Six Flags Entm't Corp.*, 675 F. Supp. 3d 731, 738 (N.D. Tex. 2023) ("A plaintiff who buys stock after a corrective disclosure cannot suffer an injury in fact because any 'reliance' on the earlier misrepresentation would not be reasonable given the disclosed information; and so a lack of reasonable reliance is a lack of standing under the PSLRA." (citation omitted)); *Francisco* v. *Abengoa, S.A.*, 481 F. Supp. 3d 179, 206–07 (S.D.N.Y. 2020) (plaintiffs "lack[ed] standing" to bring claims "because they purchased their [securities] after a correction of the alleged misstatements"); *Karth* v. *Keryx Biopharms., Inc.*, 334 F.R.D. 7, 18 (D. Mass. 2019) (plaintiff's post-corrective disclosure purchase "removes his standing to bring the claims on behalf of the proposed class"), *aff'd,* 6 F.4th 123 (1st Cir. 2021); *In re Dr. Reddy's Lab'y Ltd. Sec. Litig.*, 2019 WL 1299673, at *13 (D.N.J. Mar. 21, 2019) (plaintiff "lack[ed] standing to assert claims" relating to misstatements made prior to corrective disclosure).)

Plaintiffs' motion fails to grapple with the Article III standing implications of Defendants' Rule 12(c) motion. To the extent Plaintiffs respond at all, their arguments are unpersuasive.

4

*First*, they contend that "[f]ailure to allege an element of the cause of action, like reliance, means dismissal under Rule 12(b)(6), not for lack of subject-matter jurisdiction under Rule 12(b)(1)," and that "in every instance, the courts and the parties *have* treated reliance as an element of Plaintiffs' claim that does not go to constitutional standing," (Pls.' Mem. at 15–16.) These contentions, however, are directly belied by the record: Defendants' Rule 12(c) motion *specifically* argues that Plaintiffs' post-disclosure purchases mean that they *both* "have not pled, and cannot plead, the essential element of reliance," *and* that "they lack standing to sue." (Doc. No. 117 at 13.)

Further, none of the cases Plaintiffs cite (Pls.' Mem. at 15) even addresses the issues of Article III standing and reliance in securities fraud cases.[1] Nor do Plaintiffs' cases rebut the authorities cited in Defendants' Rule 12(c) motion squarely holding that plaintiffs who purchase securities following a corrective disclosure *both* (i) lack Article III standing to challenge a prior alleged misstatement corrected by the subsequent disclosure, *and* (ii) cannot plead that they

---

[1] To begin, *Quintanilla* v. *WW International, Inc.*, 541 F. Supp. 3d 331 (S.D.N.Y. 2021), and *Patane* v. *Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375 (D. Conn. 2018), do not support Plaintiffs' contention that "even if the Court granted the 12(c) Motion, dismissal would be for failure to plead a claim, not for lack of jurisdiction." (Pls.' Mem. at 15.) Neither case analyzed plaintiffs' reliance or standing in the context of securities fraud claims, much less under the specific circumstances presented in this case by the timing of Shash's and Khan's purchases. More specifically, *Quintanilla* involved claims brought under California's consumer protection statutes challenging the defendant's cancellation of in-person fitness classes, among other aspects of its response to the COVID-19 pandemic, 541 F. Supp. 3d at 337–38; *Patane* was a false advertising case in which the plaintiffs claimed that Poland Spring water was mislabeled as "spring water." 314 F. Supp. 3d at 379. These cases plainly have no bearing on the arguments raised in Defendants' Rule 12(c) motion, supported by ample authority cited *supra*, that a securities fraud plaintiff who purchases shares following a corrective disclosure *both* lacks Article III standing *and* cannot plead reliance on an alleged misrepresentation or omission. Likewise, *Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83 (1998), did not even *address* reliance. And its subject matter—environmental claims brought pursuant to the Emergency Planning and Community Right-To-Know Act of 1986, 42 U.S.C. § 11046(a)(1)—further demonstrates its irrelevance to the issues at hand.

5

reasonably relied on the prior alleged misstatement.  *See Okla. Firefighters*, 671 F. Supp. 3d at 738; *Abengoa*, 481 F. Supp. 3d at 206–07; *Karth*, 334 F.R.D. at 18; *Dr. Reddy's*, 2019 WL 1299673, at *13; *Vertex*, 12 F. Supp. 3d at 235.

*Second*, Plaintiffs summarily assert, without citation to any authority from any jurisdiction, that "finding that the Court lacks jurisdiction would contravene the First Circuit's mandate."  (Pls.' Mem. at 16.)  But that assertion misapprehends the mandate rule.  As this Court explained, the mandate rule applies *only* to what the Court of Appeals has "*actually* addressed[.]"  (Doc. No. 107 at 16:25–17:2 (emphasis added).)  As Defendants previously showed, the First Circuit did not *actually* address Defendants' reliance or standing arguments.  (Defs.' Rule 12(c) Reply Mem., Doc. No. 136 at 7 n.1.).  Accordingly, as this Court has observed in materially similar circumstances in reliance on First Circuit precedent, the mandate rule in no way bars consideration of these arguments here or in resolving Defendants' Rule 12(c) motion.  *See Lawless* v. *Town of Freetown*, 2023 WL 7619019, at *4 (D. Mass. Nov. 14, 2023) (Talwani, J.) ("[I]ssues that were not decided by the appellate court and that are thus outside the scope of the mandate are not affected by the mandate." (quoting *De Jesus-Mangual* v. *Rodriguez*, 383 F.3d 1, 6 (1st Cir. 2004))); *see also Biggins* v. *Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir. 1997) ("[M]andates require respect for what the higher court decided, not for what it did not decide.").

In any event, federal courts, as this Court has explicitly recognized, have "an 'independent obligation to determine whether subject-matter jurisdiction exists, *even in the absence of a challenge from any party*.'"  *Mullane* v. *Morrissey*, 2020 WL 1169386, at *4 (D. Mass. Mar. 11, 2020) (Talwani, J.) (emphasis added) (quoting *Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 514 (2006)); *see also Eisenberg* v. *People's Republic of China Through Wang*, 2022 WL 1591541, at *2 (D. Mass. May 19, 2022) (Talwani, J.) ("The court also has an independent obligation to sua sponte

6

inquire into its own subject matter jurisdiction[.]" (citation omitted)). As such, if the Court "determines *at any time* that it lacks subject-matter jurisdiction," it "must dismiss the action." *Mullane*, 2020 WL 1169386, at *4 (emphasis added) (quoting Fed. R. Civ. P. 12(h)(3)).[2] Defendants' Rule 12(c) motion establishes that Shash and Khan do not have Article III standing. (Doc. No. 117 at 13–16; Doc. No. 136 at 12–14, 18.) Accordingly, this Court lacks subject matter jurisdiction and "must dismiss the action." *Mullane*, 2020 WL 1169386, at *4.

**B.    Because Shash and Khan Lack Standing, the Court Does Not Have Subject Matter Jurisdiction to Consider Their Motion.**

"[B]ecause standing is a prerequisite to a federal court's subject matter jurisdiction," *Dantzler, Inc.* v. *Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020) (citation omitted), Shash's and Khan's respective lack of Article III standing deprives this Court of subject matter jurisdiction. And where, as here, the putative class representative lacks standing, "there is no opportunity for a substitute class representative to take the named plaintiff's place because this means that the court never had jurisdiction over the matter." 1 Newberg and Rubenstein on Class Actions § 2:8 (6th ed.); *see also* 1 McLaughlin on Class Actions § 4:36 (20th ed.) ("Because there must be a case properly before the court in the first place in order to substitute a new plaintiff, an amendment of the complaint to substitute a new plaintiff will not be allowed if the original plaintiff is determined to have lacked standing to bring the claims."). Indeed, any attempt to substitute or intervene another member of the putative class to cure the class

---

[2]    Plaintiffs cite *Christopher* v. *Stanley-Bostitch, Inc.*, 240 F.3d 95 (1st Cir. 2001), for the proposition that "if the Court lacks jurisdiction, it must dismiss the case without prejudice and make no rulings on the merits." (Pls.' Mem. at 15.) This elementary statement of the jurisdiction of federal courts does not at all undermine Defendants' showing that Shash and Khan lack Article III standing. Moreover, as explained *supra*, this Court has an ongoing, "independent obligation to determine whether subject-matter jurisdiction exists." *Mullane*, 2020 WL 1169386, at *4. Because Shash and Khan do not have Article III standing, the Court "must dismiss the action." *Id.*; Fed. R. Civ. P. 12(h)(3).

representative's lack of standing "is foreclosed by the long recognized rule that if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim."  *Police & Fire Ret. Sys. of City of Detroit* v. *IndyMac MBS, Inc.*, 721 F.3d 95, 111 (2d Cir. 2013) (citations omitted); *see also, e.g.*, *Disability Advocs., Inc.* v. *N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012) (explaining that "it is an axiomatic principle of federal jurisdiction" that "intervention will not be permitted to breathe life into a 'nonexistent' law suit" (citations omitted)); *Thomas* v. *Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) ("Prior to class certification, the named plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole—that unnamed plaintiffs might have a case or controversy is irrelevant." (citation omitted)); *Crosby* v. *Bowater Inc.*, 382 F.3d 587, 597 (6th Cir. 2004) ("Where the named plaintiff's claim is one over which federal jurisdiction never attached, there can be no class action." (citation omitted)); *Summit Offic. Park, Inc.* v. *U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) ("[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action.").[3]

Courts have repeatedly applied this bedrock principle in the context of securities fraud class actions.  For example, in *IndyMac*, the Second Circuit affirmed the district court's denial of motions asserted under Rule 15 and Rule 24, following dismissal of the class representative for lack of standing, to substitute putative class members in the dismissed representative's place.  In so holding, the Second Circuit emphasized that, under the PSLRA, "there must be a named plaintiff

---

[3]  Additionally, this Court has recognized the related principle that, as a result of "constitutional standing requirements," in a securities fraud class action, "there must at least be a ***named plaintiff*** with standing to sue on such claims before the lead plaintiff may assert them."  *Dahhan* v. *OvaScience, Inc.*, 2018 WL 3429901, at *2 (D. Mass. July 16, 2018) (Talwani, J.) (citing *Hevesi* v. *Citigroup Inc.*, 366 F.3d 70, 82–83 (2d Cir. 2004), and *IndyMac*, 721 F.3d at 112).

sufficient to establish jurisdiction over each claim advanced." 721 F.3d at 112 (citation omitted). Likewise, in *Oklahoma Firefighters*, the court held that the lead plaintiff lacked Article III standing because it purchased securities after the defendant's corrective disclosures. 675 F. Supp. 3d at 741. The court proceeded to deny the lead plaintiff's motion under Rule 15 to amend its complaint to add a new representative plaintiff with standing, "because a lack of standing is a jurisdictional defect," and "neither Rule 15 nor any other rule of civil procedure permit[s] [plaintiffs] to cure [it] by including or substituting [another plaintiff]." *Id.* at 741–42 (citations omitted). The court also denied a motion to intervene by a member of the putative class for substantially the same reason. *Id.* at 742 ("Movant cannot deploy Federal Rule 24 when there is no 'case' or 'controversy' in which it may intervene."). The same outcome is appropriate here: without Article III standing, Shash and Khan cannot amend the SAC to add the Additional Plaintiffs under Rule 15 or join them under Rule 20, nor can the Additional Plaintiffs move to intervene under Rule 24.[4]

Plaintiffs' reliance on *Yan* v. *Rewalk Robotics, Ltd.*, 973 F.3d 22 (1st Cir. 2020), is misplaced. They claim *Yan* stands for the proposition that "[c]lass representatives who plead claims that ***fail on the merits*** but are not frivolous may amend their pleadings to add other plaintiffs." (Pls.' Mem. at 17 (emphasis added).) That may be true, but it is irrelevant. As Plaintiffs acknowledge, *Yan* "never reached the issue" of whether "***a constitutional defect*** prevents

---

[4] For these reasons, Plaintiffs' assertion that "it is well established that a lead plaintiff can add named plaintiffs to aid it in representing the class," including where the lead plaintiff "personally lack[s] standing," (Pls.' Mem. at 17, 18), misses the mark. In the cases cited by Plaintiffs, (*id.*), there was at least one named plaintiff with standing to pursue each claim, even if the lead plaintiff did not have standing with respect to every claim. But this principle does not save Plaintiffs' claims here because there is ***no*** lead or named plaintiff with Article III standing. Instead, because "jurisdiction [was] lacking at the commencement of [this] suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim." *IndyMac*, 721 F.3d at 111. To the extent that *In re National Australia Bank Securities Litigation*, 2006 WL 3844463, at *4 (S.D.N.Y. Nov. 8, 2006), holds otherwise, it does not reflect the law of the Second Circuit, *see, e.g.*, *IndyMac*, 721 F.3d at 111, and it is contrary to the weight of authority, *see supra*.

the addition of named plaintiffs." (Pls.' Mem. at 16 n.7 (emphasis added).)  Indeed, the *Yan* court expressly observed that "the district court [in that case] at all times ***actually did have Article III subject matter jurisdiction*** over the action, as Yan had pleaded his own nonfrivolous Securities Act claim[.]"  973 F.3d at 38 (emphasis added).  Here, by contrast, Shash's and Khan's lack of Article III standing represents precisely the sort of constitutional defect that *Yan* did not address.  And, unlike the plaintiff in *Yan*, Shash and Khan assert no other claims over which the Court ***does*** have subject matter jurisdiction.  Therefore, *Yan* is inapposite.

Plaintiffs cannot now manufacture subject matter jurisdiction where none existed in the first place.  Accordingly, the Court lacks jurisdiction to consider Plaintiffs' motion asserted under Rule 15, Rule 20, and Rule 24.

## II.   PLAINTIFFS' RULE 15 MOTION SHOULD BE DENIED

In addition to denying Plaintiffs' motion based on these fatal jurisdictional defects, the Court should deny Plaintiffs' motion for leave to amend under Rule 15 as futile because neither Havrda nor Pawloski is damaged as a matter of law, and none of the Additional Plaintiffs has been, or could be, appointed as lead plaintiff under the PSLRA's requirements.

### A.   Amendment Is Futile as to Havrda and Pawloski Because Neither Is Damaged Under the PSLRA.

The PSLRA's "bounce back" provision creates a statutory cap on recoverable damages, 15 U.S.C. § 78u-4(e), and "limits a plaintiff's damages in the event a security price rebounds following a corrective disclosure," *Gruber* v. *Gilbertson*, 647 F. Supp. 3d 100, 121 (S.D.N.Y. 2022).  Congress included the bounce back provision in the PSLRA "out of a concern that basing damages on a security's price on the date of a corrective disclosure might overestimate plaintiff's actual damages, if the market's initial reaction was overblown and the security subsequently recovers value[.]"  *Id.* (internal quotation marks and citation omitted).  As such, the bounce back

10

provision limits a plaintiff's damages to the difference between their purchase price and the security's "mean trading price" (the average of its closing prices) over a 90-day lookback period, "beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(1), (3). Where a plaintiff sells the security before the 90-day period has elapsed, damages are capped at the difference between the purchase price and the mean trading price between the corrective disclosure date and the sale date. *Id.* § 78u-4(e)(2).

Application of the bounce back rule here conclusively shows that neither Havrda nor Pawloski is damaged as a matter of law:

**Havrda.** Havrda purchased Biogen shares for $263.52 and $264.99 per share. (Horne Aff. Ex. A, Doc. No. 140-1 at 3.) The applicable bounce back period began to run on November 4, 2020, "the date on which the information correcting the misstatement or omission that is the basis for the action," *i.e.*, the Massie Report, "[was] disseminated to the market." 15 U.S.C. § 78u-4(e)(1), (3). The bounce back period closed on November 9, 2020, when Havrda sold his Biogen shares for $229.50. (Doc. No. 140-1 at 3.) The mean trading price of Biogen shares during this period was $306.93, calculated by taking the average of the closing prices on November 4, 5, and 9.[5] Because the mean trading price during the bounce back period ($306.93) exceeds Havrda's purchase prices ($263.52 and $264.99), Havrda is not damaged as a matter of law.

---

[5] Biogen's shares closed at the following prices on those days: $355.63 (November 4), $328.90 (November 5), and $236.26 (November 9). *Biogen Inc. (BIIB) Historical Trading Data*, Yahoo! Finance, https://finance.yahoo.com/quote/BIIB/history (last accessed April 8, 2024) (hereinafter, "*BIIB Trading Data*"). Trading was halted on November 6, 2020, because of the FDA Advisory Committee meeting. *Id.* The Court may take judicial notice of Biogen's stock price in resolving Defendants' motion. *Yan* v. *ReWalk Robotics Ltd.*, 391 F. Supp. 3d 150, 154 n.2 (D. Mass. 2019) ("Because [defendant's] common stock is publicly traded on NASDAQ, its stock price can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (citation omitted)), *aff'd*, 973 F.3d 22 (1st Cir. 2020).

Plaintiffs concede that Havrda has no damages under this measure. (Doc. No. 139 at 8.) They nevertheless contend that Havrda *is* damaged because the bounce back period began, in their view, not on November 4 but "after November 6," "after the last corrective disclosure alleged in the Complaint." (*Id.* at 12, 13.) However, this assertion is squarely foreclosed by Plaintiffs' own allegations and the First Circuit's observation that the Massie Report is *the* corrective disclosure in this case. (Doc. No. 136 at 14–17.) Accordingly, the bounce back period commenced on November 4, 2020, the day the Massie Report was released. *See* 15 U.S.C. § 78u-4(e)(1) (stating that the bounce back period "begin[s] *on the date* on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market" (emphasis added)); *id.* § 78u-4(e)(2) (stating that the bounce back period "begin[s] *immediately after* dissemination of information correcting the misstatement or omission" (emphasis added)). And, as explained above, it is undisputed that under the correct application of the bounce back rule, Havrda has no damages.

**Pawloski.** Pawloski purchased 100 Biogen shares for $265.85 per share. (Horne Aff. Ex. B, Doc. No. 140-2 at 4.) The bounce back period began to run when the Massie Report was released on November 4, 2020, and closed on November 12, 2020, when Pawloski sold 70 shares for $246.75 and 30 shares for $244.51. (*Id.* at 4–5.) The mean trading price of Biogen shares during this period was $273.79, calculated by taking the average of the closing prices on November 4–5 and 9–12.[6] Like Havrda, Pawloski is not damaged as a matter of law because the mean trading price during the bounce back period ($273.79) exceeds the price at which he purchased ($265.85).

---

[6] Biogen's shares closed at the following prices on those days: $355.63 (November 4), $328.90 (November 5), $236.26 (November 9), $236.34 (November 10), $244.03 (November 11), and $241.55 (November 12). *BIIB Trading Data*.

Plaintiffs nonetheless argue that Pawloski "suffered damages even under the incorrect premise that the 90-day lookback started after November 4." (Pls.' Mem. at 12.) But this argument errs by ignoring the plan language of the statute. As explained above, the bounce back period begins **on** the date of the corrective disclosure—not **after** it. *See* 15 U.S.C. § 78u-4(e)(1); *id.* § 78u-4(e)(2). In calculating the mean trading price for the bounce back period applicable to Pawloski, Plaintiffs incorrectly failed to include Biogen's November 4, 2020 closing price. (Doc. No. 139 at 13 n.5.) This mistake makes all the difference: when calculated correctly, as explained above, the mean trading price during bounce back period shows that Pawloski is not damaged as a matter of law.

Because neither Havrda nor Pawloski suffered any damages as a matter of law, their addition as named plaintiffs is futile.

### B.    Amendment Is Futile Because None of the Additional Plaintiffs Are Adequate Class Representatives Under the PSLRA.

Amendment is futile as to three Additional Plaintiffs for another reason. As Defendants' Rule 12(c) motion demonstrates, Lead Plaintiff Shash and Named Plaintiff Khan should be dismissed from the case. With Shash dismissed, the putative class would lack a lead plaintiff duly appointed under the PSLRA. But none of the Additional Plaintiffs could assume the lead plaintiff role because their nonexistent or negligible losses render them inadequate class representatives. And, without an adequate class representative, this case cannot proceed as a putative class action.

With the enactment of the PSLRA, "Congress prescribed new procedures for the appointment of lead plaintiffs," an "innovation aimed to increase the likelihood that institutional investors—parties more likely to balance the interests of the class with the long-term interests of the company—would serve as lead plaintiffs." *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 320–21 (2007) (citing H.R. Rep. No. 104-369, at 33–34 (1995) (Conf. Rep.), and S. Rep. No.

13

104-98, at 11 (1995)). Among these reforms is the requirement that a lead plaintiff "adequately represent[] the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). To satisfy the PSLRA's adequacy requirement, a lead plaintiff must have "a sufficient financial interest in the outcome of the case to incentivize him to monitor counsel's performance and control the litigation on behalf of the putative class." *Bosch* v. *Credit Suisse Grp. AG*, 2022 WL 4285377, at *4 (E.D.N.Y. Sept. 12, 2022). Absent a sufficient financial interest, "counsel have a greater stake in the litigation than do the plaintiffs." *Id.* at *5 (citing S. Rep. No. 104-98, at 6–7, and H.R. Rep. 104-50, at 17 (1995)); *see also Guo* v. *Tyson Foods, Inc.*, 2022 WL 5041798, at *5 (E.D.N.Y. Sept. 30, 2022) (explaining that a "large financial interest avoids situations where a named class representative has a minimal financial stake in the case and acts primarily as a tool of the lawyers who may well have recruited him" (citations omitted)). To serve this objective, at the commencement of a securities class action, shareholders are required to apply to serve as lead, and the Court must consider those applications and ascertain which applicant, if any, to appoint as lead. 15 U.S.C. § 78u-4(a)(3)(A)(i) (procedures for notice to class members and application to serve as lead plaintiff); *id.* § 78u-4(a)(3)(B) (procedures and criteria for selection of lead plaintiff, including requirement that court select "most adequate plaintiff" to represent class).

Based on the PSLRA's requirements and its underlying policy objectives, courts have repeatedly rejected lead plaintiff applications because the proposed lead plaintiffs claimed only negligible losses. *See McCormack* v. *Dingdong (Cayman) Ltd.*, 2022 WL 17336586, at *5 (S.D.N.Y. Nov. 30, 2022) (rejecting application where proposed lead plaintiff claimed $504.40 in losses, because "[i]n the realm of securities litigation, this is a token amount"); *Guo*, 2022 WL 5041798, at *6 (same; $323.20 in losses); *Bosch*, 2022 WL 4285377, at *4 (same; $621 in losses). These courts have recognized that appointing a lead plaintiff with such insignificant losses "would

14

result in a very tiny tail wagging a very large dog," and would therefore run afoul of the PSLRA's policy objectives. *Richman* v. *Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477 (S.D.N.Y. 2011) (declining to appoint plaintiff whose financial interest was "minimal to the point of being *de minimis*").

The same reasoning applies here. To state the obvious, Havrda and Pawloski have **no** financial interest in the case because they suffered no damages as a matter of law. Therefore, they cannot satisfy the PSLRA's adequacy requirement. Nor can Aftoora. According to his PSLRA certification, Aftoora purchased only 50 Biogen shares at $279.77 per share on August 27, 2020; he sold those shares on November 13, 2020, for $243.65 per share. (Doc. No. 140-2 at 2.) Under the bounce back rule, Aftoora's maximum stake in this case is limited to $479.21.[7] Like the rejected applicants in *McCormack*, *Guo*, and *Bosch*, Aftoora's negligible losses mean that he "lacks a sufficient financial interest in the outcome of the case to incentivize him to monitor counsel's performance and control the litigation on behalf of the putative class." *Bosch*, 2022 WL 4285377, at *4.[8]

Plaintiffs should not be permitted to end-run the PSLRA's lead plaintiff appointment provisions by belatedly moving to add as plaintiffs shareholders with, at best, *de minimis* losses, purportedly to step into Shash's shoes as lead plaintiff, all without following the specific lead

---

[7] Between November 4, 2020, when the bounce back period began, and November 13, when it ended after Aftoora sold his shares, Biogen's mean trading price was $270.19. *BIIB Trading Data*. Under the bounce back rule, Aftoora cannot recover more than the difference between the mean trading price ($270.19) and his purchase price ($279.77), or $9.58 per share.

[8] Although some district courts have declined to reject lead plaintiff applications based on the would-be lead plaintiffs' negligible losses, those decisions are unpersuasive because they fail to account for the congressional policy that litigants with larger financial interests are better equipped to serve as class representatives than individual investors with *de minimis* financial stakes. *Tellabs*, 551 U.S. at 320.

plaintiff appointment requirements of the PSLRA. Because this case cannot proceed as a class action without a duly-appointed lead plaintiff, and none of the Additional Plaintiffs satisfy the PSLRA's requirements, Plaintiffs' motion to amend should be denied as futile.

### C. The Court Should Reject Plaintiffs' Attempt to Avoid an Adverse Ruling on Defendants' Pending Rule 12(c) Motion.

The Court should also deny Plaintiffs' motion to avoid "reward[ing] an evident effort to avoid an adverse ruling" on a pending dispositive motion. *Citizens to End Animal Suffering & Exploitation, Inc.* v. *New Eng. Aquarium*, 836 F. Supp. 45, 58 (D. Mass. 1993). Plaintiffs have been on notice of the defects in their claims for ***more than two years***, since Defendants first moved to dismiss the SAC based on Plaintiffs' lack of standing and inability to plead reliance, among other grounds. (Doc. No. 61 at 39–40.) Following remand, Defendants notified Plaintiffs and the Court that they intended to renew these arguments, which were not addressed by the appellate court. Plaintiffs remained silent until after the Court permitted Defendants to file their Rule 12(c) motion. Only when faced with the prospect of dismissal did Plaintiffs raise the possibility of amendment—through the seriatim identification of new named plaintiffs.

With Defendants' Rule 12(c) motion fully briefed and under advisement, Plaintiffs' motion comes too late. The Court should decline to reward their belated (and futile) attempt to stave off dismissal, as other courts have done under similar circumstances. *See Citizens to End Animal Suffering*, 836 F. Supp. at 58; *see also Streambend Props. II, LLC* v. *Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1015 (8th Cir. 2015) (affirming denial of motion for leave to amend that "appear[ed] to have been brought . . . to avoid dismissal after defendants' motions to dismiss were fully briefed, heard, and taken under advisement by the District Court"); *Kennedy* v. *Josephthal & Co.*, 814 F.2d 798, 806 (1st Cir. 1987) (affirming denial of leave to amend that "came after summary judgment was under advisement" and "could be viewed as an attempt to avoid an adverse

16

ruling"); *PI, Inc.* v. *Quality Prod., Inc.*, 907 F. Supp. 752, 765 (S.D.N.Y. 1995) (denying motion for leave to amend filed following motions to dismiss "because its timing demonstrates that it is clearly a dilatory tactic to avoid the dismissal of this action").

### III.    PLAINTIFFS' MOTION UNDER RULE 20 AND RULE 24 SHOULD BE DENIED

Plaintiffs argue in the alternative that "the Additional Plaintiffs also meet the standards for joinder under Rule 20 and permissive intervention under Rule 24." (Pls.' Mem. at 13.)  The Court should deny Plaintiffs' motion because it lacks subject matter jurisdiction, as discussed in Section I.B, *supra*.  The motion should be denied for the additional reason that Plaintiffs have not demonstrated that Rule 20 or Rule 24 provides the relief they are seeking here.

*First*, Plaintiffs cite no authority supporting their contention that the Additional Plaintiffs may be joined under Rule 20 or that the Additional Plaintiffs may intervene under Rule 24.  Three of the four cases Plaintiffs cite were not class actions and say nothing about Plaintiffs' ability to rely on Rule 20 and Rule 24 in the class action context, much less in a securities fraud class action governed by the PSLRA.  *See Allco Renewable Energy Ltd.* v. *Haaland*, 2022 WL 2117828 (D. Mass. June 13, 2022); *Schneider* v. *BMW of N. Am., LLC*, 2019 WL 4771567 (D. Mass. Sept. 27, 2019); *Andersen* v. *Bayview Crematory, LLC*, 2007 WL 9797778 (D. Mass. Sept. 21, 2007).  And, the sole case Plaintiffs cite involving claims brought on behalf of a putative class, *Cooper* v. *Charter Communications Entertainments I, LLC*, 2015 WL 1943858 (D. Mass. Apr. 28, 2015), is unpersuasive.  *Cooper* also was not a securities fraud class action subject to the PSLRA, and it involved a motion to amend asserted under Rule 15—not a motion for joinder under Rule 20 or intervention under Rule 24.  *Id.* at \*1–3.  Further, although none of the parties in that matter raised the issue in their briefing, and the defendants mentioned it only in passing during oral argument, the magistrate judge discussed the applicability of Rule 20(a) in a footnote, citing two cases that likewise did not involve class claims, *Maldonado Cordero* v. *AT & T*, 190 F.R.D. 26 (D.P.R.

17

1999), and *Matthews Metal Products, Inc.* v. *RBM Precision Metal Products, Inc.*, 186 F.R.D. 581, 583 (N.D. Cal. 1999)), and one out-of-circuit case, *Mosley* v. *General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974), that, like *Cooper*, was not a securities fraud class action. *Cooper*, 2015 WL 1943858, at *5 n.3; *see also* 2/18/2015 Hearing Transcript, *Cooper* v. *Charter Commc'ns Ents. I, LLC*, No. 3:12-CV-10530-MGM (D. Mass. Jan. 7, 2016), Doc. No. 207. *Cooper*'s cursory analysis therefore does not support Plaintiffs' motion.

*Second*, putting these deficiencies aside, Plaintiffs have not satisfied the requirements for permissive intervention under Rule 24(b). Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion, however, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Defendants **would** be prejudiced if the Court were to permit the Additional Plaintiffs to intervene at this stage despite Plaintiffs' lack of Article III standing. Doing so would contravene the "axiomatic principle of federal jurisdiction," discussed *supra*, that "intervention will not be permitted to breathe life into a 'nonexistent' law suit." *Disability Advocs.*, 675 F.3d at 160. In an analogous context, courts have denied motions to intervene, brought by absent class members after denial of class certification due to class representatives' lack of standing, where the would-be intervenors sought to avoid the statute of limitations. As those courts have explained, where "original named plaintiffs have never had standing to sue," plaintiffs' counsel's efforts to "continue the lawsuit by intervention" represent "'an impermissible use of intervention, akin to the improper use of intervention to manufacture jurisdiction.'" *Kruse* v. *Wells Fargo Home Mortg., Inc.*, 2006 WL 1212512, at *4, *6 (E.D.N.Y.

May 3, 2006) (quoting *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 378 (D. Mass. 1987)).  This

Court similarly should not countenance Plaintiffs' prejudicial litigation strategy here.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Dated:  April 8, 2024

Respectfully submitted,

 */s/ Audra J. Soloway*
Theodore V. Wells, Jr. (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Richard C. Tarlowe (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Samantha A. Bui (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
asoloway@paulweiss.com
rtarlowe@paulweiss.com
glaufer@paulweiss.com
sbui@paulweiss.com

William J. Trach (BBO #661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
william.trach@lw.com

*Counsel for Defendants Biogen Inc.,*
*Michel Vounatsos, Alfred W. Sandrock, Jr., and*
*Samantha Budd Haeberlein*

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of April, 2024, I caused a copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Audra J. Soloway*
Audra J. Soloway