**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Plaintiffs*
*and the Putative Class*

[Additional Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NADIA SHASH and AMJAD KHAN Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> BIOGEN INC., MICHEL VOUNATSOS, ALFRED W. SANDROCK, JR., and SAMANTHA BUDD-HAEBERLEIN, <br><br> Defendants. | **CASE No.: 1:21-cv-10479-IT** <br><br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO ADD ADDITIONAL PLAINTIFFS** |

**TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................................................... 1

II.    RELIANCE DOES NOT RAISE CONSTITUTIONAL DEFECTS.............................. 2

III.    ADDITIONAL PLAINTIFFS MAY ENTER EVEN IF PLAINTIFFS LACKED
STANDING............................................................................................................ 4

IV.    THE ADDITIONAL PLAINTIFFS SUFFERED DAMAGES UNDER THE 90-DAY
LOOKBACK .......................................................................................................... 5

  A.    The 90-Day Lookback Period Begins on November 9 ..................................... 6

  B.    At A Minimum, the 90-Day Lookback Begins No Earlier Than November 5............. 7

V.    ADDING THE ADDITIONAL PLAINTIFFS IS CONSISTENT WITH THE PSLRA 9

VI.    PLAINTIFFS MAY AMEND COMPLAINTS TO RESPOND TO ARGUMENTS
RAISED IN PRE-DISCOVERY MOTIONS TO DISMISS.............................................11

VII.   IN THE ALTERNATIVE, THE ADDITIONAL PLAINTIFFS MEET RULE 20 AND
RULE 24'S LIBERAL STANDARDS FOR JOINDER AND INTERVENTION........ 13

VIII. CONCLUSION ................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
   692 F.3d 34 (2d Cir. 2012) ............................................................................................... 8

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) .......................................................................................................... 3

*Arias v. Bird Glob., Inc.*,
   2023 WL 3814040 (C.D. Cal. June 2, 2023)..................................................................... 9

*Bosch v. Credit Suisse Grp. AG*,
   2022 WL 4285377 (E.D.N.Y. Sept. 12, 2022) ................................................................ 10

*Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium*,
   836 F. Supp. 45 (D. Mass. 1993)..................................................................................... 13

*City of Bristol Pension Fund v. Vertex Pharms. Inc.*,
   12 F. Supp. 3d 225 (D. Mass. 2014)................................................................................. 4

*Crosby v. Bowater Inc. Ret. Plan for Salaries Emps. of Great N. Paper, Inc.*,
   382 F.3d 587 (6th Cir. 2004) ............................................................................................ 5

*Damri v. LivePerson, Inc.*,
   2024 WL 1242510 (S.D.N.Y. Mar. 22, 2024) ................................................................ 10

*Disability Advocs., Inc. v. New York Coal. for Quality Assisted Living, Inc.*,
   675 F.3d 149 (2d Cir. 2012) ............................................................................................. 5

*Env't Barrier Co., LLC v. Slurry Sys., Inc.*,
   540 F.3d 598 (7th Cir. 2008) ............................................................................................ 3

*Fagen v. Enviva Inc.*,
   2023 WL 1415628 (D. Md. Jan. 31, 2023) ..................................................................... 10

*Foman v. Davis*,
   371 U.S. 178 (1962)......................................................................................................... 11

*Francisco v. Abengoa, S.A.*,
   481 F. Supp. 3d 179 (S.D.N.Y. 2020)............................................................................... 4

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
   991 F.3d 370 (2d Cir. 2021) ............................................................................................. 5

*Guo v. Tyson Foods, Inc.*,
 2022 WL 5041798 (E.D.N.Y. Sept. 30, 2022) ...................................................................... 10

*Henderson ex rel. Henderson v. Shinseki*,
 562 U.S. 428 (2011) ............................................................................................................... 2

*In re Elscint, Ltd. Sec. Litig.*,
 674 F. Supp. 374 (D. Mass. 1987) ....................................................................................... 14

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
 2024 WL 1473942 (9th Cir. Apr. 5, 2024) ....................................................................... 6, 7

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008) ............................................................................................... 6

*In re Nat'l Australia Bank Sec. Litig.*,
 2006 WL 3844463 (S.D.N.Y. Nov. 8, 2006) ................................................................. 13, 14

*In re Puda Coal Inc. Sec. Litig.*,
 2017 WL 65325 (S.D.N.Y. Jan. 6, 2017) .............................................................................. 8

*In re Puda Coal Sec. Inc., Litig.*,
 30 F. Supp. 3d 261 (S.D.N.Y. 2014) .................................................................................... 13

*In re Thornburg Mortg., Inc. Sec. Litig.*,
 265 F.R.D. 571 (D.N.M. 2010) ............................................................................................ 13

*Jaffe Pension Plan v. Household Int'l, Inc.*,
 756 F. Supp. 2d 928 (N.D. Ill. 2010) ..................................................................................... 9

*Karth v. Keryx Biopharmaceuticals, Inc.*,
 334 F.R.D. 7 (D. Mass. 2019) ............................................................................................... 4

*Kennedy v. Josephthal & Co.*,
 814 F.2d 798 (1st Cir. 1987) ................................................................................................ 13

*Klunder v. Brown Univ.*,
 778 F.3d 24 (1st Cir. 2015) .................................................................................................. 11

*Kruse v. Wells Fargo Home Mortg., Inc.*,
 2006 WL 1212512 (E.D.N.Y. May 3, 2006) ....................................................................... 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014) ............................................................................................................... 2

*McCormack v. Dingdong (Cayman) Ltd.*,
 2022 WL 17336586 (S.D.N.Y. Nov. 30, 2022) ........................................................ 10

*Milcent v. City of Bos.*,
 2017 WL 1536398 (D. Mass. Apr. 26, 2017) .......................................................... 12

*Nayani v. LifeStance Health Grp., Inc.*,
 641 F. Supp. 3d 57 (S.D.N.Y. 2022) ...................................................................... 10

*O & G Indus., Inc. v. Univ. of Massachusetts Bldg. Auth.*,
 2013 WL 5522601 (D. Mass. Oct. 3, 2013) ............................................................ 12

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
 675 F. Supp. 3d 731 (N.D. Tex. 2023) ..................................................................... 4

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
 2024 WL 1674125 (5th Cir. Apr. 18, 2024) ..................................................... passim

*Olsson v. PLDT Inc.*,
 2023 WL 3139912 (C.D. Cal. Apr. 26, 2023) ........................................................ 10

*PI, Inc. v. Quality Prod., Inc.*,
 907 F. Supp. 752 (S.D.N.Y. 1995) ......................................................................... 13

*Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
 894 F. Supp. 2d 144 (D. Mass. 2012) ..................................................................... 14

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
 721 F.3d 95 (2d Cir. 2013) ....................................................................................... 5

*Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*,
 769 F.3d 313 (5th Cir. 2014) .................................................................................... 6

*Richman v. Goldman Sachs Grp., Inc.*,
 274 F.R.D. 473 (S.D.N.Y. 2011) ........................................................................... 10

*Shash v. Biogen, Inc.*,
 84 F.4th 1 (1st Cir. 2023) ............................................................................... 4, 7, 8, 9

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998) ........................................................................................... 1, 2, 3

*Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*,
 781 F.3d 1003 (8th Cir. 2015) ............................................................................... 13

iv

*Summit Off. Park, Inc. v. U.S. Steel Corp.*,
    639 F.2d 1278 (5th Cir. 1981) ............................................................................ 5

*Sunshine Lady Found., Inc. v. Rozek as Tr. of Doris Buffett Revocable,
    Tr.*, 2021 WL 9059746 (D. Mass. June 1, 2021) ............................................ 12

*Thomas v. Metro. Life Ins. Co.*,
    631 F.3d 1153 (10th Cir. 2011)............................................................................ 5

*Vander Luitgaren v. Sun Life Assur. Co. of Canada*,
    765 F.3d 59 (1st Cir. 2014)................................................................................... 2

*Wilkins v. United States*,
    598 U.S. 152 (2023) .............................................................................................. 4

*Yan v. ReWalk Robotics Ltd.*,
    973 F.3d 22 (1st Cir. 2020).............................................................................11, 12

## Statutes

15 U.S.C. § 78u-4(e)(1) ............................................................................................ 7

## Other Authorities

Baruch Lev & Meiring de Villiers, *Stock Price Crashes and 10b-5 Damages: A Legal, Economic,
    and Policy Analysis*, 47 Stan. L. Rev. 7 (1994).............................................. 8

H.R. CONF. REP. 104-369 ........................................................................................ 8

S.Rep. No. 104-98.................................................................................................... 8

I.      INTRODUCTION[1]

Defendants ask the Court to prohibit existing Plaintiffs from doing what other plaintiff fiduciaries in representative actions do all the time: protecting the class by recruiting additional plaintiffs who moot the defendants' arguments. Their arguments to depart from regular procedures lack merit.

Defendants principally argue that Plaintiffs do not have the Article III standing necessary to file the [Proposed] Third Amended Complaint ("Complaint"), Dkt. No. 130-4, for supposedly failing to allege an element of their claims, reliance. Defendants acknowledge, however (in a footnote), that in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 83 (1998), the Supreme Court held that the failure to sufficiently allege an element does not go to courts' jurisdiction. All they can say in response is that in *Steel Co.* the element was not reliance, without explaining why that would make a difference. And while they cite district level cases, a recent appellate decision reversing one of Defendants' cases explains that any constitutional defect arises after the incorporation of the news into the company's stock price—which was after Plaintiffs' purchases here—not when the information is made publicly available. In any case, Additional Plaintiffs may intervene even if Plaintiffs did not have standing from the get-go.

Defendants' remaining arguments are without merit. Defendants protest that the Additional Plaintiffs cannot be added as *lead* plaintiffs, but do not dispute that they can be added as *named* plaintiffs, so they concede at least that much. They argue that Plaintiffs unduly delayed in seeking leave to amend, but as the undisputed facts set out in Plaintiffs' opening brief show, the delay is Defendants' fault. And Defendants argue that two of the Additional Plaintiffs do not have damages

---

[1] Citations to "Pl.Br." is to Plaintiffs' Memorandum of Law in Support of their Motion for Leave for Leave to Add Additional Plaintiffs, Doc. No. 139, citations to "Def.Br." are to their memorandum of law in opposition to such motion, Doc. No. 143, and citations to "Alexander Dec." are to the Declaration of Brian B. Alexander, filed herewith, Doc. No. 148.

(conceding that Mr. Aftoora does), but they miscalculate because they start counting from the wrong day.

The Court should grant the Additional Plaintiffs leave to enter this action, whether through Rules 15, 20, or 24.

## II.    RELIANCE DOES NOT RAISE CONSTITUTIONAL DEFECTS

"Constitutional standing goes to the power of the court: the question is whether the parties have presented the kind of case or controversy that the Constitution allows federal courts to hear." *Vander Luitgaren v. Sun Life Assur. Co. of Canada*, 765 F.3d 59, 62 (1st Cir. 2014). Because finding a defect in constitutional standing brings "drastic" consequences, the Supreme Court has "tried in recent cases to bring some discipline to the use of this term." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Here, Defendants maintain that the mere publication of the Massie Report rendered reliance unreasonable even before its incorporation into Biogen's stock price and before reasonable investors could have read and evaluated it, means Plaintiffs do not raise a case or controversy. But *Steel Co.* explains how the failure to allege the elements of a claim can cause a constitutional defect in standing: if "the claim clearly appears to be immaterial, wholly insubstantial and frivolous, or otherwise so devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. 83 (1998). Defendants do not argue that this case comes close to *Steel Co.*'s demanding requirements. Instead, they relegate *Steel Co.* to a footnote, and all they say is that it did not involve the specific element at issue here, reliance. Def.Br. at 5 n.1. They do not explain why *Steel Co.* should be limited to its facts.

Nor do Defendants explain how the failure to allege that reliance is reasonable could deprive the Court of jurisdiction. They do not explain how plaintiffs could have failed to allege an injury-in-fact, traceability, or redressability, the elements of standing. *Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 572 U.S. 118, 125 (2014). They do not even say **which** of these elements Plaintiffs supposedly did not sufficiently allege.

Defendants cite cases stating that the plaintiffs had failed to plead reasonable reliance and did not have standing because they purchased their shares after information was corrected. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (cleaned up). So is standing: "Everything from the fundamental requirement imposed by Article III that there must be a 'case or controversy' between the parties seeking relief in federal court, to various prudential doctrines such as the restrictions on invoking the rights of third parties, to the inquiry whether a statute is designed to protect the rights of the person before the court, has been swept into the word 'standing.'" *Env't Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 605 (7th Cir. 2008).

The only case that attempts to connect the time of purchase to jurisdiction is the appellate opinion reversing one of Defendants' principal cases, but it shows that constitutional standing is not at issue **here**. *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 2024 WL 1674125 (5th Cir. Apr. 18, 2024) ("*Oklahoma II*"). *Oklahoma II* found that if plaintiffs purchase stock after the fraud's full revelation, then "the economic loss associated with a decline in stock price [] is not fairly traceable to the defendant's fraud." *Id.* at \*3. For this proposition, *Oklahoma II* relies on a Supreme Court case addressing the fraud-on-the-market presumption of reliance. *Id.* (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 473 (2013)). *Amgen* explained that even if defendants' false statements artificially inflate a security's price, plaintiffs who purchased shares after the artificial inflation dissipates cannot rely on the fraud-on-the-market presumption of reliance. 568 U.S. at 473. By tying constitutional standing to artificial inflation, *Oklahoma II* explains why Plaintiffs here have constitutional standing: the First Circuit found that the Complaint sufficiently alleged Biogen's stock price was still artificially inflated by

3

Defendants' statements when Plaintiffs bought their shares. *Shash v. Biogen, Inc.*, 84 F.4th 1, 21-22 (1st Cir. 2023).

The cases Defendants cite do not explain how the defect they identified relates to constitutional standing. For the most part, they do not even say whether they are using "standing" in its constitutional sense, rather than in one of its many other meanings. *City of Bristol Pension Fund v. Vertex Pharms. Inc.*, 12 F. Supp. 3d 225, 234-35 (D. Mass. 2014) (saying only that plaintiffs lacked "standing"); *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 206 (S.D.N.Y. 2020) (same); *Karth v. Keryx Biopharmaceuticals, Inc.*, 334 F.R.D. 7, 18 (D. Mass. 2019), *aff'd*, 6 F.4th 123 (1st Cir. 2021) (same). Because the word "standing" is notoriously protean, its mere use, without explanation, is uninformative. *Wilkins v. United States*, 598 U.S. 152, 159-60 (2023).

Finally, Defendants argue that the Court need only defer to issues "actually decided" by the First Circuit. Def.Br. at 6. The First Circuit affirmed dismissal of some of Plaintiffs' claims with prejudice. *Shash*, 84 F.4th at 22. The Court's finding that it had no jurisdiction would have to rewrite the dismissal so that it is without prejudice.

## III.    ADDITIONAL PLAINTIFFS MAY ENTER EVEN IF PLAINTIFFS LACKED STANDING

Defendants' argument that Additional Plaintiffs may not intervene if Plaintiffs lacked constitutional standing depends on a case that has since been reversed, *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 675 F. Supp. 3d 731, 739 (N.D. Tex. 2023) ("*Oklahoma I*"). As the reversing court explained, "[w]hen a separate and independent jurisdictional basis exists a federal court has the discretion to treat an intervention as a separate action, and may adjudicate it despite dismissal of the main demand if failure to do so might result in unnecessary delay or other prejudice." *Oklahoma II*, 2024 WL 1674125, at *5. For this reason, the Fifth Circuit found that "even if [original plaintiff] did not have Article III standing, the district

4

court still would have erred by denying [additional plaintiff's] motion to intervene." *Id.* at \*5. *See also Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 393 (2d Cir. 2021) (allowing intervention even though lead plaintiff had lacked Article III standing throughout case).[2]

Here, Additional Plaintiffs have filed their proposed Complaint, which cures any defects Defendants might have raised in their Motion for Judgment on the Pleadings. To require Additional Plaintiffs to refile a new case would be a "needless[] formality." *Id.* at 391.

## IV.    THE ADDITIONAL PLAINTIFFS SUFFERED DAMAGES UNDER THE 90-DAY LOOKBACK

Congress enacted the Private Securities Litigation Reform Act's ("PSLRA") 90-day lookback limitation on damages because it was concerned that security prices would temporarily overreact to a corrective disclosure. Defendants concede that Plaintiff Aftoora suffered losses. They argue that Plaintiffs Havrda and Pawloski did not suffer losses, but only because Defendants

---

[2] In *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 110 (2d Cir. 2013), the court found that the plaintiffs could not use the "relation back" doctrine to revive claims when the statute of repose had passed. That is a separate question: Additional Plaintiffs seek to intervene to prosecute claims, not to revive untimely claims. In *Disability Advocs., Inc. v. New York Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012), the party with standing only intervened after the party who did not have standing won the case on the merits. The problem was that without a party with standing, the district judge never had jurisdiction to enter the judgment. Here, it is Defendants who are asking the Court to reverse the First Circuit's judgment. In *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011), the issue was appellate jurisdiction: the intervening plaintiffs who might have had standing did not appeal. In *Crosby v. Bowater Inc. Ret. Plan for Salaries Emps. of Great N. Paper, Inc.*, 382 F.3d 587, 597 (6th Cir. 2004), the court had no jurisdiction over the plaintiff's suit because of the relief requested, not the nature of the plaintiffs. In *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1284 (5th Cir. 1981), an intervening Supreme Court case invalidated the claims of the entire putative class; the new named plaintiffs were not class members, but differently situated plaintiffs raising different claims, on behalf of a different class.

5

mistakenly begin the 90-day lookback period on November 4, 2020, when Biogen's stock price had not even started to react to the disclosures in the Massie Report.

### A.      The 90-Day Lookback Period Begins on November 9

Defendants concede that the 90-day lookback begins after the last corrective disclosure. The Complaint alleges that the last corrective disclosure occurred on November 6, when trading was halted, so that the 90-day lookback begins on November 9. ¶¶280-94. Because the 90-day lookback begins on November 9, all Additional Plaintiffs have standing.

Defendants instead—referencing an earlier brief they filed—maintain that the November 4 disclosure is the only one Plaintiffs allege. Not so. In many cases, nominally public information will only be incorporated into a security's price after it is presented in a more accessible format, whether because the information is too complex or hard to find, or because markets do not have enough time to process the information. In those cases, the accessible disclosure is corrective. For example, in *Gilead*, the plaintiffs alleged that Gilead concealed that it engaged in off-label marketing. During the class period, the FDA publicly released a letter it had sent to Gilead noting its off-label marketing and warning it to stop—in theory, correcting defendants' false statements. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1053-54 (9th Cir. 2008). Notwithstanding the FDA's revelation that defendants' statements were false, the court held that a subsequent announcement of poor earnings was a corrective disclosure. *Id.* at 1058. In *Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 323 (5th Cir. 2014), a journalist and a medical expert analyzed public Medicare data. Their analysis showing that the defendant may have engaged in Medicare fraud was a corrective disclosure, notwithstanding that they relied wholly on public data. *Id.* And in *In re Genius Brands Int'l, Inc. Sec. Litig.*, 2024 WL 1473942, at *9 (9th Cir. Apr. 5, 2024), the defendant overstated the number of times its programs aired on

6

television. Though television schedules are obviously public, a later analyst report that merely counted the number of times the programs aired served as a corrective disclosure. *Id.* at *9-10.

Here, the First Circuit has already held that Plaintiffs sufficiently alleged that the news took past November 5 to be incorporated into the stock price. It cited, among other things, the contradictions between the joint Biogen/FDA report and the Massie Report, that it was "dense" and "written for … world-renowned experts," and that it bore a prominent "DRAFT" watermark which called its credibility into question. *Shash*, 84 F.4th at 20. As a result, the market took time to incorporate the news. The FDA Advisory Committee's evaluation—the "world-renowned experts" for whom the report was written—was new information that helped the market incorporate the Massie Report into Biogen's stock price. Indeed, *Shash* cited *Gilead*, where a later, more accessible disclosure was a corrective disclosure. *Shash*, 84 F.4th at 21.

Defendants claim that the First Circuit somehow ruled in *their* favor on loss causation on the November 6 disclosure, but they misstate *Shash*'s holding. If the Massie Report was instantaneously incorporated into the stock price, then the Advisory Committee had nothing to add. And because Plaintiffs sufficiently alleged that the Massie Report was not incorporated into Biogen's stock price even by November 5, the First Circuit did not need to specifically find that the Advisory Committee meeting was a corrective disclosure.

## B.    At A Minimum, the 90-Day Lookback Begins No Earlier Than November 5

Defendants' argument that the 90-day lookback begins on November 4 mistakenly starts the 90-day lookback at the moment of disclosure, rather than when the disclosure was incorporated into Biogen's stock price.

The 90-day lookback begins "on the date on which the information correcting the misstatement or omission that is the basis for the action is ***disseminated to the market***." 15 U.S.C. § 78u-4(e)(1). "Disseminated" does not necessarily mean "made publicly available". Instead,

7

according to the Oxford English Dictionary, it means to "spread" or "diffuse". Market participants incorporate new material information by bidding up or down the security's price. Thus, information is disseminated "***to the market***" when the information has spread widely enough into the market and enough time has passed for the security's price to have risen or fallen. The 90-day lookback begins when the market reacts, and no earlier.

The legislative history leaves no doubt that Congress intended for the 90-day lookback to begin when the market has had a chance to react. Congress made damages depend on the average trading price during the 90-days following the disclosure, rather than the day of disclosure, because it was concerned that "[c]alculating damages based on the date corrective information is disclosed may substantially overestimate plaintiff's actual damages." S.Rep. No. 104-98, at 20 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 699.[3] It made its meaning clear by citing an academic article whose entire argument was that security prices frequently overreacted to news. *Id.* at 20 & n.58 (citing Baruch Lev & Meiring de Villiers, *Stock Price Crashes and 10b-5 Damages: A Legal, Economic, and Policy Analysis*, 47 Stan. L. Rev. 7, 10–12 (1994)). Congress enacted the 90-day lookback to protect defendants from liability for damages that are not related to the alleged fraud by tying damages to the stock price's performance over the 90 days after the initial incorporation to ensure that the price had time to recover from the overreaction. *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 39 (2d Cir. 2012); *In re Puda Coal Inc. Sec. Litig.*, 2017 WL 65325, at *15 (S.D.N.Y. Jan. 6, 2017). So Congress intended that the 90-day lookback begin when the market potentially overreacts, not before it has had a chance to react at all. And here, the

---

[3] The Reconciliation Report made the same points. H.R. CONF. REP. 104-369, 42, reprinted in 1995 U.S.C.C.A.N. 730, 741.

First Circuit held that the Complaint plausibly alleged a "delayed reaction": the market only began to react on November 5. *Shash*, 84 F.4th at 21-22.

While the question scarce arises because it rarely matters when the 90-day lookback began, when confronted with the issue, courts have held that it begins when the false statements no longer artificially inflate the stock price. For example, in *Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 935 (N.D. Ill. 2010), the court had to decide when the 90-day lookback period started because it was about to begin a post-trial determination of damages. There, the court held that the period began on "the date the jury found defendants' fraud no longer affected [the] stock." *Id. See also Arias v. Bird Glob., Inc.*, 2023 WL 3814040, at *7 (C.D. Cal. June 2, 2023) (finding that using date *after* disclosure was reasonable where news did not have a chance to affect the stock price because it was released after trading).

The First Circuit's ruling that the Complaint sufficiently alleged a delayed reaction is dispositive because it establishes that Biogen's stock price began to incorporate the Massie Report on November 5 at the earliest. Thus, even if the 90-day lookback begins on the date that artificial inflation begins to dissipate rather than when it is fully dissipated, Pawloski still has damages.

## V.    ADDING THE ADDITIONAL PLAINTIFFS IS CONSISTENT WITH THE PSLRA

Defendants argue that the Additional Plaintiffs cannot become ***lead plaintiffs*** because of their "nonexistent or negligible losses." But they concede by their silence that Plaintiffs may, under the PSRLA, add additional Plaintiffs that can bring claims that the Lead Plaintiff cannot. *See* Pl.Br. at 13-14. With no opposition from Defendants, the Court should grant Additional Plaintiffs' motion to join the proceedings.

Nevertheless, Defendants' argument that Additional Plaintiffs cannot be lead plaintiffs lacks merit. First, Defendants miscalculate Additional Plaintiffs' losses. Correctly using November 9 as

the beginning of the 90-day lookback period, Messrs. Havrda, Pawloski, and Aftoora suffered damages of $840, $2,629, and $1,921, respectively.[4]

Second, Defendants' argument that class actions cannot be led by plaintiffs with relatively small losses relies on two extreme outliers that courts later questioned.[5] As Judge Rakoff later held in limiting the cases Defendants cite, "[t]he PSRLA's lead plaintiff provisions do not erect a barrier that prevents any plaintiff with a small stake from representing a class." *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 64 (S.D.N.Y. 2022); *accord Fagen v. Enviva Inc.*, 2023 WL 1415628, at *2 (D. Md. Jan. 31, 2023) (adopting *Nayani*'s reasoning); *see also Damri v. LivePerson, Inc.*, 2024 WL 1242510, at *3-*5 (S.D.N.Y. Mar. 22, 2024) (citing *Nayani* in rejecting Defendants' argument, appointing lead plaintiff who lost $375, collecting cases where courts appointed lead plaintiffs with small losses, and explaining that the purpose of the adequacy requirement was to uncover conflicts of interest between named parties and the class they seek to represent). Instead, the PSLRA only "establishes relative tests, i.e., inquiries into which of the moving plaintiffs is <u>most</u> qualified to represent the class." *Nayani*, 641 F. Supp. 3d at 64 (emphasis in original). And "[d]eclining to appoint a movant as lead plaintiff simply because he has little at stake would also be inconsistent with a key purpose of aggregate litigation." *Id.* at 62, 65-66 (in securities class action, appointing lead plaintiff with a loss of $385); *Olsson v. PLDT Inc.*, 2023

---

[4] Using November 5 as the beginning of the 90-day lookback period, Havrda has no damages, but Pawloski and Aftoora have $843 and $1,191, respectively.

[5] *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476-477 (S.D.N.Y. 2011), is inapposite because it was comparing lead plaintiff applicants' losses. In *McCormack v. Dingdong (Cayman) Ltd.*, 2022 WL 17336586, at *6 (S.D.N.Y. Nov. 30, 2022), the movant had no recoverable losses, having sold his shares before the only corrective disclosure. In the only on-point cases, *Bosch v. Credit Suisse Grp. AG*, 2022 WL 4285377, at *3 (E.D.N.Y. Sept. 12, 2022) and *Guo v. Tyson Foods, Inc.*, 2022 WL 5041798, at *6 (E.D.N.Y. Sept. 30, 2022), the proposed lead plaintiffs claimed to have lost $621 and $323.20, respectively.

WL 3139912, at *2-*3 (C.D. Cal. Apr. 26, 2023) (same with a $240.23 loss and holding that "courts routinely appoint lead plaintiffs with financial interests substantially similar to or less").

Accordingly, even if the Court were to evaluate the Additional Plaintiffs based on their adequacy to serve as Lead Plaintiffs, Defendants' argument would fail.

## VI.   PLAINTIFFS MAY AMEND COMPLAINTS TO RESPOND TO ARGUMENTS RAISED IN PRE-DISCOVERY MOTIONS TO DISMISS

Defendants do not dispute that the liberal standard of Rule 15 governs whether Plaintiffs may amend the Complaint. Pl.Br. at 5. Under that standard, court should grant leave to amend unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 38 (1st Cir. 2020) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts "focus [their] analysis on the prejudice to the non-moving party." *Klunder v. Brown Univ.*, 778 F.3d 24, 34 (1st Cir. 2015).

Defendants' undue delay argument that Plaintiffs' Motion "comes too late" omits that Defendants themselves caused the delay. Def.Br. at 16. Plaintiffs did not amend their complaint after the Court's decision on Defendants' motion to dismiss because Defendants successfully argued that Plaintiffs should not be allowed to amend their complaint at that time and the reliance issue should instead be deferred. Doc. No. 81 at 58:1-3, 59:7-18. After the Court allowed Defendants to file a motion for judgment on the pleadings on reliance grounds, Plaintiffs informed Defendants they would move to amend, and met and conferred at length concerning their proposed motions. These negotiations took long only because Defendants delayed for weeks at a time in providing their positions and concealed for more than a month that they would oppose the addition of any named plaintiffs, even if Defendants acknowledged the plaintiff could state a claim. *See*

11

Pl.Br. at 3-4, 6; Alexander Dec., Doc. No. 148, at 1-2, ¶¶2-6.

Nor do Defendants even attempt to show prejudice, the most important consideration under Rule 15. *See O & G Indus., Inc. v. Univ. of Massachusetts Bldg. Auth.,* 2013 WL 5522601, at *1 (D. Mass. Oct. 3, 2013) (leave to amend granted despite an "apparent lack of diligence" since that was no "serious prejudice"). *First,* Defendants knew that Plaintiffs intended to add additional plaintiffs before filing their Motion for Judgment on the Pleading, but they filed their motion anyway. *See Milcent v. City of Bos.,* 2017 WL 1536398, at *2 (D. Mass. Apr. 26, 2017) (no prejudice or delay where "plaintiff has made no secret of the fact that she intended to amend the complaint to add new parties at the close of fact discovery"). *Second*, Plaintiffs' motion to add Additional Plaintiffs has no effect on the issue raised in Defendants' Motion for Judgment of the Pleadings: whether **Shash** and **Khan** pled reasonable reliance and standing. *Third*, there has been no discovery in this case and Defendants recently successfully moved to stay discovery again. *Fourth*, even under the current scheduling order, which will change after the PSLRA discovery stay is lifted, Plaintiffs moved to add Additional Plaintiffs almost six months before the September 24, 2024 deadline to move to amend pleadings. Doc. No. 110 at 1.

Finally, there is no rule that Plaintiffs cannot amend their complaint after Defendants have filed a dispositive motion. In fact, *Yan*, 973 F.3d at 36-40, found precisely the opposite. There, the First Circuit found error in denying a lead plaintiff's motion to add additional plaintiffs even though it was filed **after** dismissal of the plaintiff's complaint. *Id.* Filing a motion for leave to amend to moot purported defects raised in a pre-discovery dispositive is good practice, not bad faith. *Sunshine Lady Found., Inc. v. Rozek as Tr. of Doris Buffett Revocable Tr.,* 2021 WL 9059746, at *2, *6 (D. Mass. June 1, 2021). None of the cases Defendants cite involve adding additional plaintiffs and all of them rely on considerations other than that there was a fully-briefed

12

dispositive motion.[6]

## VII.    IN THE ALTERNATIVE, THE ADDITIONAL PLAINTIFFS MEET RULE 20 AND RULE 24'S LIBERAL STANDARDS FOR JOINDER AND INTERVENTION

Defendants declare that securities class actions are excluded from Rule 20 and Rule 24, but offer no authority or even a rationale to support their position. Courts have allowed the addition of plaintiffs to securities class actions using each rule. *See Oklahoma II*, 2024 WL 1674125, at *5 (overturning district court's ruling that class member could not intervene in securities class action); *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006) (holding that courts should respond to the pre-certification mooting of claims by allowing intervention by absentee class members); *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 261, 272 (S.D.N.Y. 2014) (holding that plaintiffs may intervene in securities class action pursuant to Rule 24); *In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. 571, 585 (D.N.M. 2010) (allowing joinder of plaintiffs under Rule 20 in securities class action).

---

[6] In two of the cases cite, the plaintiffs moved for leave to add new claims with different factual predicates after the filing of a post-discovery motion for summary judgment. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 806 (1st Cir. 1987) (leave to amend sought after filing of post-discovery motion for summary judgment; amendment would require reopening of discovery after the accumulation of an "extensive and expensive record", the additional allegations contained no newly discovered facts that would change appellants' basic claims, and justifiable reliance would continue to be insurmountable despite the amendment); *Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium*, 836 F. Supp. 45, 58-59 (D. Mass. 1993)). In those cases, the defendants would have had to repeat the expenses of discovery; here, Defendants have not engaged in any discovery. Moreover, in *Citizens*, the plaintiffs' amendment sought to add wholly unrelated claims and issues rather than defending current claims. *Id.* In *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1015 (8th Cir. 2015), the court found that amendment was futile, which was itself sufficient to deny leave to amend. Moreover, the court had also previously warned plaintiff that "repeated amendments were a wasteful, dilatory tactic" and plaintiff "failed to cure deficiencies by amendments previously allowed." *See also PI, Inc. v. Quality Prod., Inc.*, 907 F. Supp. 752, 765 (S.D.N.Y. 1995) (plaintiff moved to amend complaint to add additional claim and other substantive allegations and court noted that it would be able to amend claims that were dismissed without prejudice anyway).

Defendants' only other argument is that they would be prejudiced if the Court allowed the Additional Plaintiffs to intervene despite Plaintiffs' lack of Article III standing. However, as explained in Sections II and III, (1) Plaintiffs have and have always had Article III standing even if the Court grants Defendants' Motion for Judgment on the Pleadings and (2) even if Plaintiffs did not have Article III standing, additional plaintiffs may intervene. Additionally, Defendants will not be prejudiced if they allow the Additional Plaintiffs to intervene or join because they were long ago put on notice of the Additional Plaintiffs' claims by Plaintiffs' earlier complaints. *See Oklahoma II*, 2024 WL 1674125, at *5 (holding that prior to class certification, members of the putative class may intervene even if the original plaintiffs lacked Article III standing); *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463, at *4 (defendants not prejudiced when substitution of lead plaintiff was based on inadequacy of original plaintiff).[7]

## VIII.  CONCLUSION

For the foregoing reasons and those set out in Plaintiffs' opening brief, the Court should allow the Additional Named Plaintiffs to enter this action through Rules 15, 20, or 24.

---

[7] Defendants' cases are inapposite. In those cases, the courts exercised their discretion to deny intervention out of a concern that counsel would begin an action with a plaintiff with no standing solely to toll the statute of repose and then use tolling to find a suitable plaintiff. *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 378 (D. Mass. 1987) (pre-PSLRA case where the court was concerned with "attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff"); *Kruse v. Wells Fargo Home Mortg., Inc.*, 2006 WL 1212512, at *5 (E.D.N.Y. May 3, 2006) (repeating *Elscint*'s concern and denying intervention in a non-securities case after a summary judgment motion was filed and discovery into the claims of the named plaintiffs had already been completed). The PSLRA's lead plaintiff selection process has addressed *Elscint*'s concern. In any case, as Judge Stearns sensibly explained, *Elscint* put too little weight on class members' interests in not having to file their own actions to protect themselves in case the court later found a technical defect that is not necessarily apparent from the pleadings. *Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 894 F. Supp. 2d 144, 154 (D. Mass. 2012). This is a case in point: this Court, the First Circuit, and until recently Defendants themselves, all recognized that Plaintiffs had standing.

Dated: April 22, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen, Esq. (pro hac vice)
Jonathan Horne, Esq. (pro hac vice)
Brian B. Alexander, Esq. (pro hac vice)
Joshua Baker, Esq. (BBO #695561)
Sara Fuks, Esq. (pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 100016
Tel: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
jhorne@rosenlegal.com
balexander@rosenlegal.com
jbaker@rosenlegal.com
sfuks@rosenlegal.com

*Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2024, a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO ADD ADDITIONAL PLAINTIFFS** was served by CM/ECF to parties registered to the Court's CM/ECF system.

*/s/Laurence Rosen*

15