# Exhibit E

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Massachusetts

| | |
|---|---|
| Nadia Shash, et al. | ) |
| _Plaintiff_ | ) |
| v. | )   Civil Action No.   1:24-cv-10479-IT |
| Biogen Inc., et al. | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                 PolyCon Solutions LLC
                     1135 Lake Shore Overlook, Alpharetta, GA 30005
_____
                       _(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Veritext<br>20 Mansell Court, Suite 300<br>Roswell, GA 30076 | Date and Time:<br><br>08/15/2025 9:30 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    08/04/2025

| _CLERK OF COURT_ | OR | |
|---|---|---|
| _____ | | _____ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Biogen Inc., et al. _____ , who issues or requests this subpoena, are:

Audra J. Soloway, 1285 Avenue of the Americas, New York, NY 10019, asoloway@paulweiss.com, (212) 373-3000

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:24-cv-10479-IT

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Print     Save As...     Add Attachment     Reset

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit A

**DEFINITIONS**

1.    The uniform definitions, instructions, and rules of construction set forth in the Federal Rules of Civil Procedure and Local Rules 26.5 and 34.1 are incorporated by reference as if fully set forth herein.

2.    The term "Action" means the above-captioned action titled *Shash et al.* v. *Biogen Inc. et al.*, 1:21-cv-10479-IT.

3.    The term "Biogen Securities" means all securities of Biogen (including long or short positions).

4.    The term "Class" means the putative class defined in the Complaint, as limited by the orders of this Court and the First Circuit.  *See* Mem. & Order, Doc. No. 76; First Cir. Op., Doc. No. 83; Mem. & Order, Doc. No. 163.

5.    The term "Communication" means an occurrence whereby data, expression, facts, opinions, thought, or other information of any kind is transmitted in any form, including, but not limited to, in-person conversation, telephone conversation, video chat, correspondence, discussion, meeting, memorandum, email, text message, chat message, voice message, picture message, video message, audio recording, video recording, social media posting, or any other form of in-person, written or electronic communication.

6.    The term "Complaint" means the Second Amended Class Action Complaint filed in this Action on August 4, 2021 (Doc. No. 58).

7.    The terms "concerning," "relating to," "regarding," "reflecting," and any variant thereof, mean relating to, regarding, referring to, concerning, reflecting, involving, pertaining to, containing, describing,  evidencing, discussing, analyzing, recording, embodying or constituting the subject matter described in the category of documents.

1

8.     The term "Defendants" shall refer to Biogen Inc., Michel Vounatsos, and Alfred W. Sandrock, Jr.

9.     The term "Document" shall have the meaning set forth in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure and Local Rule 26.5(c)(2), and includes but is not limited to, graphic matter of any kind or nature, whether written, printed, typed, recorded, filmed, punched, transcribed, taped or produced or reproduced by any means, as well as all records, personal notes, cablegrams, telexes, facsimiles, emails, pleadings, studies, website postings, calendars, day-timers, diaries, desk calendars, appointment books, agendas, minutes, pamphlets, envelopes, telephone messages, graphs, records of meetings, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, tabulations, analyses, studies, evaluations, plans, storyboards, projections, work papers, statements, summaries, reports, journals, billing records, invoices, Communications, correspondence, letters, financial statements, balance sheets, accounting, tax returns, loan documents, and/or all written or recorded matter of any kind whatsoever.  The term "Document" also means and includes every other means by which information is recorded or transmitted including, without limitation, photographs, videotapes, tape recordings, microfilms, punch-cards, computer programs, printouts, computer disks or diskettes, software, all recordings made through data processing and/or computer techniques, and the written information necessary to understand and use such materials.  The term "Document" is further defined to mean the original, any drafts, any non-identical copies (i.e., those bearing notations or marks not found on the original document) and the associated metadata for each document maintained in electronic format.  The term "Document" includes, for the avoidance of doubt, any Document reflecting any Communication.

2

10.     The term "Motion" means a motion and related memorandum of law and supporting exhibits or attachments.

11.     The terms "You" or "Your" mean, individually or collectively, PolyCon Solutions LLC as well as any present and former owners, managers, directors, officers, trustees, administrators, employees, agents, analysts, advisors, accountants, attorneys, consultants, representatives, or other Persons acting or purporting to act on their behalf.

12.     To bring within the scope of these Requests all Documents that might otherwise be construed to be outside their scope, the following rules of construction apply: (a) the masculine, feminine, or neutral pronoun shall not exclude other genders; (b) the word "including" shall be read to mean "including without limitation"; (c) the present tense shall be construed to include the past tense and vice versa; (d) references to employees, officers, directors and agents shall include both current and former employees, officers, directors and agents; (e) the terms "and" and "or," and "all," "any," and "each," shall each be construed as encompassing any and all, and the use of the singular form of any word includes the plural and vice versa.

13.     The use of any Definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgement that such Definition is appropriate for any other purpose in this Action.

## **INSTRUCTIONS**

1.     Except as specified elsewhere in the Requests, all electronically stored information covered in the Requests shall be produced in accordance with the Stipulated Protocol for Discovery of Electronically Stored Information, Doc. No. 176, attached as Exhibit 1.

2.     These Requests are continuing in nature, requiring supplemental production of Documents if You later identify additional Documents responsive to these Requests pursuant to Federal Rules of Civil Procedure 26(e) and 34 and Local Rules 26.1 and 34.1.

3.    These Requests call for production of all responsive Documents in Your possession, custody, or control, including any of Your employees, agents, representatives, advisors, attorneys, brokers, investment managers, or other Persons acting or purporting to act on Your behalf.

4.    For the purpose of reading, interpreting, or construing the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation.

5.    Unless instructed otherwise, each Request shall be construed independently and not by reference to any other Request for the purpose of limitation or exclusion.

6.    If any portion of a Document is responsive to any Request, the entire Document shall be produced without deletion or redaction, including all attachments, or other matters affixed thereto.

7.    You must respond to each Request separately, completely, and fully.  If You object to any aspect of a Request, the reason for the objection shall be specifically and separately stated.  If You object to part of a Request, You must produce all Documents responsive to the part of the Request to which You did not object.

8.    If, in responding to any Request, You claim any ambiguity in interpreting either the Requests or a Definition or Instruction applicable thereto, such claim shall not provide a basis for refusing to respond; instead, You must include, as part of Your response, the language You deem to be ambiguous, why You believe that to be the case, and the interpretation You chose to use in responding to the Request.

9.    You must produce any responsive Document as they have been kept in the usual course of business or organize or label them to correspond to the enumerated Requests of this demand.

10.     If You withhold any Document under a claim of privilege, immunity or protection, including the attorney-client privilege or work product doctrine, You shall provide a written privilege log that sets forth the information required by Federal Rule of Civil Procedure 26(b)(5) and the Parties' forthcoming Stipulated Protective Order.

11.     If it is otherwise not possible to produce any Document called for by these Requests, the reasons for the nonproduction should be stated with specificity as to all grounds.

12.     Unless otherwise stated in a Request below, You are requested to produce Documents responsive to these Requests for the time period from March 21, 2019 through December 31, 2020, inclusive, (the "Relevant Period"), except, to the extent that You purchased, acquired, sold, or engaged in any analysis of Biogen Securities before or after the Relevant Period, the Relevant Period shall be extended for You to capture that additional time period.

## REQUESTS FOR DOCUMENTS

1.     Your limited liability company agreement, operating agreement, and any other of Your governing documents, as well as any and all amendments thereto.  This Request seeks Documents irrespective of the Relevant Period.

2.     Documents sufficient to show Your members and all persons holding an equity interest in You, or any other pecuniary or other ownership interest in You, including the nature and extent of such interest.  This Request seeks Documents irrespective of the Relevant Period.

3.     All organizational charts and personnel charts.

4.     Documents sufficient to show all individuals who had any involvement in making investment decisions on Your behalf or in advising You in making investment decisions.

5.     Trade confirmations or other contemporaneous transaction records reflecting each and every purchase, acquisition, sale, transfer, or other transaction by You or on

Your behalf of Biogen Securities.  The time period for this Request is March 1, 2020, to November 6, 2020.

6.    Documents sufficient to show (i) the date(s) of any purchases, acquisitions, sales, transfers, or other transactions by You of Biogen Securities; (ii) the Person, including brokers or agents, from or through whom You made each such transaction; (iii) the price that You paid or received for each such transaction; (iv) whether each investment position was registered to You and held in Your own name or held in "street name" by Your broker or agent on Your behalf; and (v) whether You currently hold or do not hold Biogen Securities.

7.    Documents sufficient to show Your investment account(s) through which each and every purchase, acquisition, sale, transfer, or other transaction by You or on Your behalf of Biogen Securities was made.

8.    Documents sufficient to show Your bank account(s) through which You funded each and every purchase, acquisition, sale, transfer, or other transaction by You or on Your behalf of Biogen Securities.

9.    Documents sufficient to identify the date and terms of any swap, derivative, hedge, or other transaction by which You sought to offset, reduce, or limit Your economic exposure to any transaction in Biogen Securities identified in response to Request Nos. 5 and 6.

10.    All Documents concerning Your consideration and decision to (i) buy, acquire, hold, or sell Biogen Securities, including but not limited to consideration of buying, acquiring, holding or selling Biogen Securities that did not result in any transaction; or (ii) engage in any transaction by which You sought to offset, reduce, or limit Your economic exposure to any transaction in Biogen Securities, as identified in response to Request No 9.

11.     Documents sufficient to show Your investment and risk profile as an investor, including (i) the date(s) of any purchases, acquisitions, sales, transfers, or other transactions by You of securities other than Biogen Securities; (ii) the Person, including brokers or agents, from or through whom You made each such transaction; (iii) the price that You paid or received for each such transaction; (iv) whether each investment position was registered to You and held in Your own name or held in "street name" by Your broker or agent on Your behalf; (v) whether You currently hold or do not hold these securities; and (vi) the investment guidelines applicable to Your investment account(s) including Your risk profile and asset allocation.

12.     All Documents related to Biogen Securities, including, but not limited to, (i) any research, analysis, modeling, or other evaluation performed by You or any other Person; (ii) any analyst reports, periodicals, newsletters or other written materials; (iii) any analysis of the Alzheimer's disease treatment industry, pharmaceutical industry, or other industry analyses that include Biogen; and (iv) any Communications concerning the foregoing categories.  This Request includes printouts of all websites reviewed in connection with Your decision to transact in or hold Biogen Securities.

13.     To the extent not produced in response to Requests Nos. 11 and 12, all Documents concerning Your monitoring of the performance of Your investment in Biogen Securities.

14.     Documents sufficient to identify all Persons who participated, or otherwise played a role, in evaluating whether You should purchase, acquire, hold, sell or otherwise transfer Biogen Securities.

15.     All Documents reflecting Communications with the Persons identified in response to Request No. 14 concerning Biogen.

7

16.    All Documents concerning or analyzing the performance of, or realized or unrealized gains or losses on, Your investment in any Biogen Securities, including the methodology that You (or any Person acting or purporting to act on Your behalf) used to calculate any realized or unrealized gain or loss.

17.    All financial statements or profit and loss statements reflecting Your gains or losses from transactions in Biogen Securities.

18.    All Documents concerning any investment policies, procedures, philosophy, strategies, and/or practices that You had during the Relevant Period with respect to Your investment portfolio, including, but not limited to, any quantitative trading model that may have been used in connection with the acquisition or sale of Your Biogen Securities.

19.    To the extent Your Biogen Securities were held by an investment fund, all Documents concerning the prospectus, partnership agreement, and/or any other governing Document or offering materials for such fund.

20.    All Documents relating to any agreements You have or had with any Person(s) to monitor, manage, or supervise Your investment portfolio, including Your investment in Biogen Securities.

21.    All Communications between You and Defendants, or any other current or former employee of Biogen.

22.    All Documents reflecting Communications between or among You or anyone working on Your behalf on the one hand, and any Person on the other hand concerning Biogen or the subject matter of this Action, including, but not limited to:

    (a)    Communications with Plaintiffs or any member of the Class in this Action (or any Person acting on such Class member's behalf);

8

(b)    Communications with current or former Biogen employees, or current or former FDA employees, including, but not limited to, the former employees referenced in the Complaint;

(c)    Communications with any other Person who transacted in Biogen Securities;

(d)    Communications with any investment analyst, journalist, reporter, or other member of the press;

(e)    Communications with other actual or putative plaintiffs or their counsel in the Action; and

(f)    Communications with any government officials or authorities, including any Communications with the U.S. Securities and Exchange Commission.

23.    Documents sufficient to identify all lawsuits in which You have been involved as a party or witness.

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NADIA SHASH and AMJAD KHAN, *Individually and on Behalf of All Others Similarly Situated*,<br><br>     Plaintiff,<br><br>v.<br><br>BIOGEN INC., MICHEL VOUNATSOS, ALFRED W. SANDROCK, JR., and SAMANTHA BUDD-HAEBERLEIN,<br><br>     Defendants. | Case No. 1:21-cv-10479-IT<br><br>**STIPULATED PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI PROTOCOL")** |

Plaintiffs Nadia Shash, Amjad Khan, Albert Aftoora, and Raymond Pawloski ("Plaintiffs") and Defendants Biogen Inc., Michel Vounatsos and Alfred W. Sandrock, Jr. (collectively, "Defendants," and together with Plaintiffs, the "Parties" and each a "Party"), by and through their respective undersigned counsel, hereby stipulate and agree to the following "ESI Protocol" (the "Protocol") regarding the production of electronically stored information ("ESI") and hard copy documents in the above-captioned case (the "Action").

## I. GENERAL PROVISIONS

1. This Protocol will govern discovery of ESI and hard copy documents in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the District of Massachusetts (the "Local Rules"), this Court's Standing Orders (the "Standing Orders"), and any other applicable orders and rules.

2. All documents, including the procedure for clawback of any documents, shall be governed by any confidentiality, protective, and/or clawback orders, or mutual stipulation thereof, entered in this Action.

3.      The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this matter. The Parties shall follow this Court's Standing Orders with respect to any and all discovery disputes.

4.      Unless otherwise agreed or directed by the Court, each Party will bear the costs to process and review its own documents according to this Protocol.

5.      Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any document. All objections to the discoverability or admissibility of any documents are preserved and may be asserted at any time in accordance with the applicable Federal Rules of Evidence, Federal Rules of Civil Procedure, and/or Local Rules or Standing Orders of this Court.

6.      Each production of ESI shall be accompanied by correspondence indicating the Bates range, the custodians, and any applicable passwords to access the production.

## II.      PRESERVATION AND IDENTIFICATION OF POTENTIALLY RELEVANT INFORMATION AND ESI

1.      The Parties agree that the allowable scope of discovery is all nonprivileged documents that are relevant to any Party's claim or defense and proportional to the needs of the case.  The Parties agree that only unique, non-duplicative sources of relevant documents need to be preserved.

2.      Consistent with the Parties' obligations under the Federal Rules of Civil Procedure, the Parties will meet and confer regarding any issues involving preservation, such as, for example, relating to categories or sources of information that are not reasonably accessible or cannot reasonably be preserved because of undue burden or costs as well as categories or sources of responsive information subject to data privacy or protection laws, or relevance considering the proportionality factors in Federal Rule of Civil Procedure 26(b)(1).

3. Nothing in this ESI Protocol shall affect the Parties' respective preservation obligations imposed by rule or law.

## III. ESI LIAISONS

1. The Parties have agreed to appropriate liaisons for each such Party who are and will be knowledgeable about and responsible for discussing their respective ESI.

## IV. SEARCH, COLLECTION & REVIEW

1. The Parties agree that each producing Party will take reasonable steps to identify, review, and produce relevant documents. The Parties further agree that each producing Party is best situated to evaluate and utilize the procedures, methodologies, and technologies appropriate to identify, review, and produce its own documents. Notwithstanding the foregoing, the Parties agree to meet and confer in good faith regarding custodians, search terms, date ranges, and custodial and non-custodial data sources that each Party intends to use to identify responsive, discoverable Documents within the Parties' respective possession, custody, or control for review to ensure discovery will be reasonable and proportional. The Parties may use advanced search, analytical, and retrieval technologies like predictive coding or other technology-assisted review ("TAR") in order to prioritize the review of or the grouping of documents requested or returned from the use of search terms, date ranges, electronic sources, or other filters, and agree to disclose any use of TAR.

2. While this Protocol is intended to address the majority of documents and data sources handled in this Action, there may be situations where the Parties come into contact with more complex, non-traditional or legacy data sources, such as ESI from social media, ephemeral messaging systems, collaboration tools, mobile device apps and modern cloud sources. In the event such data sources are relevant, the Parties agree to take reasonable efforts to appropriately address the complexities introduced by such ESI, including, when appropriate, to meet and confer

regarding relevant production format. Additionally, if particular responsive ESI not otherwise addressed in this protocol warrants a format different than those addressed herein, the Parties will meet and confer in an effort to agree upon a mutually-acceptable format.

## V.     PRODUCTION FORMATS FOR DOCUMENTS FROM HARD COPY SOURCES

1.     Except for redacted and logged documents as described in Section VIII.2 of this Protocol, *see infra*, the Parties will produce documents originating from hard copy sources in Group IV single-page TIFF format (black and white, 300 dpi) with corresponding searchable multi-page optical character recognition ("OCR") text, along with the below-listed metadata fields when available, unless the producing Party determines that the utility of the OCR is outweighed by the expense. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. If an original document contains color, it need not be produced in color in the first instance. However, the producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the document. Color documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting to as to preserve legibility. The Parties agree not to degrade the searchability or legibility of documents as part of the document production process.

2.     The Parties will provide a standardized load file compatible with Relativity and with a Bates number field included in the load file to match text and metadata with TIFF/JPG images. With respect to hard copy documents, data on the load file will include the following metadata or their equivalents (when available):

> a.     BEGDOC: Begin Document Bates number;
>
> b.     ENDDOC: End Document Bates number;
>
> c.     BEGATTACH: Begin Bates number of family unit;
>
> d.     ENDATTACH: End Bates number of family unit;

e.  CUSTODIAN: Individual from whom the document originated;

f.  CONFIDENTIALITY: User-generated field that will indicate confidentiality (i.e., CONFIDENTIAL) pursuant to the protective order entered in this litigation ("Protective Order," Dkt. No. XX). Otherwise, blank;

g.  PGCOUNT: Number of pages in a document;

h.  REDACTED: (Y/N);

i.  TEXTLINK: Contains Path to .TXT files.

## VI.   PRODUCTION FORMATS FOR ESI

1.  Except for redacted and logged documents as described in Section VIII.2 of this Protocol, *infra*, the Parties will produce documents originating as ESI in TIFF format, with the exception of spreadsheets, PowerPoint (subject to Section VIII.11 below), audio, and video files, which shall be produced in native format. ESI shall be produced with extracted text, along with the below listed metadata fields, where reasonably available. If an original document contains color, it need not be produced in color in the first instance. However, the producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the document. Color documents should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. TIFFs/JPGs will show any and all text and images, including track changes where applicable, that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options. Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest

level document or file is extracted.  The Parties will provide a standardized load file compatible with Relativity.  All documents shall be processed using Eastern Standard Time ("EST") time zone.

2.	With respect to ESI, data on the load file will include the following metadata fields or their equivalents (when reasonably available):

| Field Name | Description |
|---|---|
| BEGDOC | Begin Document Bates number |
| ENDDOC | End Document Bates number |
| BEGATTACH | Begin Bates number of family unit |
| ENDATTACH | End Bates number of family unit |
| CUSTODIAN | Individual from whom the document originated |
| ALL CUSTODIAN | Name of the agreed-upon custodians, in addition to the primary custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FROM | Author of the email message |
| TO | Recipient(s) of the email message |
| CC | Recipient(s) of "Carbon Copies" of the e- mail message |
| BCC | Recipient(s) of "Blind Carbon Copies" of the email message |
| DOCUMENT SUBJECT | Subject field extracted from the metadata of the native file |
| EMAIL SUBJECT | Subject field extracted from the metadata of an email file |
| DOCUMENT TITLE | The title of a document |
| DOCUMENT AUTHOR | Author field extracted from the metadata of the native file |
| FILE EXTENSION | File extension of a document |
| CREATED DATE | Date file was created |
| CREATED TIME | Time file was created |
| LAST MODIFIED DATE | Date document was last modified |
| LAST MODIFIED TIME | Time document was last modified |
| EMAIL SENT DATE | Date email was sent |
| EMAIL SENT TIME | Time email was sent |
| EMAIL RECEIVED DATE | Date email was received |
| EMAIL RECEIVED TIME | Time email was received |

| DATE APPOINTMENT START | Start date of calendar appointment entry |
|---|---|
| TIME APPOINTMENT START | Start time of calendar appointment entry |
| DATE APPOINTMENT END | End date of calendar appointment entry |
| TIME APPOINTMENT END | End time of calendar appointment entry |
| LAST EDITED BY | Name of the last person to edit the document from extracted metadata |
| ACCESSED BY | Name of each person who accessed the document and the times(s) each such person first and last accessed the document |
| PGCOUNT | Number of pages in a document (image records) |
| FILE SIZE | File size in bytes |
| LOGICALPATH | Original logical path location of the document in the repository from which it was collected |
| FILE TYPE | File Type: email, image, spreadsheet, presentation, etc. |
| MD5 HASH | Unique identifier of the file |
| FILE NAME | Original name of the file or subject of email, including file extension |
| CONFIDENTIALITY | User-generated field that will indicate confidentiality pursuant to the Protective Order (i.e., CONFIDENTIAL). Otherwise, blank. |
| REDACTED | YES if applicable. Otherwise, blank. |
| TECHNICAL ISSUE | YES where slip sheet reads "Technical issue—file cannot be processed." Otherwise, blank. |
| TEXTLINK | Contains Path to .TXT files |
| NATIVELINK | Contains Path to native files |

3.      For ESI other than email and electronic documents that do not conform to the metadata listed above, the Parties will meet and confer as to the appropriate metadata fields to be produced.

## VII.    MODIFICATION

1.    This protocol may be modified by written agreement of the Parties or by the Court for good cause shown.

## VIII.    MISCELLANEOUS PROVISIONS

1.    <u>Objections Preserved</u>

A.    Nothing in this Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protection from disclosure (collectively, the "Privileges" and each a "Privilege"). Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI. A producing Party may assert any applicable Privilege or protection over produced documents as provided for in the Protective Order.

2.    <u>Privileged Documents, Redacted Documents, and Privilege Logs</u>

A.    To the extent that a Party reasonably determines that one or more responsive documents are not discoverable on the basis of a Privilege or Privileges, the Party shall provide a log, treating each document withheld or redacted for Privilege, that sets forth in separate columns (with the exception that the field "Email Subject" may be redacted for privilege):

i.    an assigned "Log Entry" Number;

ii.    the Custodian;

iii.    the sent date of email documents;

iv.    the Email Subject, for email documents;

v.    the Creation Date, for non-email documents;

vi.    the File Name, for non-email documents;

vii.    the File Extension;

viii.    the File Type;

ix.    the Last Modified Date;

x.    the Privilege(s) or other protection claimed and basis for the claim;

xi.    the name of the author(s)/addresser(s);[1]

xii.    the addressee(s);

xiii.    all carbon copied (CC) recipients;

xiv.    all blind carbon copied (BCC) recipients;

xv.    an indication of which, if any, author/addresser, addressee(s), CC recipients, and BCC recipients identified is an attorney (or an employee of any Party's legal department). If there is no attorney listed as the author or recipient of a document on the privilege log, the name of the attorney(s) or privilege actor(s) whose advice is being sought, provided, or reflected, or whose work product is included or reflected shall be identified; and

xvi.    a description of the general subject matter contained in the document and the type of document (e.g., letter, email, memorandum, handwritten notes, etc.) sufficient to allow the requesting Party to assess the claimed Privilege and/or to allow the Court to rule upon the applicability of the claimed protection.

B.    The following categories of documents need not be logged unless otherwise requested by a Party:

a.    Documents or portions thereof that reflect communications with the undersigned counsel, members of their law firms, or any Party's in-house

---

[1] For emails, this information should be populated with the metadata extracted from the email "FROM" field associated with the file. For other ESI, this should be populated with the metadata extracted from the "DOCUMENT AUTHOR" field.

counsel that are related to this litigation, created after November 13, 2021; and

b.      Work product created by any of the undersigned firms, agent of the undersigned firms, or a Plaintiff at the direction of The Rosen Law Firm, P.A., on behalf of the Plaintiffs, or work product created by any of the undersigned firms, an agent of the undersigned firms, or a Defendant at the direction of Paul, Weiss, Rifkind, Wharton & Garrison LLP and/or Latham & Watkins LLP, on behalf of the Defendants, that is related to this litigation.

c.      For the avoidance of doubt, to the extent a Party requests that documents responsive to a particular document request be logged if withheld on the basis of attorney-client privilege, work product, or some other privilege or protection, the producing Party must log such documents.

C.      Except as set forth herein, responsive documents shall not be withheld or redacted on any basis other than the attorney-client privilege, attorney work product doctrine, or other recognized protection or Privilege. In addition, a Party may redact the following personally sensitive or identifiable information: bank and brokerage account numbers; social security numbers; personal addresses; personal telephone numbers; other personal identifying information; and the names of minor children. Whenever a Party redacts personally sensitive or identifiable information, the Party shall indicate that the applied redaction is for personally identifiable information (e.g., "redacted-PII").  If the nature of the PII is not reasonably discernable from the document itself, then the Producing Party shall so indicate on the document itself (e.g. "personal phone number of X").  Upon reasonable request by the receiving Party, the producing Party will provide the category of PII being redacted.  To the extent that the producing Party seeks to apply

redactions to responsive documents beyond the categories listed here, including for other sensitive information, the Parties will meet and confer. For redacted items that were originally ESI, all metadata fields noted in this Protocol that do not contain Privileged or protected information will be provided and will include all non-redacted data.

D.     Privilege logs shall be produced as searchable, editable, Microsoft Excel spreadsheets. The Parties agree to meet and confer about methods and approaches to reduce a producing Party's burden in furnishing a privilege log, where reasonably necessary.

E.     The inadvertent failure to log Privileged documents will not result in the waiver of Privilege, provided that upon discovering the inadvertent omission, the producing Party provides notice to the requesting Party of the inadvertent failure to log promptly upon discovering the inadvertent omission, and within a reasonable time thereafter, sends the requesting Party an addendum to the appropriate privilege log providing the required privilege log entries for the document(s).

F.     The Parties will produce redacted documents in TIFF format with corresponding searchable OCR text and associated metadata for the documents, ensuring the redacted content is fully protected from disclosure. To the extent spreadsheets contain redacted text, the Parties shall provide a copy of the native file with redactions.

G.     If the Party receiving the privilege log requires further information to allow the receiving Party to assess the claimed Privilege, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information. Within a reasonable time of such a request, the producing Party must either (i) provide the requested information or (ii) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable

solution. If they cannot agree, the Parties must proceed in accordance with the discovery dispute procedures reflected in the applicable Local Rules and Standing Orders.

3.  Hard Copy Document Storage

A.  During the pendency of this litigation, the Parties shall make reasonable efforts to preserve the originals of all hard copy documents as to which there may be issues of legibility of all or any part of the production copy. Each Party reserves the right to request to inspect such original documents of the opposing Party or Parties if reasonably necessary due to issues of legibility of all or any part of the production copy, and such request shall not be unreasonably denied.

4.  Reproduction as Natives

A.  The Parties agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing Party shall respond reasonably and in good faith to any such request.

5.  De-Duplication and Document Families

A.  The Parties will perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values at a family level and will produce only a single copy of identical ESI, except where de-duplication would break up document families. De-duplication shall not break up document families. The custodian associated with the first copy of a document processed will be considered the primary custodian for that document (the custodian who will be used as the basis for determining which other collected documents are duplicates). The producing Party shall produce an "All Custodians" metadata field with each production as specified in Section VI above which lists every custodian or source who or which possessed a duplicate document. If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon

delimited field that includes duplicate custodian name information. If additional documents are produced after substantial completion of document discovery, the producing Party shall produce an overlay that provides an updated "All Custodian" field at the time new productions are made. At any time, however, if a producing Party has not provided current "All Custodian" data and a receiving Party believes in good faith that "All Custodian" data is necessary for a scheduled deposition, filing deadline, or other case event, the receiving Party shall inform the producing Party of such belief and request updated "All Custodian" data, and the producing Party shall, upon such request, produce updated "All Custodian" data sufficiently in advance of that event.

       B.     If there are any handwritten notes, or any other markings, on a document, it shall not be considered a duplicate. Any document that contains an alteration, marking on, or addition to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining. If such markings/alterations are made in color, the documents must, to the extent reasonably practicable, be produced in color as originally intended.

      6.     <u>Preservation of Parent-Child Relationships</u>

       A.     The Parties shall preserve parent-child relationships (the association between an attachment and its parent document). The Parties will provide a Begin Bates number of family unit (BEGATTACH) and End Bates number of family unit (ENDATTACH) for each produced attachment in the data load file. If any member of a document "family" (e.g., an email attachment) is withheld as Privileged, then the producing Party shall produce a one-page slipsheet TIFF image stating, "Document Withheld," and bearing a unique Bates number that is immediately after the Bates numbers assigned to the other members of the family.

7. Bates Numbering

A. The Parties shall assign a Bates number to individual pages of TIFF documents and a Bates number to each document produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document. All volumes of production shall be identified by the same Bates prefix and a numerical sequence.

8. Additional Formatting Processes

A. Any producing Party may De-NIST their electronic collections before searching and review using the then-current NIST list published by the National Institute of Standards and Technology. The Parties will meet and confer on the necessity of additional formatting processes to enhance the production of ESI including but not limited to: (a) additional ESI metadata and coding fields; and (b) imaging specifications for Excel and PowerPoint files, to the extent not produced in native format.

B. To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents or information in an acceptable format, including issues as may arise with respect to obtaining access to any such software.

C. The Parties will make reasonable efforts to ensure that all encrypted or password-protected ESI are successfully processed prior to production. To the extent encrypted or password-protected ESI are successfully processed, the Parties have no duty to identify further the prior encrypted status of such documents. To the extent security protection for such ESI cannot be successfully processed despite reasonable efforts, the Parties shall not be required to produce them.

D. If a member of a document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption,

inaccessible password-protected document) using reasonable efforts, those technical problems shall be identified and disclosed to the receiving Party by production of a Bates numbered slip sheet that states "Technical issue—file cannot be processed." A receiving Party thereafter may raise with the producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

9.      Confidentiality Designations

A.      If a document or other ESI has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such document pursuant to the Protective Order. If the receiving Party believes that a confidentiality designation obscures the content of a document, then the receiving Party may request that the document be produced with the confidentiality designation in a different position. No Party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing Party, appears on the document or in the filename, if used in native format. For each document that is marked confidential, a confidentiality field will be populated with the word "Confidential" in the .DAT file.

10.     Third Party Documents and ESI

A.      A Party that issues a subpoena ("Issuing Party") upon any third-party shall include a copy of this Protocol and the Protective Order with the subpoena and shall state that the Parties to this Action have requested that the third-party produce documents in accordance with

the specifications set forth herein. The Issuing Party shall produce a copy to all other Parties of any ESI (including any metadata) obtained under subpoena to a third-party.

B. If a third-party production is not Bates-stamped, the Issuing Party will endorse the third-party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

11. Embedded and Linked Documents

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved in accordance with Section VIII.6 of this Protocol, *supra*. Where reasonably feasible, non-image embedded ESI documents (e.g., a spreadsheet embedded within a word processing document or an audio file in a PowerPoint presentation), will be extracted, produced as independent document records, and related back to the respective top level parent document (e.g., standalone file, email message, etc.) via the BEGDOC and ENDDOC fields referenced in Section VI. Related embedded documents will be produced within a continuous Bates range. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document. Notwithstanding the foregoing, the Parties agree that, to the extent that a Powerpoint file links to one or more non-image embedded spreadsheet(s) for which the responsive information is displayed within the parent Powerpoint file, such embedded spreadsheet(s) may be produced as a Bates-stamped single-page TIFF placeholder stating "Embedded Spreadsheet Not Produced." The Parties agree that documents that are referenced or shared via hyperlink to a nonpublic fileshare or other shared repository accessible to the Responding Party (*e.g.*, Google Drive, OneDrive, DropBox, Slack) need not be produced. To the extent the Receiving Party reasonably believes that a non-produced embedded file or link is relevant, the Parties agree to meet and confer.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD

Dated: July 16, 2025


**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
*/s/ Audra J. Soloway*
Theodore V. Wells, Jr. (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Richard C. Tarlowe (*pro hac vice*)
Daniel S. Sinnreich (*pro hac vice*)
Samantha A. Bui (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
Email: twells@paulweiss.com
Email: asoloway@paulweiss.com
Email: rtarlowe@paulweiss.com
Email: dsinnreich@paulweiss.com
Email: sbui@paulweiss.com

**LATHAM & WATKINS, LLP**
*/s/ William J. Trach*
William J. Trach (BBO#661401)
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Fax: (617) 948-6001
Email: william.trach@lw.com

*Counsel for Defendants*

**THE ROSEN LAW FIRM, P.A.**
*/s/ Jonathan Horne*
Laurence M. Rosen (*pro hac vice*)
Jonathan Horne (*pro hac vice*)
Joshua Baker (BBO #695561)
Sara Fuks (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10006
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: jhorne@rosenlegal.com
Email: jbaker@rosenlegal.com
Email: sfuks@rosenlegal.com

*Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of July, 2025, I caused a copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

/s/ Audra J. Soloway
Audra J. Soloway