**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NADIA SHASH and AMJAD KHAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BIOGEN INC., MICHEL VOUNATSOS, and ALFRED W. SANDROCK, JR., <br><br> Defendants. | Civil Action No.: 1:21-cv-10479-IT <br><br> Oral Argument Requested |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUBSTITUTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFF SHASH AND MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST SHASH**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ...................................................................................................................3

I.      Shash Was Appointed Sole Lead Plaintiff Following a Contested Process. .......................3

II.     Prior Motion Practice Concerning Shash's Standing...........................................................5

III.    After Moving for Class Certification, Plaintiffs Produced Trading Records
        Revealing the Falsity of Shash's PSLRA Certification. .......................................................5

IV.     Defendants' Deposition of Shash.........................................................................................7

V.      Shash's Amended PSLRA Certification and Plaintiffs' Substitution Motion. ....................8

ARGUMENT........................................................................................................................9

I.      Shash Lacks Article III and Statutory Standing and Must Be Dismissed...........................9

II.     Plaintiffs Fail to Satisfy the Requirements for Rule 17 Substitution.................................10

III.    PolyCon Is Not an Adequate or Typical Class Representative..........................................15

        A.      PolyCon Is Not an "Adequate" Representative of the Proposed Class. ................16

        B.      PolyCon's Claims Are Not "Typical."..................................................................19

CONCLUSION...................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Magnetics, Inc.* v. *Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997)................................................................................................11

*Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)..........................................................................................................20

*Amorim Holding Financeria, S.G.P.S., S.A.* v. *C.P. Baker & Co., Ltd.*,
53 F. Supp. 3d 279 (D. Mass. 2014) .................................................................................11

*In re: Bard IVC Filters Prods. Liab. Litig.*,
2016 WL 3055112 (D. Ariz. May 31, 2016) .............................................................13, 14

*Blue Chip Stamps* v. *Manor Drug Stores*,
421 U.S. 723 (1975)..........................................................................................................10

*California Public Employees' Ret. Sys.* v. *ANZ Securities, Inc.*,
582 U.S. 497 (2017)..........................................................................................................20

*Camp* v. *Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019)......................................................................16

*Capers* v. *Nat'l R.R. Passenger Corp.*,
673 F. App'x 591 (8th Cir. 2016) .....................................................................................11

*Crowley Mar. Corp.* v. *Robertson Forwarding Co.*,
2020 WL 4366079 (S.D. Fla. July 30, 2020).....................................................................12

*Delor* v. *Intercosmos Media Grp., Inc.*,
232 F.R.D. 562 (E.D. La. 2005).........................................................................................12

*Elas* v. *Prince*,
2024 WL 278220 (D. Mass. Jan. 25, 2024).......................................................................17

*In re Engle Cases*,
767 F.3d 1082 (11th Cir. 2014) ........................................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009).................................................................................................20

*Foley* v. *Buckley's Great Steaks, Inc.*,
2015 WL 1578881 (D.N.H. Apr. 9, 2015).........................................................................18

**TABLE OF AUTHORITES**
**(Continued)**

**Page(s)**

*Gardner* v. *State Farm Fire & Cas. Co.*,
  544 F.3d 553 (3d Cir. 2008)................................................................................11

*George* v. *China Auto. Sys., Inc.*,
  2013 WL 3357170 (S.D.N.Y. July 3, 2013) ..........................................................20

*Hoffman* v. *UBS-AG*,
  591 F. Supp. 2d 522 (S.D.N.Y. 2008)...................................................................10

*Intown Properties Mgmt., Inc.* v. *Wheaton Van Lines, Inc.*,
  271 F.3d 164 (4th Cir. 2001) ...............................................................................11

*Karp* v. *Diebold Nixdorf, Inc.*,
  2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019).......................................................16

*Karth* v. *Keryx Biopharms., Inc.*,
  334 F.R.D. 7 (D. Mass. 2019)........................................................................19, 20

*In re Kosmos Energy Ltd. Sec. Litig.*,
  299 F.R.D. 133 (N.D. Tex. 2014) .........................................................................18

*Lans* v. *Digital Equip. Corp.*,
  252 F.3d 1320 (Fed. Cir. 2001)............................................................................11

*Lans* v. *Gateway 2000, Inc.*,
  84 F. Supp. 2d 112 (D.D.C. 1999)........................................................................15

*Lemm* v. *N.Y. Cmty. Bancorp, Inc.*,
  733 F. Supp. 3d 107 (E.D.N.Y. 2024) ..................................................................20

*Merck & Co.* v. *Reynolds*,
  559 U.S. 633 (2010)..............................................................................................20

*Nager* v. *Websecure, Inc.*,
  1997 WL 773717 (D. Mass. Nov. 26, 1997) ........................................................16

*In re Nat'l Australia Bank Sec. Litig.*,
  2006 WL 3844465 (S.D.N.Y. Oct. 25, 2006) .......................................................10

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015)...................................................................19

*Police & Fire Ret. Sys. of City of Detroit* v. *IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013)....................................................................................20

**TABLE OF AUTHORITES**
**(Continued)**

**Page(s)**

*Quaak* v. *Dexia S.A.*,
   357 F. Supp. 2d 330 (D. Mass. 2005) ................................................................20

*Rocco* v. *Nam Tai Elecs., Inc.*,
   245 F.R.D. 131 (S.D.N.Y. 2007) .......................................................................20

*Rodriguez* v. *DraftKings Inc.*,
   2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)....................................................16

*Scott* v. *Vantage Corp.*,
   845 F. App'x 170 (3d Cir. 2021) .......................................................................13

*In re Sepracor Inc.*,
   233 F.R.D. 52 (D. Mass. 2005)..........................................................................18

*Shiring* v. *Tier Techs., Inc.*,
   244 F.R.D. 307 (E.D. Va. 2007) ............................................................17, 18, 19

*Shupe* v. *Rocket Cos., Inc.*,
   752 F. Supp. 3d 735 (E.D. Mich. 2024)...................................................17, 19

*In re Smith Barney Transfer Agent Litig.*,
   823 F. Supp. 2d 202 (S.D.N.Y. 2011)................................................................13

*Software Automation Holdings, Inc.* v. *Ins. Toolkits, LLC*,
   2025 WL 1840654 (E.D.N.C. July 3, 2025) ......................................................13

*SonicSolutions Algae Control, LLC* v. *Diversified Power Int'l, LLC*,
   722 F. Supp. 3d 16 (D. Mass. 2024)..................................................................10

*Triple Tee Golf, Inc.* v. *Nike, Inc.*,
   2007 WL 4260489 (N.D. Tex. Aug. 10, 2007)........................................12, 14, 15

*Trivedi* v. *Gen. Elec. Co.*,
   2020 WL 9744754, at *6 (D. Mass. Aug. 13, 2020)..........................................10

*U.S. for Use & Benefit of Wulff* v. *CMA, Inc.*,
   890 F.2d 1070 (9th Cir. 1989) ...........................................................................11

*Williams* v. *Block.One*,
   2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020)......................................................19

*Zurich Ins. Co.* v. *Logitrans, Inc.*,
   297 F.3d 528 (6th Cir. 2002) .............................................................................11

iv

# TABLE OF AUTHORITES
## (Continued)

Page(s)

**Statutes**

15 U.S.C. § 78j(b) ...........................................................................................................10, 20

28 U.S.C. § 1658(b)(2) .........................................................................................................20

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat.
    737 (1995) ......................................................................................................................3

**Other Authorities**

13 C.F.R. § 124.104(c).............................................................................................................8

17 C.F.R. § 240.10b-5...........................................................................................................10

Fed. R. Civ. P. 12..............................................................................................................1, 10

Fed. R. Civ. P. 17............................................................................................2, 10, 11, 13

Fed. R. Civ. P. 23................................................................................................2, 5, 16, 19

Fed. R. Civ. P. 30(b)(6)........................................................................................................16

U.S. Const. art. III, § 2, cl. 1 ...........................................................................................1, 10

v

Defendants Biogen Inc. ("Biogen" or the "Company"), and its former officers Michel Vounatsos and Alfred W. Sandrock, Jr., M.D., Ph.D. (together, "Defendants") respectfully submit this opposition to Plaintiffs' Motion to Substitute PolyCon Solutions, LLC ("PolyCon") for Lead Plaintiff Nadia Shash ("Shash"), Doc. No. 187 (the "Substitution Motion"), and memorandum of law in support of Defendants' Motion to Dismiss Shash pursuant to Fed. R. Civ. P. 12(b)(1) and Motion for Judgment on the Pleadings against Shash pursuant to Fed. R. Civ. P. 12(c).

## PRELIMINARY STATEMENT

After more than four and a half years of litigation, Plaintiffs have now revealed that lead plaintiff Nadia Shash never purchased or sold any Biogen securities.  Shash falsely and repeatedly maintained—in her PSLRA Certification and motion for appointment as lead plaintiff, in two complaints filed in this Court, in her briefs opposing motions to dismiss for lack of standing, and even in her motion for class certification—that she had purchased shares of Biogen on November 4, 2020, and sold those shares on November 9, 2020.  But Shash purchased no shares at all, suffered no injury, and lacks both Article III and statutory standing.  Plaintiffs now concede, by moving for substitution, that Shash can no longer continue as either a plaintiff or class representative in this lawsuit.  Defendants respectfully request dismissal of all claims asserted by Shash, with prejudice, and that judgment be entered against her.

Plaintiffs' motion for substitution should also be denied.  They ask the Court to overlook their conduct, and to substitute a corporate entity, PolyCon, in place of Shash.  But Plaintiffs provide conflicting explanations for their purported "mistake" (and no explanations for omitting numerous Biogen transactions from Shash's PSLRA Certification and misreporting the quantity and price of transactions that *were* included).  Nor do Plaintiffs engage with the fact that Shash successfully moved for lead plaintiff appointment and opposed a motion targeting her standing

based on false representations that she transacted in Biogen stock. Plaintiffs' Substitution Motion under Rule 17 should be denied for two principal reasons:

*First*, Plaintiffs fail to satisfy their burden under Rule 17 to show that identification of the proper party was "difficult" and could not have been uncovered through investigation of "basic facts," or that their "mistake" was "understandable." It was not "difficult" to determine that PolyCon was the proper plaintiff—its name is clearly stated on the relevant account statements and Shash testified that ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████ Nor does the record support that Plaintiffs' purported "mistake" is "understandable." Initially, ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Now, Plaintiffs submit a contradictory declaration from Shash—unaccompanied by any other evidence—that she actually only provided a list of transactions to counsel at the outset of the case. Plaintiffs' counsel submits no declaration explaining the "mistake" at all, but admits that counsel never reviewed the relevant account statements to verify the accuracy of Shash's sworn PSLRA Certification and lead plaintiff motion papers. Whatever actually happened, investigation of "basic facts" by Shash and her counsel would indisputably have uncovered the multiple false statements in Shash's PSLRA certification. On these facts, the motion for substitution should be denied.

*Second*, to the extent Plaintiffs seek to appoint PolyCon as a class representative— something their motion does not address—substitution should be denied because PolyCon cannot satisfy the adequacy or typicality requirements of Rule 23(a). PolyCon acts through Shash—its sole member, CEO, and President. And Shash's abundant credibility issues—including her submission of a false PSLRA Certification that she failed to correct for more than four years—

2

render PolyCon inadequate. Indeed, Shash previously argued *in this case* that competing lead plaintiff movants were inadequate due to perceived errors in their PSLRA Certifications—according to her, even a "typo in one transaction price" renders a plaintiff "inadequate." These errors are compounded by several other credibility issues, including Shash's failure to acknowledge or explain numerous errors and omissions in the Biogen transactions that *were* included in the PSLRA Certification, and her contradictory testimony about several key issues. PolyCon is also atypical because it purchased Biogen stock after the sole remaining corrective disclosure, subjecting it to an "arguable" reliance defense that could distract from classwide issues.

## BACKGROUND

### I.    Shash Was Appointed Sole Lead Plaintiff Following a Contested Process.

This action was filed on November 13, 2020—mere days after the alleged corrective disclosure took place—by Victor Menashe in the Central District of California. Doc. No. 1. On January 12, 2021, Shash moved to be appointed lead plaintiff pursuant to the statutory process set forth in the Private Securities Litigation Reform Act ("PSLRA"). Doc. No. 8. In support of that application, Shash submitted a sworn certification, signed November 14, 2020. *See* Doc. No. 9 at 5–6; Doc. No. 10-2 at 1 (the "PSLRA Certification"). The PSLRA Certification purported to list *Shash's* transactions in Biogen securities during the class period; it identified a single purchase of 13,931 shares of Biogen stock on November 4, 2020, and a single sale of 13,931 shares of Biogen stock on November 9, 2020, for alleged losses of $1,659,460.72. Doc. No. 9 at 5; Doc. Nos. 10-2, 10-3. Shash affirmed under penalty of perjury that those two transactions reflected all of her Biogen transactions from October 22, 2019, to November 9, 2020. Doc. No. 10-2. There was no mention of PolyCon and no mention of other Biogen stock purchases or sales.

Other putative class members filed competing lead plaintiff applications. *See* Doc. Nos. 12, 15. Shash opposed those applications, arguing that mistakes in their PSLRA certifications

3

undermined their abilities to serve as lead plaintiff. Shash argued that one movant "submitted inaccurate trading information," and that "[c]ourts have readily denied lead plaintiff motions in the past where errors in a movant's filings caused the court to question the movant's reliability to serve as a class representative." Doc. No. 19 at 14–15. Shash asserted that even a "plaintiff's typo in one transaction price" may "render him inadequate." *Id.* at 15. Likewise, Shash asserted that another movant was "atypical and inadequate" because his "submission contain[ed] numerous errors," including "the incorrect spelling of one of his attorney's name[s]—'Levin' instead of the correct 'Levis.'" Doc. No. 19 at 16–17; Doc. No. 28 at 8.

One movant challenged Shash's appointment by arguing that Shash provided no evidence that "the trades she allegedly executed were *made by her personally*" as opposed to "her broker, dealer, or some other third party." Doc. No. 23 at 6.[1] Shash replied that these arguments were "wrong" because "Ms. Shash made all decisions regarding *her buying and selling* Biogen stock." Doc. No. 28 at 7. Shash again did not disclose PolyCon, and supported her motion by declaring under penalty of perjury the she was "a sophisticated investor," a "licensed attorney," and "the founder and [CEO] of a company certified with [the SBA Program]." Doc No. 29-1.

On February 24, 2021, Judge Selna appointed Shash as sole Lead Plaintiff. Doc. No. 30. The Court acknowledged that "Shash provided . . . [no] indication whether the trades she allegedly executed were made by her *personally*," rather than at a third party's discretion, but deemed Shash the "most adequate" because "*Shash* suffered the greatest financial injury," having "purchase[d] the greatest number of shares," while also "ma[king] a sufficient preliminary showing of adequacy and typicality." *Id.* at 3–4, 6–7. Judge Selna relied on Shash's PSLRA Certification. *See id.* at 4.

On March 17, 2021, Judge Selna granted an unopposed motion to transfer the action to the

---

[1] Unless otherwise noted, emphases are added and internal quotation marks and citations omitted.

District of Massachusetts, where it was assigned to this Court.  *See* Doc. No. 36.

## II.    Prior Motion Practice Concerning Shash's Standing.

Shash's standing has been litigated previously, on a record now known to be false.  In both the first and second amended complaints, Shash alleged that "Nadia Shash, as set forth in her PSLRA Certification . . . purchased Biogen securities at artificially inflated prices during the Class Period."  Doc. No. 42 at ¶ 28; Doc. No. 58 at ¶ 40.  Defendants moved to dismiss Shash's claims for lack of standing in February 2024 because she purchased Biogen shares after the alleged corrective disclosure.  Doc. No. 117.  On March 27, 2025, the Court denied Defendants' motion, finding that Defendants' argument "d[id] not implicate the court's subject-matter jurisdiction" and Shash had "sufficiently allege[d] a presumption of reliance."  Doc. No. 163 at 8, 11–12.

## III.   After Moving for Class Certification, Plaintiffs Produced Trading Records Revealing the Falsity of Shash's PSLRA Certification.

On June 27, 2025, prior to producing any trading records, Plaintiffs moved for class certification.  Plaintiffs argued that proposed class representatives Shash, Khan, and Aftoora each met Rule 23(a)(3)'s typicality requirement because, "[l]ike all class members," they "purchased Biogen securities during the Class Period[.]"  Doc. No. 173 at 8.  Plaintiffs each filed sworn declarations agreeing to "serve as a class representative" of "all persons and entities who purchased or otherwise acquired publicly traded Biogen securities" and thus had been "wronged in the same way."  Doc. Nos. 171-2–4.  Shash's declaration did not mention PolyCon.

On July 30, 2025, less than three weeks before her scheduled deposition, Shash made her first production in response to Defendants' document requests, consisting of two account statements and a tax information statement for a TD Ameritrade account belonging to PolyCon. The statements had extensive redactions of non-Biogen trading, *see* PolyCon Account Statements,

Doc. Nos. 194-1–3, contrary to the ESI Protocol, Doc. No. 176 at 11.  The limited information that was not redacted revealed that Shash's PSLRA Certification was false in three ways:

**First**, the Biogen trades were conducted not by Shash, as the PSLRA Certification had said, but by PolyCon.  Doc. Nos. 194-1–3. ████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

**Second**, despite purporting to report "all" class period transactions, the PSLRA Certification failed to report PolyCon's day trading in Biogen stock on October 9, 2020, when it purchased 981 shares in six different transactions in different quantities at different prices, and then sold those shares the same day.  Doc. No. 194-2 at 4.

**Third**, the PSLRA Certification also provided incorrect information about the November transactions that *were* listed.  The Certification identified a single purchase of 13,931 shares on November 4, 2020, *see* Doc. No. 10-2 at 3, but the actual purchase was for 20,000 shares ██ ██ *see* Doc. No. 194-3 at 3.  Similarly, the Certification showed a single sale of 13,931 shares at a price of $223.88 on November 9, 2020, *see* Doc. No. 10-2 at 3, but omitted sales of thousands of additional Biogen shares in several other transactions at other prices, *see* Doc. No. 194-3 at 3.

The day after receiving these PolyCon records, Defendants wrote to Plaintiffs, expressing concern that the production "reflect[ed] trades that were not disclosed on the PSLRA certification that Shash filed," and that "PolyCon Solutions LLC, not Shash, transacted in the Biogen stock underlying Ms. Shash's claims"—discrepancies that "further underscore[d] why Plaintiffs must reproduce all documents with improper redactions removed."  D. Sinnreich Email, Doc. No. 194-4.  On August 4, 2025, Defendants served a subpoena on PolyCon.  PolyCon Subpoena, Doc. No. 194-5.  On August 5, 2025, Plaintiffs produced unredacted PolyCon account statements for

October and November 2020.  Doc. Nos. 189-6–7.  The records revealed that, ██████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  *Id.*

## IV.    Defendants' Deposition of Shash.

On August 20, 2025, Defendants deposed Shash.  ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████  Those

account statements clearly reflect trades by PolyCon, not Shash, and include *all* of PolyCon's

Biogen transactions during the putative class period, not just the incomplete subset listed on the

PSLRA Certification.  Shash acknowledged that ████████████████████████

████████████████████████████████████████████  According to

Shash, she ████████████████████████████████████████

████████████████████████████████████  When asked why ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████  When confronted

with ████████████████████████████████████

████████████████████████████  Similarly, Shash ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

Shash testified that ██████████████████████████████████████

████████████████████████████████████  When asked, however, if ████

██████████████████████████████████████████████████████

██████████████████████████████████    Rather, she stated only that ████████████

████████████████████████████████████████████████

██████████████████████████████████████

At her deposition, Shash ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████    By contrast, ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

## V.    Shash's Amended PSLRA Certification and Plaintiffs' Substitution Motion.

On September 5, 2025, Plaintiffs filed a Notice of Filing of Amended PSLRA Certification. Doc. No. 181. Attached was a PSLRA Certification, dated August 22, 2025, in which "Plaintiff"—now defined as PolyCon—"declare[d]" that it is still "willing to serve as lead plaintiff" while providing a revised set of Biogen trades reflecting all of the Biogen transactions in PolyCon's

8

trading statements. Doc. No. 181-1 (the "Amended Certification"). The Amended Certification was still signed by Shash but, this time, as "Owner" of PolyCon. *See id.*

Plaintiffs' Substitution Motion followed on September 9, 2025, in which Plaintiffs acknowledge that "PolyCon should have moved for appointment [as PSLRA Lead Plaintiff], not Ms. Shash." Doc. No. 187 at 1. They blamed this "error" on "a miscommunication between Shash and lead counsel," which "was not caught" until "Shash produced trading records to her counsel" in "July 2025." *Id.*; Doc. No. 185 at ¶ 4. Shash now claims, in a declaration dated September 8, 2025, that she was "mistaken" in her August 20, 2025 deposition testimony that she provided account statements to counsel "when we started the case." Doc. No. 185 at ¶ 4. Instead, the declaration claims, without any documentary support, that she provided her counsel a listing of Biogen transactions and that the listing did not identify PolyCon. *Id.*[2] The Substitution Motion does not acknowledge that the PSLRA Certification also misreported the number and price of PolyCon's Biogen transactions and omitted additional purchases and sales during the class period.

## **ARGUMENT**

### I.    **Shash Lacks Article III and Statutory Standing and Must Be Dismissed.**

Where, as here, an LLC "suffers injury, the proper entities to complain are the LLCs that directly suffered harm, not its member-owners, who only indirectly suffered harm." *SonicSolutions Algae Control, LLC* v. *Diversified Power Int'l, LLC*, 722 F. Supp. 3d 16, 39 (D. Mass. 2024). Because Shash never bought or sold Biogen stock and suffered no damages, she lacks Article III standing and should be dismissed pursuant to Rule 12(b)(1). *See In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844465, at *8–9 (S.D.N.Y. Oct. 25, 2006), *aff'd,* 547 F.3d

---

[2] Defendants sought documents to substantiate Shash's changed recollection. Plaintiffs refused on privilege grounds and, as of this filing, have not produced the requested documents or provided redacted documents with a privilege log. R. Tarlowe Email, Doc. No. 194-8.

167 (2d Cir. 2008), *aff'd,* 561 U.S. 247 (2010); *Hoffman* v. *UBS-AG*, 591 F. Supp. 2d 522, 530–32 (S.D.N.Y. 2008). Because Shash was not a "purchaser" of Biogen stock, she also lacks statutory standing to pursue claims under Section 10(b) and Rule 10b–5. *See Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 731 (1975); *Trivedi* v. *Gen. Elec. Co.*, 2020 WL 9744754, at *6 (D. Mass. Aug. 13, 2020), *adopted,* 2021 WL 2229088 (D. Mass. May 27, 2021), *aff'd,* 2022 WL 1769136 (1st Cir. May 3, 2022). Shash acknowledged this deficiency in her Amended Certification, Doc. No. 181-1, which is incorporated by reference in the operative complaint, Doc. No. 58 at ¶ 40. Judgment should therefore be entered against Shash pursuant to Rule 12(c).[3]

## II.    Plaintiffs Fail to Satisfy the Requirements for Rule 17 Substitution.

Plaintiffs ask the Court to substitute PolyCon for Shash as the lead plaintiff in this action under Rule 17(a)(3). Doc. No. 187 at 2. But Plaintiffs fail to satisfy their burden of demonstrating an "understandable mistake" and their motion should be denied.

Plaintiffs argue that substitution should be granted so long as the complaint's only flaw is identifying the wrong party and defendants are not prejudiced. *Id.* at 3. Plaintiffs fail to make this showing, *infra* at 15, but this is also the wrong standard. Plaintiffs ignore the overwhelming case law that *also* requires them to affirmatively prove that their mistake is "understandable" because identifying the proper party was "difficult." According to the Fifth and Eleventh Circuits, "'most courts have interpreted . . . Rule 17(a) as being applicable only when the plaintiff brought the action [in the name of the wrong party] as a result of an *understandable mistake*, because the *determination of the correct party to bring the action is difficult*.'" *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014) (original brackets) (quoting *Wieburg* v. *GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (collecting cases)). The Third and Ninth Circuits also prohibit substitution

---

[3] Defendants move under Rules 12(b)(1) and 12(c) against Shash only and reserve all rights as to other Plaintiffs.

under Rule 17(a) where "there was *no difficulty and no mistake* in determining who was the proper party to bring suit." *Gardner* v. *State Farm Fire & Cas. Co.*, 544 F.3d 553, 562–63 (3d Cir. 2008); *U.S. for Use & Benefit of Wulff* v. *CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989).[4]  Courts in this district similarly recognize that "Rule 17(a)(3) is designed to avoid forfeiture and injustice when an *understandable mistake* has been made." *Amorim Holding Financeria, S.G.P.S., S.A.* v. *C.P. Baker & Co., Ltd.*, 53 F. Supp. 3d 279, 294 (D. Mass. 2014).  This is consistent with the advisory committee's statement on Rule 17 that it is "intended to prevent forfeiture when determination of the correct party to sue *is difficult or when an understandable mistake has been made*."  Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment.[5]

Here, Plaintiffs do not argue that identification of the correct party was "difficult" or their mistake was "understandable."  Thus, they cannot satisfy their burden.  *See Triple Tee Golf, Inc.* v. *Nike, Inc.*, 2007 WL 4260489, at *26 (N.D. Tex. Aug. 10, 2007) (denying substitution because "plaintiff has the burden to show that it sued in its own name 'based on an understandable mistake'" and "plaintiff has not made such a showing"), *aff'd*, 281 F. App'x 368 (5th Cir. 2008).

But even if Plaintiffs pursued these arguments, they would fail:

Identifying the party in interest was not "difficult."  The Biogen trading here took place in an account that clearly identifies PolyCon as the accountholder.  *E.g.*, PolyCon Tax Statement,

---

[4] *Accord Zurich Ins. Co.* v. *Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir. 2002) (Rule 17(a)(3) "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made"); *Capers* v. *Nat'l R.R. Passenger Corp.*, 673 F. App'x 591, 595 (8th Cir. 2016) (same); *Lans* v. *Digital Equip. Corp.*, 252 F.3d 1320, 1328–29 (Fed. Cir. 2001) (substitution denied where "original allegations were not honest and understandable mistakes"); *Intown Properties Mgmt., Inc.* v. *Wheaton Van Lines, Inc.*, 271 F.3d 164, 171 (4th Cir. 2001) (substitution denied where plaintiff's "mistake had not been 'understandable'").

[5] Plaintiffs rely on the Second Circuit's minority approach to substitution in *Advanced Magnetics, Inc.* v. *Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997).  Doc. No. 187 at 3.  But even that opinion acknowledged that district courts retain discretion to deny substitution where there was "no semblance of any reasonable basis for the naming of an incorrect party."  Doc. No. 187 at 5.

11

Doc. No. 194-6.  Shash ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████  Shash signed her false PSLRA Certification on

November 14, 2020—mere days after PolyCon's Biogen transactions occurred.  Doc. No. 10-2.

Nor can Shash claim to be unsophisticated in light of her sworn declaration that she was a

"sophisticated investor," a "licensed attorney," and the "founder and [CEO] of a company," *supra*

at 4—attestations that Judge Selna relied upon in appointing Shash as lead plaintiff.  Doc. No. 30

at 7.  These facts preclude substitution.  *See Crowley Mar. Corp.* v. *Robertson Forwarding Co.*,

2020 WL 4366079, at *4 (S.D. Fla. July 30, 2020) (denying substitution where "the determination

of the proper parties to bring the action was not difficult – they are subsidiaries of the Plaintiff

[and] *their identities are spelled out on the face of the underlying documents*"); *Delor* v.

*Intercosmos Media Grp., Inc.*, 232 F.R.D. 562, 567 (E.D. La. 2005) (denying substitution where

plaintiff had "documents since long before this litigation commenced" identifying proper party).

Plaintiffs' "mistake" also was not "understandable."  Originally, Shash ██████████████

████████████████████████████████████████████████  *Supra* at 7.  Now,

Plaintiffs claim there was a "miscommunication between Ms. Shash and lead counsel."  Doc. No.

187 at 1.  Plaintiffs provide no corroborating documents.  Instead, Shash states in a declaration

that contradicts her deposition testimony, dated September 8, 2025, that at some unspecified time

early in the case she "provided a listing of Biogen transactions to counsel."  Doc. No. 185 at ¶ 4.

Plaintiffs' brief then states that "Counsel did not at the time obtain her account statements to check

the certification."  Doc. No. 187 at 5–6.  This fails to demonstrate an "understandable" mistake.

*First*, counsel's failure to take the most basic step of reviewing Shash's account statements

before pursuing this litigation is not "understandable."  Courts deny Rule 17(a)(3) substitution

12

where a mistake could have been avoided through minimal diligence, such as in *In re: Bard IVC Filters Prods. Liab. Litig.*, 2016 WL 3055112, at *3 (D. Ariz. May 31, 2016), which held:

> Substitution is not appropriate in this case. Plaintiff's counsel could have readily determined the correct party to bring this action had Plaintiff's counsel investigated the basic facts underlying Plaintiff's claims prior to filing the complaint. If there is an understandable mistake as to why the proper party could not be discovered, Plaintiff's counsel has not even attempted to convey that information to the Court.

Here, "investigat[ing] the basic facts" would have involved, at the very least, reviewing Shash's trading records before submitting a sworn declaration attesting to her trading activity and seeking her appointment as lead plaintiff. *See In re Smith Barney Transfer Agent Litig.*, 823 F. Supp. 2d 202, 202, 204–05 (S.D.N.Y. 2011) ("Lead Counsel's failure to confirm *the most basic fact*—that its client purchased the securities at issue in this action—has resulted in a considerable waste of time and resources," requiring dismissal of lead plaintiff and offering "a cautionary lesson for securities litigators"). Plaintiffs' failure to take this fundamental step precludes substitution. *See Scott* v. *Vantage Corp.*, 845 F. App'x 170, 180 (3d Cir. 2021) (denying substitution where plaintiff "had direct knowledge of who purchased the [underlying] stock . . . when he brought suit"); *Software Automation Holdings, Inc.* v. *Ins. Toolkits, LLC*, 2025 WL 1840654, at *12 (E.D.N.C. July 3, 2025) (no "understandable mistake" justifying substitution where filer "should have known when it filed this action that it assigned its interests to [another entity] seven months earlier").

**Second**, Plaintiffs' failure to provide any credible evidence corroborating Shash's supposed "miscommunication" with counsel, or how it was uncovered, fails to satisfy their burden of showing that the mistake was "understandable." *See Triple Tee Golf*, 2007 WL 4260489, at *26; *Bard IVC Filters*, 2016 WL 3055112, at *3. Shash's new recollection merits particular skepticism because it contravenes her sworn deposition testimony. On August 20, 2025—weeks after Shash "learned of the discrepancies in my PSLRA certification," Doc. No. 185 at ¶ 4—Shash

13

██████████████████████████████████████████████████████████████

███████████████████████████████████████████ *Supra* at 7.  But Shash has now submitted a new sworn declaration, signed 19 days after her deposition, declaring that her deposition testimony was "mistaken" and changing her story to indicate that she merely "provided a listing of Biogen transactions to counsel."  Doc. No. 185 at ¶ 4.  Shash's new declaration does not explain why she initially failed to identify PolyCon as the account holder; when she first sent account statements to counsel; or how her recollection changed in just 19 days.  Nor do Shash or counsel explain why Shash's PSLRA Certification omitted and misstated numerous Biogen trades, *supra* at 6—these issues are not even disclosed in Plaintiffs' papers.  This approach contrasts sharply with counsel's approach in *Vale* v. *McGuinn*, No. 09-CV-3807 (S.D.N.Y.), where counsel sought to correct a typographical error in a PSLRA certification through a detailed attorney declaration that described how the mistake was made, how it was uncovered, and efforts to fix the mistake, and attached correspondence between the lead plaintiff applicant and counsel corroborating their narrative.  Rosen Decl., Doc. No. 194-7.  There is no similar showing here.

Plaintiffs' failure to establish what actually occurred is particularly troubling given Shash's representations during the lead plaintiff process, when a competing movant faulted Shash for failing to support her motion with a declaration, which gave no proof that her trades "were made by her *personally*" as opposed to a "broker" or "some other third party."  Doc. No. 23 at 6.  Shash denied this argument and submitted a declaration in response, stating that "I did make the investment decisions to buy and sell Biogen stock"—but, in a troubling omission, did not disclose that it was PolyCon that made these trades, not her "personally."  Doc. No. 29-1.  Likewise, Shash attacked the competing applicants for errors in their PSLRA certifications, but herself submitted a PSLRA Certification filled with glaring misrepresentations and omissions.  *Supra* at 6.

14

At bottom, Plaintiffs' submission raises more questions than it answers and fails to demonstrate that their mistake was "understandable." *See Lans* v. *Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 120 (D.D.C. 1999) ("justice would not be served if the plaintiffs were rewarded for their failures, oversights and misrepresentations by permitting an amendment of their pleadings"), *aff'd,* 252 F.3d 1320 (Fed. Cir. 2001).[6]

Plaintiffs' other arguments also fail. Plaintiffs argue that "the only flaw in Ms. Shash's complaint" was naming the wrong party. Doc. No. 187 at 4. But Shash's error-ridden PSLRA Certification is "incorporated by reference" into the complaint, Doc. No. 58 at ¶ 40, and the numerous other "flaws" in that document undermine Plaintiffs' motion for class certification. *See infra* at 16–17.[7] Plaintiffs also argue that substitution will not prejudice defendants because "[n]o additional discovery will be necessary." Doc. No. 187 at 4. Wrong again. Defendants have already served a document subpoena on PolyCon and will seek deposition testimony from PolyCon pursuant to Rule 30(b)(6), about, among other things, its trading activity, the source of funds for its Biogen investment, and its typicality and adequacy as a potential class representative.

## III.     PolyCon Is Not an Adequate or Typical Class Representative.

Plaintiffs' pending class certification motion proposes Shash, not PolyCon, as one of three class representatives under Rule 23. Doc. No. 172 at 1. Plaintiffs cite no authority for the proposition that PolyCon can simply parachute into this case now—whether as the PSLRA lead plaintiff or a class representative under Rule 23. In any event, this case is now at the stage where a proposed class representative must satisfy the stringent adequacy and typicality standards of Rule

---

[6] Plaintiffs argue that Shash did not act in "bad faith" by obscuring PolyCon's role. Doc. No. 187 at 5. But "defendants do not need to establish affirmatively a bad motive" to defeat substitution. *Triple Tee Golf*, 2007 WL 4260489, at *26. In any event, the Court need not accept Plaintiffs' self-serving and uncorroborated statement.

[7] Plaintiffs similarly argue that the complaint "survived Defendants' two exhaustive dispositive motions," Doc No. 187 at 4, but ignore that those motions raised concerns about *Shash's standing*.

15

23—which PolyCon plainly cannot meet.  Substitution of PolyCon should therefore be denied for the additional reason that PolyCon is not qualified to serve as a class representative.

A.    PolyCon Is Not an "Adequate" Representative of the Proposed Class.

Shash is PolyCon's sole member, President, and CEO, and signed PolyCon's new PSLRA Certification.  But Shash, as PolyCon's representative, admitted to submitting false information to the Court and failing to correct it for years.  Courts regularly reject lead plaintiff applicants who submit inaccurate trading data and PSLRA certifications.  *See Rodriguez* v. *DraftKings Inc.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (rejecting lead plaintiff applicant despite corrected PSLRA certification because "[h]ad [applicant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors"); *Karp* v. *Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (errors in plaintiffs' PSLRA certification that went uncorrected for two weeks "render[ed] them inadequate"); *Camp* v. *Qualcomm Inc.*, 2019 WL 277360, at *3–4 (S.D. Cal. Jan. 22, 2019) (submission of inaccurate trading data and loss calculations made lead plaintiff applicant inadequate); *Nager* v. *Websecure, Inc.*, 1997 WL 773717, at *1 n.1 (D. Mass. Nov. 26, 1997) (submission of inaccurate trading data "cast . . . doubt on [plaintiff's] adequacy as a representative plaintiff").  Indeed, Shash herself argued *in this case* that even a "typo in one transaction price" listed in a PSLRA Certification "render[s] [a plaintiff] inadequate."  *Supra* at 4.  This law applies with greater force at class certification, which imposes a more demanding standard than the PSLRA lead plaintiff process. *See Elas* v. *Prince*, 2024 WL 278220, at *2 (D. Mass. Jan. 25, 2024) (Talwani, J.).

PolyCon's inadequacy is further compounded by several additional factors, including (i) Plaintiffs' utter failure to explain—or even acknowledge—the numerous errors in the Biogen transactions listed in the PSLRA Certification; (ii) Shash's █████████████████████████ ███████████████████████████████████████████████; and (iii) that the

16

question of whether Shash "personally" transacted in Biogen was raised during the lead plaintiff phase, and the Court relied on Shash's misrepresentations to reject that argument. *Supra* at 3–9.[8] This "indifference to the PSLRA's certification requirements demonstrates a lack of diligence and candor that . . . counsel against a finding of adequacy." *Shiring* v. *Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007); *Shupe* v. *Rocket Cos., Inc.*, 752 F. Supp. 3d 735, 795 (E.D. Mich. 2024) ("At best, Shupe's deposition testimony highlights his inability to remember important details central to this litigation and his own trades of Rocket stock.  At worst, Shupe's testimony is indicative of obfuscation after deliberate, dishonest disclosures.  His adequacy is undermined either way.").

In addition, class representatives are found "inadequate" when they have "abdicated control over [their] case" to counsel, *Foley* v. *Buckley's Great Steaks, Inc.*, 2015 WL 1578881, at *6 (D.N.H. Apr. 9, 2015), or possess "minimal familiarity with the basic facts of the claims," *In re Sepracor Inc.*, 233 F.R.D. 52, 55 (D. Mass. 2005).  That is certainly the case here, where Shash testified █████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████ Shash ███████████████████████████

---

[8] Other credibility issues abound.  The Court relied on Shash's declaration that she was a "sophisticated investor" in appointing her lead plaintiff, but Shash ████████████ ██████████████████████████████████ Doc. Nos. 29-1, ██████ Shash testified that ████████████████████████████████████████████████████ ██████; Doc. No. 181-1. Shash gave conflicting sworn statements about when and whether she provided account statements to counsel. *Supra* at 9.  She admitted that ███████ ███████████████████████████████████████████████████ ███████████████████████ She also testified that ███████ █████████████████████████████████████████████████ ████████████████████████ *Supra* at 7.

17

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ In one remarkable exchange, when ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ When asked to explain ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ This demonstrates that PolyCon, with Shash as its representative, will "continue to defer to counsel, relying on information from and communications with counsel to monitor and manage the litigation," rendering it inadequate.  *Tier Techs.*, 244 F.R.D. at 316; *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 146–49 (N.D. Tex. 2014) (lead plaintiff who had not seen "central document" in case and could not explain alleged cause of stock drop was inadequate).

Relatedly, because "unrelated plaintiff groups" like the proposed class representatives "raise doubts that the group—rather than its lawyers—is truly in charge of the litigation," *Williams* v. *Block.One*, 2020 WL 4505569, at *3 (S.D.N.Y. Aug. 4, 2020), courts require such groups "to demonstrate their ability to function as a cohesive and independent unit to protect the interests of the class." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015).  Here, Shash admitted that ███████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ Yet again, Shash raised *precisely this argument* during the lead plaintiff stage in opposition to a competing movant, Doc. No. 19 at 9–12, and yet again, the Court

18

accepted this argument in appointing Shash lead plaintiff. *See* Doc. No. 30 at 6 (holding that the "Biogen Investor Group" "does not meet the adequacy and typicality requirements of Rule 23(a)" because its three members reside in different states and "seemingly share no other relationship").

### B.    PolyCon's Claims Are Not "Typical."

PolyCon's claims are also atypical because it is subject to "unique defenses that would divert attention from the common claims of the class." *Karth* v. *Keryx Biopharms., Inc.*, 334 F.R.D. 7, 16 (D. Mass. 2019), *aff'd,* 6 F.4th 123 (1st Cir. 2021). Defendants "do not have to *prove* a unique defense to defeat certification"; even an "arguable defense" particular to a class representative is sufficient. *Shupe*, 752 F. Supp. 3d at 792; *Tier Techs.*, 244 F.R.D. at 314. Here, PolyCon's purchasing patterns subject it to an additional "arguable defense" of non-reliance.

According to Plaintiffs, PolyCon purchased Biogen on November 4, 2020, "a few hours" after the Massie Appendix was published. *See* Doc. No. 122 at 9. Because this purchase occurred after the alleged revelation of the "truth," any purported reliance on the alleged misstatement is unreasonable.[9] *Karth*, 334 F.R.D. at 21. Courts regularly reject class representatives because their post-disclosure purchases render their claims atypical. *See, e.g.*, *id.* at 18 (plaintiff's post-disclosure purchase "makes his claims atypical"); *Lemm* v. *N.Y. Cmty. Bancorp, Inc.*, 733 F. Supp. 3d 107, 118 (E.D.N.Y. 2024) (post-disclosure purchases rendered lead plaintiff applicant atypical because of "a risk of unique defenses"); *Rocco* v. *Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135

---

[9] In ruling on Defendants' motion for judgment on the pleadings, this Court held that Plaintiffs "sufficiently allege a presumption of reliance" for Shash because, "assuming the truth of Plaintiffs' allegations," it was "not until November 5 [that] some investors began to digest and give credence to the information" in the Massie Appendix. Doc. No. 163 at 11–12; Doc. No. 58 at ¶ 279. The Court acknowledged that "the precise question of when a corrective disclosure is fairly reflected in the market price is a question of evidence and fact." *Id.* Plaintiffs' class certification motion has brought the case to the evidence stage, and Defendants' opposition and expert report make clear that the Massie Appendix was incorporated into Biogen's stock price "in minutes, if not faster," and that analysts began reacting to the Massie Appendix immediately—not on November 5. *See* Doc. No. 190 at 22–28. Even an *arguable* reliance defense renders PolyCon atypical.

(S.D.N.Y. 2007) (post-disclosure purchaser "clearly atypical" and "subject to an arguable defense of non-reliance").[10]  PolyCon's post-disclosure purchases render it an atypical class representative.

PolyCon's trading in Biogen securities in October 2020—transactions that were omitted from Shash's initial PSLRA Certification and which Plaintiffs and Shash continue to ignore—raise additional concerns.  PolyCon purchased 981 shares of Biogen stock on October 9, 2020, and sold all 981 shares the same day.  Doc. No. 181-1.  PolyCon is thus a classic "in-and-out trader" that cannot "even conceivably be able to prove loss causation as a matter of law" for these trades, rendering it atypical.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 39–40 (2d Cir. 2009); *George*, 2013 WL 3357170, at \*7 (same).[11]  Moreover, that Shash could not offer any explanation for these October 2020 trades raises additional credibility issues.  *Supra* at 7.

### CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss Shash and for Judgment on the Pleadings Against Shash should be granted and Plaintiffs' Substitution Motion should be denied.

---

[10] *Accord George* v. *China Auto. Sys., Inc.*, 2013 WL 3357170, at \*6–7 (S.D.N.Y. July 3, 2013) (post-disclosure purchasers "neither typical nor adequate"); *see Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 472–73 (2013) (plaintiff who did not trade "between the time the misrepresentation was made and the time the truth was revealed . . . would not be 'typical'").

[11] PolyCon cannot pursue its claims individually, such as through an opt-out action, because its claims are time-barred under the Exchange Act's five-year statute of repose.  *See* 28 U.S.C. § 1658(b)(2); *Merck & Co.* v. *Reynolds*, 559 U.S. 633, 650 (2010).  "Under Section 10(b), the statute of repose runs from the date of the last fraudulent misrepresentation," *Quaak* v. *Dexia S.A.*, 357 F. Supp. 2d 330, 338 (D. Mass. 2005), which here occurred on July 22, 2020, more than five years ago.  PolyCon's claims are not equitably tolled because, as the Supreme Court has "repeatedly stated in broad terms," "statutes of repose are not subject to equitable tolling."  *See, e.g.*, *California Public Employees' Ret. Sys.* v. *ANZ Securities, Inc.*, 582 U.S. 497, 508 (2017); *Police & Fire Ret. Sys. of City of Detroit* v. *IndyMac MBS, Inc.*, 721 F.3d 95, 112–13 (2d Cir. 2013) ("[T]he [PSLRA] was . . . certainly not intended to excuse sophisticated parties [such as proposed intervenors] from being diligent and keeping abreast of developments in the case, especially when the class is not certified.").  This renders false Plaintiffs' argument that granting substitution here would "protect defendants . . . because they might face a subsequent legal action from the real party in interest even after defeating a case brought by the wrong plaintiff."  Doc. No. 187 at 2–3.  That is not the case here, where the real party in interest's claims are time-barred.

Dated: September 23, 2025

Respectfully submitted,

/s/ *Audra J. Soloway*

Audra J. Soloway (*pro hac vice*)
Richard C. Tarlowe (*pro hac vice*)
Daniel S. Sinnreich (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
asoloway@paulweiss.com
rtarlowe@paulweiss.com
dsinnreich@paulweiss.com

William J. Trach (BBO #661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
william.trach@lw.com

*Counsel for Defendants*
*Biogen Inc., Michel Vounatsos,*
*and Alfred W. Sandrock, Jr.*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of September, 2025, I caused a copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system.

/s/ *Audra J. Soloway*
Audra J. Soloway

22