**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| NADIA SHASH and AMJAD KHAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br>    v. <br><br> BIOGEN INC., MICHEL VOUNATSOS, ALFRED W. SANDROCK, JR., and SAMANTHA BUDD HAEBERLEIN, <br><br> Defendants. | Civil Action No.: 1:21-cv-10479-IT <br><br> **LEAVE TO FILE GRANTED ON OCTOBER 6, 2025** |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF SUBSTITUTION AND IN**
**<u>OPPOSITION OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. MS. SHASH HAS ARTICLE III STANDING ................................................. 2

III. COURTS IN THE FIRST CIRCUIT HAVE ONLY REQUIRED THAT A MISTAKE BE HONEST AND REGARDLESS MS. SHASH'S MISTAKE MEETS THE DEFINITION OF "UNDERSTANDABLE" DEVELOPED IN THE CASE LAW ....... 3

IV. POLYCON'S ADEQUACY IS NOT RELEVANT TO THE RULE 17 MOTION AND, REGARDLESS, POLYCON IS AN ADEQUATE REPRESENTATIVE ....................... 8

   A. Ms. Shash is Controlling the Litigation ............................................................. 9

   B. Ms. Shash's Good Faith Mistake On Her PSLRA Certification Do Not Call Her Credibility Into Question ..................................................................................... 12

   C. That Ms. Shash Corrected Her Deposition Testimony Merely Reflects that She Did Not Recall in August 2025 Exactly What Information She Had Provided to her Counsel in November 2020 ................................................................................... 14

V. THE COURT SHOULD RESOLVE DEFENDANTS' TYPICALITY ARGUMENTS ON CLASS CERTIFICATION ............................................................................ 15

VI. CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) ....................................................................................... 12

*Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*,
53 F. Supp. 3d 279 (D. Mass. 2014) ...................................................................... 6, 8

*Averza v. Super Micro Computer, Inc.*,
2025 WL 1771455 (N.D. Cal. June 26, 2025) .......................................................... 18

*BBJ, Inc. v. MillerCoors, LLC*,
2017 WL 925004 (D. Mass. Mar. 8, 2017) ............................................................. 5, 8

*Capers v. Nat'l R.R. Passenger Corp.*,
673 F. App'x 591 (8th Cir. 2016)............................................................................... 9

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*,
322 F. Supp. 3d 676 (D. Md. 2018) .......................................................................... 13

*Crowley Mar. Corp. v. Robertson Forwarding Co.*,
2020 WL 4366079 (S.D. Fla. July 30, 2020)............................................................11

*Delor v. Intercosmos Media Grp., Inc.*,
232 F.R.D. 562 (E.D. La. 2005)................................................................................ 10

*Gardner v. State Farm Fire & Cas. Co.*,
544 F.3d 553 (3d Cir. 2008) ...................................................................................... 9

*Gianfrancesco v. Town of Wrentham*,
712 F.3d 634 (1st Cir. 2013) ...................................................................................... 6

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003)..................................................................................... 14

*In re: Bard IVC Filters Prods. Liab. Litig.*,
2016 WL 3055112 (D. Ariz. May 31, 2016)............................................................... 9

*In re Engle Cases*,
767 F.3d 1082 (11th Cir. 2014) .................................................................................. 9

*In re Glob. Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d 189 (S.D.N.Y. 2003) ...................................................................... 16

*In re Red Hat, Inc. Sec. Litig.*,
   261 F.R.D. 83 (E.D.N.C. 2009)............................................................................................ 16

*In re Sepracor Inc.*,
   233 F.R.D. 52 (D. Mass. 2005) ............................................................................................ 14

*In re Silver Wheaton Corp. Sec. Litig.*,
   2017 WL 2039171 (C.D. Cal. May 11, 2017)................................................................. 14, 17

*In re SLM Corp. Sec. Litig.*,
   2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) .......................................................................... 16

*In re Smith Barney Transfer Agent Litig.*,
   823 F. Supp. 2d 202 (S.D.N.Y. 2011).....................................................................................11

*In re Solar City Corp. Sec. Litig.*,
   2017 WL 363274 (N.D. Cal. Jan. 25, 2017) ......................................................................... 16

*In re Upstart Holdings, Inc. Sec. Litig.*,
   348 F.R.D. 612 (S.D. Ohio 2025) ........................................................................................ 16

*Intown Props. Mgmt., Inc. v. Wheaton Van Lines, Inc.*,
   271 F.3d 164 (4th Cir. 2001)................................................................................................ 10

*Kinney v. Metro Glob. Media, Inc.*,
   2002 WL 31015604 (D.R.I. Aug. 22, 2002) ......................................................................... 13

*Lans v. Digital Equip. Corp.*,
   252 F.3d 1320 (Fed. Cir. 2001) .............................................................................................11

*Luna v. Carbonite, Inc.*,
   2023 WL 4539855 (D. Mass. July 14, 2023).......................................................................... 13

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)............................................................................................................... 7

*Scott v. Vantage Corp.*,
   336 F. Supp. 3d 366 (D. Del. 2018) ................................................................................... 9, 10

*Scott v. Vantage Corp.*,
   845 F. App'x 170 (3d Cir. 2021)........................................................................................... 10

*Shash v. Biogen Inc.*,
   2025 WL 928779 (D. Mass. Mar. 27, 2025) ......................................................................... 16

*Shiring v. Tier Techs., Inc.*,
    244 F.R.D. 307 (E.D. Va. 2007) ................................................................................ 13

*Shupe v. Rocket Companies, Inc.*,
    752 F. Supp. 3d 735 (E.D. Mich. 2024) ................................................................... 17

*Software Automation Holdings, Inc. v. Ins. Toolkits, LLC*,
    2025 WL 1840654 (E.D.N.C. July 3, 2025) ..............................................................11

*Trauernicht v. Genworth Fin., Inc.*,
    No. 3:22-CV-532, 2024 WL 3835067 (E.D. Va. Aug. 15, 2024) ............................... 13

*Triple Tee Golf, Inc. v. Nike, Inc.*,
    2007 WL 4260489 (N.D. Tex. Aug. 10, 2007) ............................................................ 9

*U.S. for Use & Benefit of Wulff v. CMA, Inc.*,
    890 F.2d 1070 (9th Cir. 1989) .................................................................................... 9

*Zurich Ins. Co. v. Logitrans, Inc.*,
    297 F.3d 528 (6th Cir. 2002) .....................................................................................11

## **Rules**

Fed. R. Civ. Proc. 17 ....................................................................................... passim

## I.   INTRODUCTION[1]

Stripped of rhetorical flourishes, Defendants' argument is this: Ms. Shash bought millions of dollars' worth of Biogen shares and held them through the dissipation of the artificial inflation in Biogen's stock price that Defendants' fraudulent statements caused. She suffered losses in the millions of dollars. So far so good. But Ms. Shash made the transactions through PolyCon Solutions LLC. Ms. Shash is PolyCon's sole member; she owns all of its shares and makes all its investment decisions. Thus, though Ms. Shash lost money, she lost it indirectly through PolyCon, and she should have signed her certification as PolyCon's sole member rather than in her individual capacity. When she produced the account statements to counsel, the error was immediately caught, and Ms. Shash moved to substitute PolyCon.

Ms. Shash made an honest mistake. Defendants do not even claim otherwise. But Defendants claim that because of her honest mistake, Ms. Shash lost her ability to bring a claim to recover the millions of dollars she lost from Defendants' fraud.

To do so, Defendants pull the words "understandable mistake" from the case law, claiming Ms. Shash's mistake is not "understandable" because she (but not counsel) had access to her account statements. The "understandable mistake" language is foreign to the First Circuit. In its decision permitting Rule 17 substitution, this Court did not ask whether the plaintiff's mistake was understandable. *BBJ, Inc. v. MillerCoors, LLC*, 2017 WL 925004, at \*4 (D. Mass. Mar. 8, 2017). Moreover, Defendants provide their own gloss on the mere words "understandable mistake." But they ignore that the cases give the words their meaning. All the cases Defendants cite—the cases

---

[1] Citations to "Op.Br." and "Def.Br." are to pages of Plaintiffs' Memorandum of Law In Support of, and Defendants' Memorandum of Law In Opposition to, the Rule 17 motion, ECF No. 187, ECF No. 195. Citations to transcripts are to the deposition of Nadia Shash. The relevant excerpts are attached as Exhibit 2 to the Reply Declaration of Jonathan Horne ("Reply Horne Dec."), ECF No. 202-2.

Defendants chose to make their point—show that a mistake is understandable ***unless*** it is a tactical decision, a course of procedure that involves misleading the Court, or involves a plaintiff who failed to substitute the real party in interest after discovering the mistake. Otherwise, cases are governed by the Federal Rule of Civil Procedure 17 Advisory Committee's express statement that "[m]odern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed." Here's further proof: the sole case Defendants cite from this Circuit allowed substitution in materially identical circumstances. *Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279, 294 (D. Mass. 2014).

Defendants' other arguments are either premature or irrelevant. The Court's decision on Ms. Shash's Rule 17 motion for substitution will moot Defendants' motion to dismiss. And Defendants' argument that PolyCon is not an adequate representative is irrelevant to the motion for substitution. Moreover, all Defendants' arguments about PolyCon's adequacy are derivative of their arguments that Ms. Shash is inadequate. The Court should thus defer considering these arguments until it rules on class certification.

## II.    MS. SHASH HAS ARTICLE III STANDING

Defendants assert that Ms. Shash lacks Article III standing because she purchased shares through PolyCon. Controlling authority, which Defendants do not cite, holds that plaintiffs who suffered an injury through an entity they own have Article III standing and, instead, lack prudential standing. *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634 (1st Cir. 2013) ("if Tom's Tavern is a separate corporate entity of some sort, [the owner] has Article III standing."). Indeed, that the shareholder standing prohibition is prudential was the basis for *Gianfrancesco*. *Id.* at 638 ("[W]e think it prudent to bypass the shareholder-standing issue … ***[w]e are able to do so because, although we may never bypass a question of constitutional standing to reach the merits of a case, … the same is not true of prudential standing limitations like the shareholder-standing***

*rule.*"). *Id.* at 638. Thus, under controlling authority, Ms. Shash has Article III standing. And in a brief that argues that Ms. Shash should lose her claims because she made an honest mistake, Defendants themselves failed to cite or distinguish controlling authority that directly contradicted their argument.[2]

Thus, the Court can and should bypass the standing question and defer resolution of any motion to dismiss until after it resolves the Rule 17 motion.

III.    **COURTS IN THE FIRST CIRCUIT HAVE ONLY REQUIRED THAT A MISTAKE BE HONEST AND REGARDLESS MS. SHASH'S MISTAKE MEETS THE DEFINITION OF "UNDERSTANDABLE" DEVELOPED IN THE CASE LAW**

To be clear: Ms. Shash's statement that she purchased Biogen shares is true. Ms. Shash made the decision to buy Biogen shares, lost money, and sought appointment as Lead Plaintiff. PolyCon is a single-member pass-through LLC. Any loss to PolyCon is a loss to Ms. Shash. Ms. Shash should have moved in her capacity as PolyCon's sole member, rather than her individual capacity, but the loss was hers.

Ms. Shash has explained the mistake. She had her account statements but relied on her lawyers to identify the correct plaintiff. Because she lost money—in legal terms, she suffered an injury in fact—it was not unreasonable to think she could sue in her own right. Counsel would have ensured that the lawsuit was brought on behalf of PolyCon if they had the account statements. But they did not. Once counsel received the account statements, they promptly filed an amended PSLRA certification and moved for substitution. Thus, Ms. Shash's mistake is excusable.

Defendants acknowledge by their silence that Ms. Shash's mistake was honest. And they do not dispute the Rule 17 Advisory Committee's explanation that "[m]odern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the

---

[2] The only case Defendants cite was reversed by the Supreme Court because it conflated Article III standing with the merits. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 253 (2010).

action is to be filed." Instead, they argue that substitution is not allowed because the mistake is not "understandable."

Not so. The standard, or at least Defendants' reading thereof, is foreign to the First Circuit. In *BBJ*, the plaintiff sued in its own name even though it had assigned its claims prior to filing suit. 2017 WL 925004, at *3-4. This Court nonetheless permitted ratification through a post-filing transfer back to the plaintiff, without ever inquiring whether the original mistake was understandable. *Id.* at *4.[3] The only case from within this Circuit that Defendants cite is *Amorim*, 53 F. Supp. 3d 279. There, a parent company filed a suit alleging violation of the securities laws even though its subsidiaries made the actual investments. *Id.* at 285. The court cited the "understandable mistake" language, but allowed ratification. *Id.* at 294-95. So Ms. Shash's mistake in suing in her personal capacity, rather than causing PolyCon to file suit, is understandable as well.[4]

Instead, Defendants rely on out-of-Circuit cases but they, too, show that Defendants' gloss on the "understandable mistake" verbiage is wrong. They show that a mistake is "understandable" unless it is a tactical choice (hence not a mistake), the movant engaged in a course of deception (hence not an honest mistake), or the party shows extreme carelessness in failing to rectify the mistake once it is discovered (violating Rule 17's requirement that the party correct the mistake within a reasonable time of discovery). Thus, the cases Defendants cite are consistent with the

---

[3] Defendants attempt to distinguish *BBJ* on grounds that here, they do not need the protection of Rule 17 because PolyCon (according to Defendants) may not file a new action on statute of repose grounds. But Rule 17 grants defendants the right to be sued by the real party in interest; it does not grant defendants additional rights if that right is of no value to them.

[4] In *Amorim*, the defendant had objected that the parent was not the real party in interest three years before the ratification. 53 F. Supp. 3d at 294-95. The court accepted the plaintiff's explanation that it had waited to correct the mistake in reliance on an earlier order (a margin note). *Id.* But explaining the delay in correcting the mistake would not have been sufficient unless the explanation for the failure to file in the subsidiaries' name was understandable.

Advisory Committee's admonition that "modern decisions are inclined to be lenient when an honest mistake has been made." Fed. R. Civ. Proc. 17 Adv. Cmt Notes.

**Placeholder actions:** The Rule 17 Advisory Committee Notes cite two examples of mistakes where substitution is not appropriate. In both, counsel treats the original filing as a placeholder, either by filing a John Doe action without a plaintiff or by mistakenly filing an action on behalf of one natural person and seeking to replace them with a different natural person. In most of Defendants' cases, the plaintiffs did the same. *In re Engle Cases*, 767 F.3d 1082, 1114 (11th Cir. 2014) (denying substitution because "Rule 17 was not promulgated to allow lawyers to file placeholder actions ... to keep a limitations period open while they investigate their claims and track down the proper parties."); *U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074–75 (9th Cir. 1989) (plaintiff filed placeholder action while pursuing assignment from real-party-in-interest); *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 562 (3d Cir. 2008) (similar); *Capers v. Nat'l R.R. Passenger Corp.*, 673 F. App'x 591, 594 (8th Cir. 2016) (denying substitution because plaintiff filed a pseudonymous action); *Triple Tee Golf, Inc. v. Nike, Inc.*, 2007 WL 4260489, at *26 (N.D. Tex. Aug. 10, 2007), *aff'd,* 281 F. App'x 368 (5th Cir. 2008) ("plaintiff made a calculated decision to pursue this action in its own name with knowledge that it had not received from Gillig an assignment of whatever rights Gillig acquired through his dealings with Stites in September 2000."); *In re: Bard IVC Filters Prods. Liab. Litig.*, 2016 WL 3055112, at *2 (D. Ariz. May 31, 2016) (counsel filed placeholder action on behalf of plaintiff despite having had no contact with plaintiff because plaintiff had died).

**Other tactical decisions:** Defendants cite cases which, they claim, show that substitution is unavailable if the plaintiff had documents identifying the real party in interest. *Scott v. Vantage Corp.*, 336 F. Supp. 3d 366, 373-74 (D. Del. 2018) ("*Scott I*"), *aff'd,* 845 F. App'x 170 (3d Cir.

2021) ("*Scott II*"); *Intown Props. Mgmt., Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 171 (4th Cir. 2001). In both cases, the plaintiffs were not substituting the real party in interest, they were attempting to add a new plaintiff.  In *Scott*, parents made investments in a venture on their own behalf and also caused their minor children to make investments without disclosing to the venture that they were minors. *Scott I*, 336 F. Supp. 3d at 373; *Scott II*, 845 Fed. App'x at 175. They sued on their own behalf and on behalf of trusts they administered for the children's benefit. *Scott I*, 336 F. Supp. 3d at 373. The plaintiffs survived a motion to dismiss based on the defendants' statements to the parents, but in discovery sought to substitute in the children for the trusts. *Id.* at 369-70. The court denied the motion to dismiss because it did not seek simple substitution. Instead, it required additional allegations about communications to the minor children and sought to add a claim for the unlawful sale of securities to minors. *Scott I*, 336 F. Supp. 3d at 374. While the court observed that the mistake was not understandable because the parents knew who had made the investments, there, that the correct plaintiffs were the minor children rather than the trusts formed the basis of the claims; here, Ms. Shash would have the same claims regardless of whether she invested her personally held funds or PolyCon's. In *Intown*, a plaintiff made a tactical decision to file a new lawsuit rather than join an existing action. *Intown*, 271 F.3d at 169. When the plaintiff discovered that the new lawsuit was untimely, it sought to "substitute" itself into the existing action. *Id.* Substitution was not appropriate because, in truth, the plaintiff was a new party with new claims that sharply increased the damages the defendant faced. *Id.* at 171 (and distinguishing cases allowing Rule 17 substitution because "they have ordinarily confronted requests to exchange a plaintiff or plaintiffs for another plaintiff or plaintiffs with identical claims.").

**Deceptive conduct:** Courts have also denied substitution when the movant engaged in deceptive conduct. *Delor v. Intercosmos Media Grp., Inc.*, 232 F.R.D. 562, 567 (E.D. La. 2005)

6

(when court told *pro se* plaintiff he was not allowed to represent corporation, plaintiff falsely represented that the corporation had assigned the claim to an LLC which plaintiff could represent pro se; court did not later permit plaintiff to substitute in corporation when opposing party discovered the assignment was fabricated); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-29 (Fed. Cir. 2001) (plaintiff, an individual, had assigned his rights to a patent to his corporation, without disclosure, apparently to conceal that a prerequisite to suit had not been met, and district court found that plaintiff was not "honest"); *Software Automation Holdings, Inc. v. Ins. Toolkits, LLC*, 2025 WL 1840654, at *8, 12 (E.D.N.C. July 3, 2025) (plaintiff assigned the specific claims at issue to real party in interest and "apparent[ly] obfuscat[ed]" to conceal the assignment).

**Failure to move within a reasonable time:** Rule 17 permits dismissal once "a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." In *Crowley Mar. Corp. v. Robertson Forwarding Co.*, 2020 WL 4366079, at *2 (S.D. Fla. July 30, 2020), the plaintiff failed to do so.[5]

Thus, while Defendants rely solely on the mere words "understandable mistake," they ignore the context in every single one of their cases showing that Rule 17(a) substitution is only denied if it reflects a tactical choice, deliberate false statements to the court, or an egregious failure to substitute the real-party-in-interest after discovery of the error. Ms. Shash's mistake, resulting from miscommunication between her and her lawyers, is understandable

*     *     *     *     *

---

[5] In *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002), the failure to name the real party in interest left the court without constitutional standing, unlike here. *In re Smith Barney Transfer Agent Litig.*, 823 F. Supp. 2d 202, 203 (S.D.N.Y. 2011) did not involve a Rule 17 motion and, regardless, none of the red flags the court cited are present here.

7

Defendants argue that Plaintiffs waived the argument because their opening brief did not argue that there was an "understandable mistake," but there Plaintiffs argued that there was a "semblance of [a] reasonable basis" for Ms. Shash's mistake. Op.Br. at 5-6 (*citing Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997)). It is only Defendants' gloss on "understandable mistake" that creates any difference between the Second and other Circuits. Defendants thus argue that Plaintiffs should have used the magic words "understandable mistake," even though courts in the First Circuit do not.

To manufacture a burden, Defendants claim that they will need additional discovery. They cite a subpoena they served on PolyCon, but omit that PolyCon has already responded to the subpoena, which responses Defendants did not challenge, and produced responsive documents. Horne Dec. Ex. 1, ECF No. 202-1. Defendants also threaten an additional deposition of PolyCon, but have already deposed Ms. Shash about PolyCon and have already asked her most of the questions they claim they would put to PolyCon. *E.g.* 112:10-12 (source of funds).

## IV.     POLYCON'S ADEQUACY IS NOT RELEVANT TO THE RULE 17 MOTION AND, REGARDLESS, POLYCON IS AN ADEQUATE REPRESENTATIVE

Defendants argue that PolyCon is not an adequate class representative. They do not explain why its purported inadequacy is relevant ***to substitution***. Denial of a motion for substitution and denial of PolyCon's motion for appointment as class representative are different forms of relief. The former may leave PolyCon without any remedy at all if Defendants are correct that the passing of the statute of repose prevents PolyCon from raising its claims.

Moreover, none of Defendants' arguments for PolyCon's purported inadequacy have anything to do with PolyCon itself. Instead, Defendants argue that PolyCon is inadequate because (they claim) Ms. Shash is inadequate. They simply repeat the arguments they made against Ms. Shash at greater length.

8

Thus, the Court should defer ruling on PolyCon's adequacy until it considers Plaintiffs' motion for class certification.

Regardless, Defendants' arguments lack merit.

### A.      Ms. Shash is Controlling the Litigation

"[I]n the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance ... are rarely appropriate." *Kinney v. Metro Glob. Media, Inc.*, 2002 WL 31015604, at *5 (D.R.I. Aug. 22, 2002). In the First Circuit, "class representatives need not have expert knowledge of the subject matter of the suit, may rely on class counsel for guidance, and need not be subjectively interested in the case, as long as the representatives have not virtually abdicated control of the case to counsel." *Luna v. Carbonite, Inc.*, 2023 WL 4539855, at *6 (D. Mass. July 14, 2023).

Defendants incorrectly rely on cases from the Fifth Circuit or applying the Fifth Circuit's standard. That Circuit has imposed a stringent standard on plaintiffs in securities cases, which courts in the First Circuit have rejected. *Luna v. Carbonite, Inc.*, 2023 WL 4539855, at *6 (D. Mass. July 14, 2023) ("The First Circuit has not adopted the three-part test applied in the Fifth Circuit."). Indeed, most courts have rejected the Fifth Circuit's approach. *Trauernicht v. Genworth Fin., Inc.*, 2024 WL 3835067, at *12 (E.D. Va. Aug. 15, 2024) (the Fifth Circuit's standard, which was adopted in Defendants' case *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307 (E.D. Va. 2007), "is not broadly applicable and has not been widely adopted."); *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 683–84 (D. Md. 2018) (declining to follow *Shiring* because it relied on the Fifth Circuit standard).

Ms. Shash vastly surpasses the minimal standard of not abdicating control to counsel. She understands the litigation. She is familiar with the case's complex procedural history. At her deposition, she recalled: the approximate date of her appointment (February 2021), ECF No. 202-

9

2 at 67:9-11; the filing of the First and Second Amended Complaints, *id.* at 67:19-68:21; the Court's dismissal of the Second Amended Complaint, the appeal, and the partial reversal, *id.* at 69:23-70:1; and the filing of a third amended complaint, and its purpose, which she understood was solely to add additional plaintiffs, including Mr. Aftoora. *Id.* at 69:15-17.

Ms. Shash also has a sufficient understanding of the case. "It is hornbook law ... that in a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003). "[R]udimentary knowledge of the claims asserted suffices to satisfy adequacy." *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *8 (C.D. Cal. May 11, 2017). Ms. Shash is familiar with Plaintiffs' theory. She read both the First and Second Amended Complaints before filing. ECF No. 202-2 at 68:3-5; 68:25-69:2; 173:3-5. She explained the theory in sufficient detail: that Defendants represented that aducanumab's clinical trials consistently showed efficacy at high doses. *Id.* at 102:19-103:13. In Defendants' sole in-Circuit case, the plaintiff knew neither the company he was suing nor the name of the drug involved. *In re Sepracor Inc.*, 233 F.R.D. 52, 55 (D. Mass. 2005).

Defendants argue Ms. Shash abdicated her responsibilities because she did not know the names of some of the individual attorneys who represent her. But she recalls that she is represented by Lead Counsel and MoloLamken and that the latter was retained to do additional work primarily related to the appeal. ECF No. 202-2 at 59:2-17. She also remembers several conversations with her attorney Phillip Kim, her principal point of contact. *Id.* at 58:8-12; 161:17-19. It is not unusual

10

for clients to recall the law firm representing them and the individual attorney they communicate with but not all the other members of the team.

Defendants also argue that Ms. Shash abdicated her responsibilities because she has delegated certain matters to her attorneys, but they only cite tactical decisions. Ms. Shash had no comments on the First or Second Amended Complaints and relied on her attorneys to create her PSLRA certification; why would she do otherwise? Tellingly, where Ms. Shash had cause to use her judgment, informed by her attorneys' advice—filing an appeal or pursuing a settlement—Ms. Shash did so. *Id.* at 70:8-10; 162:16-163:12.

Defendants argue that certain of Ms. Shash's trades expose her to an argument that she is a frequent trader who trades on momentum. But Defendants may not defraud frequent traders, either. Moreover, Defendants focus on a single transaction in which Ms. Shash bought and sold Biogen shares on the same day. But they ignore that regardless of when she bought Biogen shares, Ms. Shash compellingly explains why she did so. Ms. Shash discovered Biogen Redacted ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* at 89:25-90:17. She bought Biogen stock because she was excited about aducanumab's potential both for investors and patients. *Id.* at 92:1-93:13. She does not allege actual reliance on Defendants' statements, but her testimony can demonstrate for the jury's benefit exactly why the data from aducanumab's clinical trials was critical.

Ms. Shash has adhered to her discovery obligations. She instituted a document preservation policy. *Id.* at 72:5-13; 74:7-18. She ran search terms provided by Defendants through her emails and produced the relevant results. *Id.* at 72:14-73:16. When Defendants served a subpoena on PolyCon, it timely responded and produced documents. ECF No. 202-1. Tellingly, Defendants have not taken issue with PolyCon's responses.

11

Defendants argue that Ms. Shash is unsuitable because she is a member of a group of unrelated plaintiffs. They cite cases in which courts rejected lead plaintiff groups consisting of disparate individuals put together solely to produce a greater loss, which the courts found bespeaks lawyer-driven litigation. But Ms. Shash was already lead plaintiff when she recruited Amjad Khan and Albert Aftoora. She properly recruited them to ensure that every part of the class is adequately represented. *See Shash v. Biogen Inc.*, 2025 WL 928779, at *10 (D. Mass. Mar. 27, 2025). "Judges presiding over complex securities class actions under the PSLRA have repeatedly rejected arguments, like those defendants raise here, that seek to confuse the role of lead plaintiffs under the PSLRA with that of named plaintiffs[.]" *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003). Her efforts do not "assign [to named plaintiffs] any of the responsibilities that devolve upon lead plaintiffs under the PSLRA." *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003); *see also In re Upstart Holdings, Inc. Sec. Litig.*, 348 F.R.D. 612, 627 (S.D. Ohio 2025) (finding that lead plaintiff coordination cases are not relevant to class certification).

## B.    Ms. Shash's Good Faith Mistake On Her PSLRA Certification Do Not Call Her Credibility Into Question

Defendants attack Ms. Shash's credibility because her PSLRA certification omitted transactions and was signed in her personal capacity rather than as PolyCon's sole member. "Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive." *In re Upstart Holdings, Inc. Sec. Litig.*, 348 F.R.D. 612, 627 (S.D. Ohio 2025) (quoting *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012)). As a practical matter, courts will usually only disqualify class representative movants if their errors are international misrepresentations. *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 89 (E.D.N.C. 2009).

12

Errors that understate losses are especially unlikely to be disqualifying because they reduce plaintiffs' chances of being appointed lead plaintiff. *Compare In re Solar City Corp. Sec. Litig.*, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) ("Fish would have benefited from increasing the claimed amount rather than decreasing it, as occurred here.") *with Shupe v. Rocket Companies, Inc.*, 752 F. Supp. 3d 735, 793 (E.D. Mich. 2024) ("Shupe's purported $434,026.12 loss—which this Court relied on when appointing him lead Plaintiff—would likely similarly be diminished by his $241,615.50."). Ms. Shash's errors significantly understated her losses. Her original PSLRA certification reported losses of $1.66 million, while her amended certification reports losses of $2.30 million.[6]

Moreover, the mistakes, when discovered, were promptly corrected. *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *10 (C.D. Cal. May 11, 2017) (promptly corrected mistakes did not show inadequacy).

Thus, Ms. Shash made honest mistakes that disadvantaged her and promptly corrected them when she discovered them. They do not affect her credibility.

Defendants argue that they will challenge Ms. Shash's credibility because she purportedly made inconsistent arguments when moving for appointment as lead plaintiff, but they misstate what she said. Ms. Shash did not state that she affirmatively made purchases in her own personal account. She said that she made the decisions to invest in Biogen herself, rather than relying on a broker. ECF No. 28 at 14-15 ("Nonetheless, Mr. Shapiro's speculation is wrong. Ms. Shash made all decisions regarding her buying and selling Biogen stock."). That statement does not call her credibility into question because it is ***true***. Likewise, Ms. Shash did not say that a typo is grounds

---

[6] As to Ms. Shash's October trades, Defendants themselves explain why they have no impact: "PolyCon is thus a classic 'in-and-out trader' that cannot 'even conceivably be able to prove loss causation as a matter of law' for these trades." Def.Br. at 20.

for denying a motion for appointment; she said that "[i]n another case, the court found a plaintiff's typo in one transaction price in his submissions to the Court 'militate against appointment and render him inadequate to serve as lead plaintiff." That is: (1) another court found that (2) a mistake in a certification cuts against approval, and Ms. Shash argued that the other movant's manifold errors cut against his approval as lead plaintiff, too.

Defendants also rely on cases from the lead plaintiff stage. Though Defendants insist that the standard is higher at class certification, it is the evidentiary showing required that is higher. In fact, "the standard for disqualification based on discovery issues is relaxed at the lead plaintiff selection stage." *Averza v. Super Micro Computer, Inc.*, 2025 WL 1771455, at *12 (N.D. Cal. June 26, 2025). When faced with competing lead plaintiffs, courts reject movants if they ***might*** be found inadequate. *Id.* ("[D]oubt is all that is needed to rebut the PSLRA's presumption."). At class certification, courts must determine whether the plaintiff actually is inadequate.

C.    **That Ms. Shash Corrected Her Deposition Testimony Merely Reflects that She Did Not Recall in August 2025 Exactly What Information She Had Provided to her Counsel in November 2020**

Ms. Shash provided information to counsel when she first moved to be appointed lead plaintiff in November 2020. Asked at her August 2025 deposition exactly what she had provided to counsel almost 5 years before, Ms. Shash stated that she had provided account statements. Upon reviewing her records, Ms. Shash determined that she had not provided the account statements. There is nothing remotely surprising about incorrectly remembering the exact contents of 5-year old communications. And while Defendants complain that Ms. Shash has not provided documents to substantiate her claim, they ignore that Ms. Shash is stating that she had not produced documents to counsel so there are, by definition, no documents to produce. Likewise, Defendants' argument that Ms. Shash let the mistake lie for five years ignores that until discovery, there was no reason to reexamine her original filings.

14

Defendants also imply that Ms. Shash believes it is acceptable to make false statements to the Court. In fact, Ms. Shash testified that she understands it is important to correct mistakes, assumes her attorneys will do so once they are discovered, and that she relies on her attorneys to determine how promptly mistakes should be corrected. ECF No. 202-2 at 158:24-160:12. Here, upon discovering the mistake, Ms. Shash promptly filed a corrected PSLRA certification and a motion for substitution.

## V. THE COURT SHOULD RESOLVE DEFENDANTS' TYPICALITY ARGUMENTS ON CLASS CERTIFICATION

The Court has held that Plaintiffs sufficiently alleged that the Massie Report took time to be incorporated into Biogen's stock price. Citing their own expert's report, Defendants maintain that they have demonstrated that the Massie Report was incorporated into Biogen's stock price instantly. Def.Br. at 20. Plaintiffs' expert, who provided not just a report but also testimony, disagrees. There is no reason to resolve the question based on Defendants' unilateral submission. The Court should decide the issue as part of her resolution of class certification.

## VI. CONCLUSION

For the foregoing reasons, as well as those set out in Plaintiffs' opening brief, the Court should: (a) grant Ms. Shash's Rule 17 motion for substitution; (b) deny Defendants' motion to dismiss Ms. Shash as moot; and (c) defer considering Defendants' arguments that PolyCon is not an adequate or typical representative until ruling on Plaintiffs' motion for class certification.

Dated: October 7, 2025

Respectfully submitted,

<u>/s/</u>Laurence Rosen
Laurence M. Rosen, Esq. (pro hac vice)
Jonathan Horne, Esq. (pro hac vice)
Brian B. Alexander, Esq. (pro hac vice)
Joshua Baker, Esq. (BBO #695561)
Sara Fuks, Esq. (pro hac vice)
275 Madison Avenue, 40th Floor
New York, NY 100016
Tel: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
jhorne@rosenlegal.com
balexander@rosenlegal.com
jbaker@rosenlegal.com
sfuks@rosenlegal.com

*Counsel for Plaintiffs*

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent on October 7, 2025 to those identified as non-registered participants.

/s/*Laurence Rosen*
Laurence Rosen

17