**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Plaintiffs*
*and the Putative Class*

[Additional Counsel on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NADIA SHASH and AMJAD KHAN Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>BIOGEN INC., MICHEL VOUNATSOS, ALFRED W. SANDROCK, JR., and SAMANTHA BUDD-HAEBERLEIN,<br><br>        Defendants. | **CASE No.: 1:21-cv-10479-IT**<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**<br><br>**LEAVE TO FILE REPLY GRANTED DECEMBER 8, 2025** |

Defendants concede Plaintiffs have proven all Rule 23 requirements except price impact, adequacy and typicality, and damages.

**Price Impact**: The All Data statement was Sandrock's response to an analyst's question about undisclosed analyses. Had Sandrock truthfully responded that much of Biogen's undisclosed data was not consistent with the High Dose Thesis, Biogen's stock price would have fallen. Thus, the All Data Statement "stood out from the rest" because it was a warranty and had a price impact by preventing a decline that would otherwise have occurred if Sandrock had told the truth.

Defendants wrongly claim Plaintiffs must show fraud-related inflation existed before the July 22 All Data Statement. Plaintiffs need only prove that truthful disclosure would have caused a share price decline—i.e., the misrepresentation prevented a drop. *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 798 F. Supp. 3d 416, 438 (S.D.N.Y. 2025) (false denial of allegations that prevented stock price decline matched corrective disclosure).[1] Nor is there a mismatch between the All Data Statement and the Massie Report. The First Circuit found the All Data Statement false ***because*** Biogen omitted Massie's subgroup analyses. *Shash v. Biogen, Inc*., 84 F.4th 1, 12-13 (1st Cir. 2023); *see also Sjunde AP-Fonden*, 798 F. Supp. 3d at 466 (claim no contrary data exists not vague). Defendants' proposed truthful substitute is flawed because it lacks specificity. Biogen misrepresented that All Data (100%) were consistent with the High Dose Thesis—a specific, verifiable percentage. Defendants' substitute vaguely states "'not all data' support [the High Dose Thesis]" (Def. Opp, Doc. No. 235, at 26), which could mean 1% or 95%. Hubbard and Tabak agree

---

[1] Courts overwhelmingly accept the inflation/price maintenance theory. *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 97 (2d Cir. 2023) (citing cases); *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 612 (7th Cir. 2020); *San Diego Cnty. Emps. Ret. Ass'n v. Johnson & Johnson*, 2025 WL 2176586, at *3 (3d Cir. July 30, 2025); *Jaeger v. Zillow Grp., Inc.*, 2025 WL 2741642, at *1 (9th Cir. Sept. 26, 2025); *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1316 (11th Cir. 2011).

1

this vagueness would cause a larger price decline as markets would assume "the worst possible outcomes." Doc. No. 189-1 at 23 ¶50; 209-1 at 125-126 (124:10-125:10); Doc. No. 209-3 at 32 ¶62. Disclosure of either the Massie Report or that some subgroup analyses contradicted the High Dose thesis would have caused an immediate and substantial share price decline.

Analysts highlighted the All Data Statement. That same day, a Wolfe Research report listed Geoffrey Meacham's question (which elicited Sandrock's All Data Statement) under "CONFERENCE CALL HIGHLIGHTS," summarizing: "Q: Will there be any new information or publications on ENGAGE or EMERGE analyses? BIIB reminds that three studies, PRIME, ENGAGE, and EMERGE. BIIB reiterated prior talking points on aducanumab, but did not mention any new publications." Wolfe Research, Doc. No. 209-16, at 5. Clearly, Wolfe Research found Sandrock's response important; they highlighted it. Second, analysts need not discuss the false statement publicly for it to have price impact. *Sjunde AP-Fonden*, 798 F. Supp. 3d at 443. Third, analyst skepticism that some undisclosed data *might not support* the High Dose Thesis is irrelevant because Sandrock disclosed that fact when he prefaced his All Data Statement: "We believe that … *portions* of the data from ENGAGE, *a negative study*, that *portions* of it do *support* the analysis that we did with EMERGE." July 22 call, Doc. No. 209-5, at 14. Analysts speculated that some data might not support the High Dose Thesis, they did not present specific evidence that data were inconsistent with it.

Nor is the lack of an immediate stock drop dispositive. As the First Circuit ruled, "we find nothing requiring that a stock's price must drop immediately following a corrective disclosure." *Shash v. Biogen, Inc.*, 84 F.4th 1, 21 (1st Cir. 2023). That ruling accords with the Supreme Court's pronouncement, following its consideration of the economics literature, that even efficient markets can take days to incorporate news and its consequent refusal "to adopt any particular theory of

2

how quickly and completely publicly available information is reflected in market price."[2]  There is no bright line rule and the record evidence shows back-end price impact in the three trading days following the Massie Report's publication. First, analysts mentioning the Massie Report changed their price targets materially less than those who didn't, indicating price impact. Tabak Report, Doc. No. 171-1 at 34-36 (¶¶66-70). Second, the Massie Report diminished the Nov. 4 stock price increase. *Id. See Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 487 (E.D. Pa. 2021) (price impact where defendants failed to show price increase wasn't reduced by corrective disclosure). Third, three analyst firms mentioned the Massie Report for the first time after Nov. 4 market close, describing a "Closer Look" and "Deeper Look" at Massie's conflicting analyses—consistent with academic studies and cases showing complex disclosures require more processing time. Doc. No. 171-1 at 36 (¶73); Tabak Dep., Doc. No. 189-2 at 53 (202:5-7) ("[t]he market can't operate more quickly than people or machines can actually process information."); Op. Br., Doc. No. 228 at 31-32 & n.11 (citing cases). Fourth, after continued analyst and media coverage, Biogen's stock price declined statistically significantly on Nov. 5 on extremely high volume (exceeded only by Nov. 4 volume). Doc. No. 171-1 at 36. Defendants' explanation that Nov. 5's decline was "continued volatility" caused by the market weighing the Massie Report's implications (purportedly not showing price impact) versus Nov. 4's volatility weighing the report's views (showing price impact) splits hairs, because weighing Massie's views necessarily means weighing his report's implications.

Evidence also shows price impact on Nov. 9. Analyst reports' continued mention of the Massie Report amid continued volatility from Nov. 5 to 9 shows the market continued to process the Massie Report. Doc. No. 171-1 at 36-37 (¶¶72-76); Tabak Reply, Doc. No. 203-3, at 43 (¶90).

---

[2] *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 271-72 (2014).

Dr. Hubbard admitted "the continued volatility in Biogen's stock price **on November 5th and beyond** are due, at least in part, to the analysts weighing Dr. Massie's views." Doc. No. 209-1 at 318 (317:9-19). He also admitted that after market close on Nov. 5, the market continued to process how the AdCom would weigh the information in the Massie Report. Doc. No. 203-3, at 43 (¶90). The publicly broadcast Nov. 6 AdCom discussions further contextualized the Massie Report causing additional price impact. *Pelletier*, 338 F.R.D. at 480 ("price impact may occur more slowly where clarifying or contextualizing information is disclosed later."). Moreover, "while some of the salient data and study conclusions had already been revealed on [Nov. 4], *the [AdCom] members' responses* to those materials...had not yet been made public and could not be reasonably inferred by even scrupulous review of the briefing materials." *In re AVEO Pharms., Inc. Sec. Litig.,* 2017 WL 5484672, at *7 (D. Mass. Nov. 14, 2017) (emphasis added). Last, the AdCom's vote was the materialization of the risk that undisclosed data contradicted the High Dose Thesis and might prevent FDA approval.[3] Dr. Hubbard admits this but asserts the risk was fully disclosed Nov. 4.[4] The above-cited academic literature and case law show markets routinely need 2-3 trading days to fully process complex news. Thus, the AdCom vote was the materialization of a concealed risk.

**Typicality and Adequacy**: "[C]lass representatives need not have expert knowledge of the subject matter of the suit [and] may rely on class counsel for guidance … as long as the[y] have not virtually abdicated control of the case to counsel." *Luna v. Carbonite, Inc.*, 2023 WL 4539855, at *6 (D. Mass. July 14, 2023). Aftoora read the Second Amended Complaint and First Circuit opinion more than once (Aftoora Dep, Doc No. 189-5 at 48 (185:12-17), 50 (191:11-23)). He

---

[3] Price impact evidence is not limited to allegations in the Complaint. *See Pelletier*, 338 F.R.D. at 482-83 (*citing Halliburton II*, 573 U.S. at 280). *See also Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021) (courts must consider all probative evidence relevant to price impact).

[4] Doc. No. 209-1 at 318 (317:9-19); Hubbard Report, Doc. No. 189-1, at 23-24 (¶52).

didn't purchase after learning of the report and had no obligation to sell. *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012) (plaintiff suffered economic loss though it could have sold shares at a profit). Defendants do not cite any cases finding ***proposed class representatives*** inadequate because of insufficient monetary losses, let alone one where courts had previously found their losses did not disqualify them from being a named plaintiff. Moreover, Defendants do not cite any facts suggesting Aftoora failed to discharge his duties. Khan authorized the First and Second Amended Complaints (Khan Dep, Doc. No 189-4, at 25 (90:6-11), 32 (120:11-121:4)) and regularly emailed counsel (*id.* at 40 (152:21-153:1)). He knew Defendant Sandrock made the misstatement, identified it, and explained why it was misleading. *Id.* at 26 (94:1-2)) 27 (100:13-101:23), 28 (104:17-105:6). To show his "abdication," Defendants rely on events occurring when he was a named plaintiff and properly deferred to the lead plaintiff. *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003). Khan's momentum trading strategy is not disqualifying. *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 308 (D. Mass. 1987) ("investment strategy is of little importance to ... suitability as a class representative."); *Tolan v. Computervision Corp.*, 696 F. Supp. 771, 779 (D. Mass. 1988) (typicality met despite "unique" momentum trading strategy). Khan and Shash's purchases on Nov. 4 and 5 do not create "unique" defenses because many other class members also traded then. *Corcoran v. CVS Health*, 2019 WL 6250972, at *5 (N.D. Cal. Nov. 22, 2019); Doc. No. 189-1 at 34-35, ¶¶74, 76 & n.114 (volume on November 4/5 equal to 20 trading days of class period).

**Damages**: Courts have nearly unanimously held event studies isolating fraud-related inflation as proposed by Dr. Tabak are adequate to calculate class damages. Doc. No. 209-23.

Dated: February 17, 2026

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/Laurence M. Rosen*
Laurence M. Rosen, Esq. (*pro hac vice*)
Jonathan Horne, Esq. (*pro hac vice*)
Brian B. Alexander, Esq. (*pro hac vice*)
Joshua Baker, Esq. (BBO #695561)
Sara Fuks, Esq. (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 100016
Tel: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
jhorne@rosenlegal.com
balexander@rosenlegal.com
jbaker@rosenlegal.com
sfuks@rosenlegal.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, a true and correct copy of the foregoing **PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL** was served by CM/ECF to parties registered to the Court's CM/ECF system.

/s/Laurence Rosen