**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Plaintiffs*
*and the Putative Class*

[Additional Counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NADIA SHASH and AMJAD KHAN Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIOGEN INC., MICHEL VOUNATSOS, ALFRED W. SANDROCK, JR., and SAMANTHA BUDD-HAEBERLEIN,<br><br>Defendants. | **CASE No.: 1:21-cv-10479-IT**<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO AMEND**<br><br>**Leave to File Reply Granted February 24, 2026** |

## I.     INTRODUCTION

In opposing Plaintiffs' Motion for Leave to Amend (Doc No. 239), Defendants concede far more than they challenge. They concede by their silence that allowing amendment will not expand merits discovery. They concede that, as to the vast majority of amendments, Plaintiffs could not seek leave to amend before the deadline to file amended pleadings. They concede that almost half the documents cited in the PTAC come from their own belated productions made after the substantial completion deadline. *Id.* at 13. And they concede that the PSLRA permits plaintiffs who partially survive a motion to dismiss to use discovery to revive claims. *Id.* at 10 n.4.

Plaintiffs received Defendants' rolling productions of 2 million pages of documents from September 12, 2025 through January 5, 2026. Plaintiffs diligently reviewed the productions. When Plaintiffs determined that they had enough material to file an amended complaint, they promptly drafted the PTAC and sought leave to file it. Nothing Defendants argue undercuts Plaintiffs' showing of good cause.

## II.    THERE IS GOOD CAUSE TO PERMIT AMENDMENT

### A.     Plaintiffs had no reason to seek the Court's intervention because the Parties were resolving their discovery disputes

Defendants suggest that Plaintiffs should have sought the Court's intervention at some point between April 2025 and September 2025. Defendants cannot specify what relief Plaintiffs should have sought because, as Plaintiffs explained in their opening brief, and Defendants do not dispute, throughout this time the Parties were resolving their discovery disputes without the Court's intervention. Pl. Op. Br., Doc. No. 230 at 20. The Parties met and conferred on May 8 and 22, June 11, July 7 and 24, August 29, and September 4 and 10, 2025, to discuss Defendants' responses to Plaintiffs' first set of requests for production, search terms, and other production-related matters. Supplemental Horne Dec., Doc. No. 248 at 1-2 (¶2). In email correspondence, the

1

Parties exchanged three sets of proposed search terms. *Id.* (¶¶ 2-3). Plaintiffs did not seek the Court's assistance because the Parties were steadily resolving their discovery disputes.

**B.    Plaintiffs could not have amended the complaint before receiving discovery**

Defendants argue that Plaintiffs should have sought leave to amend before discovery to add allegations that the Advisory Committee first revealed that Non-Carriers did better after PV4 than before, though PV4 had no impact on Non-Carriers' dosage. But before receiving documents, Plaintiffs could not have pled that Defendants concealed this analysis from investors. In discovery, Defendants produced documents showing that (a) Biogen employees themselves were concerned that Non-Carriers performed better after PV4, PTAC, Doc. No. 229-2 at 56-58 (¶¶199-204); and (b) Japanese regulators had raised the same concern, leading Biogen to strategically defer applying for approval in Japan. *Id.* at 69-70 (¶¶250-55). Plaintiffs could only allege that Defendants actually concealed the impact of PV4 on Non-Carriers after discovery made Defendants' deception apparent, so they could not have amended before discovery.

Other than this narrow point, Defendants agree that Plaintiffs could not have pled claims before discovery. Defendants maintain that Plaintiffs should have acted more quickly when they started receiving documents on September 12 and 26, 2025, but rely on cases where plaintiffs actually knew the facts on which they based their amendment.[1] When plaintiffs receive productions

---

[1] In *Allen v. Brown Advisory, LLC*, 41 F.4th 843 (7th Cir. 2022), the documents were memoranda prepared by the plaintiff's own law firm long before litigation. *Id.* at 853-54. In *Harrison v. Forde*, 2022 WL 1572247 (S.D. Ala. May 18, 2022), the plaintiff had actual knowledge of the facts three months before moving for leave to amend and in any case delayed seeking discovery until well after the deadline to amend pleadings had passed. *Id.* at *3. In *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235 (11th Cir. 2009), the plaintiff did not show good cause because it relied on just one fact to support its amended complaint, stated in open court that the fact was "shocking," and instead of seeking amendment, "slid" the fact into a motion for summary judgment. *Id.* at 1242-43. In *Tracey v. Massachusetts Inst. of Tech.*, 332 F.R.D. 50, 52 (D. Mass. 2019), all the documents the plaintiffs relied upon were produced four months before they moved for leave to amend. Moreover, the briefs in the case reveal that the production was only 8,044 documents, or about 3% of the

that include the documents they cite, courts instead ask whether the plaintiffs were diligent in reviewing the documents. *Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 305 F. Supp. 3d 337, 344 (D.R.I. 2018)[2]; *see also Carolina Coupon Clearing, Inc. v. Cardinal Health Managed Care Servs., LLC*, 2017 WL 5634903, at *2 (M.D.N.C. June 9, 2017). And here, Defendants' rolling production of almost 2 million pages of documents dwarfs productions in cases where courts allowed amendment after comparable periods of time. *Sheet Metal Workers*, 305 F. Supp. at 334 (five months and hundreds of thousands of pages); *Carolina Coupon*, 2017 WL 5634903, at *2 (three months and 1 million pages); *Woodson v. 3M Co.*, 2022 WL 1450385, at *3 (N.D. Ill. May 9, 2022) (motion filed three and a half months after receiving 1,700 pages of documents); *Morgan Art Found. Ltd. v. McKenzie*, 2020 WL 10762232, at *4 (S.D.N.Y. Feb. 28, 2020) (three months to review 55,000 pages). *Smith v. Apple, Inc.*, 2023 WL 7166807, at *2 (N.D. Cal. Oct. 30, 2023) (4 months to review 1 million pages).

Defendants also concede by their silence that if discovery is ongoing, courts do not want parties to run to the court with half-baked amended complaints whenever they learn new facts. *See* Doc. No. 230 at 16 and cases cited therein; *see also Zeng v. Calidi Biotherapeutics, Inc.*, 2026 WL 578817, at *3 (S.D. Cal. Mar. 2, 2026) ("waiting to amend a complaint until a strong evidentiary basis has been developed is preferable to prematurely asserting those claims based on a limited record that may or may not support them."). Yet they do not explain why Plaintiffs were required to do so, on pain of losing their right to amend.

---

276,080 documents Defendants have produced in this case. *Tracey* brief, Doc. No. 248-1 at 6; Doc. No. 248 at 2 (¶4).

[2] Defendants attempt to distinguish *Sheet Metals* because that court found—in a footnote—that there was no prejudice. But there was no prejudice because "when Plaintiffs filed their Motion to Amend, discovery was still open; Defendant had yet to take any depositions; and Defendant had already responded to broad document requests relevant to the [proposed complaint]'s allegations." *Id.* at 342 n. 4. That is exactly like here.

3

Defendants maintain that Plaintiffs knew they would move to amend in October 2025. For this, Defendants cite an email chain in which Plaintiffs and Defendants agreed that the deadline to amend pleadings in the Scheduling Order was a typo. But this only shows that Plaintiffs were ***considering*** amendment. That Plaintiffs reviewed Defendants' rolling 2-million-page production, rather than rushing to amend, shows good faith, not lack of diligence. *F.L. Roberts & Co., Inc. v. Land-Air Express of New England, Ltd*, 2019 WL 11624581, at *3 (D. Mass. Feb. 4, 2019) (while plaintiffs could have pled claims before amendment deadline, plaintiffs were justified in waiting for confirmatory evidence) (cited at Doc. No. 230 at 21); *Zeng*, 2026 WL 578817, at *3.

Finally, Defendants' argument that Plaintiffs waited five months to file the PTAC is based on half-truths and outright invention. Defendants state that the clock starts with their September 26, 2025 production, made on the substantial completion deadline. Defendants acknowledge that 40 of the 101 documents Plaintiffs cite in their complaint were produced thereafter, so plainly, the production was not sufficient. Doc. No. 239 at 13. Moreover, though Defendants fault Plaintiffs for failing to rely on their incomplete production, they omit that by the substantial completion deadline, they had already agreed to run additional search terms. Doc. No. 248 at 1-2 (¶2).  Finally, Plaintiffs only say that they drafted a complaint "promptly" upon receiving the rolling production; Defendants' claim that Plaintiffs concede they did so ***in September***, Doc. No. 239 at 13, is an invention belied by the PTAC's citation of 40 documents produced after September.

### C.    Plaintiffs had no reason to move to extend the deadline to file amended pleadings because it had already expired.

Defendants argue that Plaintiffs were not diligent because they did not move to amend the scheduling order in October 2025 upon discovering the typo in the amendment deadline. n October 2025, Plaintiffs raised the January 9, 2025 typo with Defendants. Defendants agreed that the date was a typo but suggested that the Parties raise the issue with the Court if and when Plaintiffs moved

to amend. Because the date had already passed, Plaintiffs agreed with Defendants' suggestion. *See SG Equip. Fin. USA Corp. v. Kimball Elecs., Inc.*, 2021 WL 1143378, at *2 (E.D. Pa. Mar. 25, 2021); *Diamond Resorts U.S. Collection Dev., LLC v. Wesley Fin. Grp., LLC*, 2022 WL 20936028, at *2 (E.D. Tenn. Sept. 19, 2022).[3] When Plaintiffs decided to file an amended complaint in December 2025, there was no reason to seek to separately amend the scheduling order.

## III.    DEFENDANTS' PURPORTED PREJUDICE DOES NOT WARRANT DENYING LEAVE TO AMEND

Defendants cite a handful of cases finding prejudice when plaintiffs sought leave to amend after full class certification briefing. But in these cases, the proposed amendments related to class certification—almost always the addition of new class representatives—rather than the merits of the action.[4] If prejudice from having to renew class certification standing alone trumps the right to amend, plaintiffs lose their right to merits amendments upon the filing of defendants' opposition to class certification, even if the plaintiffs could show good cause for the amendment. But Rule 23 mandates that courts decide class certification "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). So scheduling orders often require that the motion for class certification be filed and briefed long before the fact discovery cut-off. Thus, in class actions, plaintiffs would de facto have

---

[3] In *LaFlamme v. Carpenters Loc. No. 370 Pension Plan*, 220 F.R.D. 181, 184 (N.D.N.Y. 2003), *aff'd,* 127 F. App'x 3 (2d Cir. 2005), the plaintiff could have timely extended the pleading deadline when he filed a scheduling order extending fact discovery because of a discovery dispute, but instead he explicitly stated that the amendment deadline had lapsed.

[4] *Westfall v. Kendle Int'l, CPU, LLC*, 2007 WL 486606, at *4 (N.D.W. Va. Feb. 15, 2007) (seeking to add new representative plaintiffs); *Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*, 2020 WL 4925702, at *2 (D. Nev. Aug. 21, 2020) (same); *Ford v. Townsends of Arkansas, Inc.*, 2009 WL 10676832, at *1 (E.D. Ark. Oct. 21, 2009); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999) (same); *Town of Lexington v. Pharmacia Corp.*, 2015 WL 1321448, at *4-5 (D. Mass. Mar. 24, 2015) (plaintiff sought leave to amend class definition, not complaint). In *In re Urethane Antitrust Litig.*, 2007 WL 1424327, at *4 (D. Kan. May 14, 2007), the plaintiffs made a strategic decision to reject the court's invitation to file an earlier motion for leave to amend in order to secure class certification based on an earlier definition. The court primarily denied amendment because of the absence of good cause, noting prejudice in passing.

only a narrow window to amend, turning on its head the mandate to grant leave to amend "freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, (1962).

In any case, courts look askance at certification-related amendments after close of class discovery for the same reason they are skeptical of merits-related amendment after fact discovery: the plaintiffs should already know the facts. *Salhotra v. Simpson Strong-Tie Co., Inc.*, 2023 WL 6631704, at *4 (N.D. Cal. Oct. 10, 2023) ("In seeking to add new class representatives, courts are more likely to find prejudice when the case has already progressed to or beyond the class certification phase, ***at which time class-related discovery and class-certification motion practice should be finished***.") (cleaned up). Thus, in Defendants' cases, the courts cited prejudice as an additional consideration warranting denial after finding that the plaintiffs did not have a good explanation for the delay.[5] Tellingly, where (as here), plaintiffs explain the delay, courts find that certification-related prejudice standing alone does not justify denying amendment. *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 98 (S.D.N.Y. 2010) (leave to add new plaintiffs filed soon after defendants raised concerns about existing plaintiffs); *Doe 3 v. Indyke*, 2025 WL 2403193, at *3 (S.D.N.Y. Aug. 19, 2025) (leave to add new plaintiff granted after court finds existing plaintiff cannot proceed pseudonymously); *BR v. D.C.*, 2024 WL 3724019, at *4 (D.D.C. Aug. 8, 2024) (leave to add new plaintiff granted after existing plaintiff drops out).

Regardless, courts also give weight to prejudice to absent class members. *Doe 3*, 2025 WL 2403193, at *3. And here, because the statute of repose has lapsed, absent class members could not bring individual actions, so they would have no recourse. *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 501 (2017).

---

[5] *Westfall*, 2007 WL 486606 at *4-5; *Gonzalez*, 2020 WL 4925702 at *6-7; *Ford*, 2009 WL 10676832 at *2; *Milk Products*, 195 F.3d at 438; *Lexington*, 2015 WL 1321448 at *5; *Urethane*, 2007 WL 1424327 at *7.

In any case, Defendants' own strategy contemplated that amendment might have to take place after class certification briefing. Though it was not reflected in the scheduling order because of a typo, Defendants agreed to a deadline to amend pleadings of January 9, 2026. The same schedule provided that Defendants' class certification opposition would be filed by August 22, 2025 and Plaintiffs' reply by October 10, 2025. Doc. No. 166 at 2. Further, Defendants did not produce any substantive documents until September 12, 2025, after they filed their opposition to Plaintiffs' motion for class certification. Thus, notwithstanding their feigned claims of prejudice, Defendants accepted that the documents they belatedly produced might lead Plaintiffs to file a motion for leave to amend that would be subject only to Rule 15.

Finally, prejudice means anticipated ***additional*** expenses that ***would be*** incurred if amendment were granted, so Defendants' showing of expenses already incurred is not relevant. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) ("In the absence of bad faith, however, litigation expenses incurred before a motion to amend is filed do not establish prejudice."); *Beach v. Healthways, Inc.*, 264 F.R.D. 360, 365 (M.D. Tenn. 2010) ("[T]he prejudice to the defendants is not the expenses already incurred but the additional expenses that will be incurred."). But Defendants cite little to support their claim that they will face additional expense. Defendants cite no additional merits discovery will be necessary and argue that potential expenditures on class certification justify denying amendment. But they do not substantiate their claim. Biogen's stock price soared on October 22, 2019, when they made the first misleading statements. Doc. No. 248-2. Defendants do not explain why finding price impact would be controversial. Defendants cite a few additional questions they'd like to ask named plaintiffs, but even if the questions were proper, they would take very little time and could be done by video.

Even taking at face value, the burden on Defendants is minor. That is no reason to strip thousands of class members of their right to pursue meritorious claims of securities fraud.

Nor is the delay prejudicial. First, the Court has already adjourned all discovery deadlines while it considers the motion for leave to amend. Doc. No. 247. Second, Defendants' claims that delay prejudices them ring hollow because Defendants themselves delayed this action for almost a year by "reserving" one of their motion to dismiss arguments at the First Circuit and then raising it in a subsequent dispositive motion. Doc No. 90 at 2; Doc. No. 141 at 1.

## IV.    THE PSLRA PERMITS AMENDMENT

Defendants concede that the PSLRA "uncontroversial[ly]" permits discovery-based amendment, but halfheartedly maintain in footnote that it weighs against allowing amendment. They cite two controversial cases by the same judge that mentioned the PSLRA, but in each case, "the court's orders were supportable on conventional grounds of undue delay and prejudice." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2024 WL 791545, at *5 (S.D.N.Y. Feb. 26, 2024) (referencing the two cases cited by Defendants). Other courts have not endorsed their reasoning.

## V.    BUDD HAEBERLEIN IS NOT A THIRD PARTY

Finally, Defendants argue that the Court should deny amendment as to Budd Haeberlein because Plaintiffs purportedly did not comply with a local rule to add a party. But Budd Haeberlein already is a party: she is a defendant who was dismissed but whose dismissal was not upheld on appeal. The rule is inapplicable.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant leave to file the PTAC.

Dated March 10, 2026                    Respectfully submitted,

                                          **THE ROSEN LAW FIRM, P.A.**

                                          */s/Laurence M. Rosen*
Laurence M. Rosen, Esq. (*pro hac vice*)
Jonathan Horne, Esq. (*pro hac vice*)
Brian B. Alexander, Esq. (*pro hac vice*)
Joshua Baker, Esq. (BBO #695561)
Sara Fuks, Esq. (*pro hac vice)*
275 Madison Avenue, 40th Floor
New York, NY 100016
Tel: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com
jhorne@rosenlegal.com
balexander@rosenlegal.com
jbaker@rosenlegal.com
sfuks@rosenlegal.com

*Counsel for Plaintiffs*
*and the Putative Class*

9

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2026, a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO AMEND** was served by CM/ECF to parties registered to the Court's CM/ECF system.

/s/Laurence Rosen

10